PETER B. MARETZ, CA State Bar No. 144826
pmaretz@stokeswagner.com
ARCH Y. STOKES, GA State Bar No. 683100, (permanently admitted to this court)
astokes@stokeswagner.com
STOKES WAGNER HUNT MARETZ & TERRELL
600 West Broadway, Suite 1150
San Diego, CA 92101
Telephone:   (619) 232-4261
Facsimile:   (619) 232-4840

Attorneys for Ecolab Inc., a Delaware Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. ICARD, an individual; for himself and those similarly situated, and ROES 1 through 30,000 and the proposed class,<br><br>Plaintiffs,<br><br>v.<br><br>ECOLAB INC., a Delaware Corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.<br><br>(San Francisco Superior Court Case No. CGC-09-495344)<br><br>NOTICE OF REMOVAL OF CIVIL ACTION<br><br>ACCOMPANYING PLEADINGS:<br>CIVIL CASE COVER SHEET; NOTICE OF INTERESTED PARTIES; DECLARATIONS OF PETER B. MARETZ AND BRIAN W. SILL; NOTICE OF PENDENCY OF OTHER ACTIONS<br><br>Action Filed December 21, 2009 |

1     TO THE CLERK OF THE ABOVE ENTITLED COURT AND PLAINTIFF JAMES M. ICARD AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Ecolab Inc. ("Ecolab") has been named and served as a Defendant in the above-captioned matter. Ecolab now removes the action to this Court pursuant to 28 U.S.C. sections 1332(d)(1) and 1453. In support of this Notice of Removal, Ecolab shows as follows:

**FACTS**

1. A civil action entitled *James M. Icard v. Ecolab Inc.*, Case No. CGC-09-495344, was commenced on December 21, 2009, and is now pending against Ecolab in the Superior Court of San Francisco County, California. The Superior Court of San Francisco County is embraced by this Court's District.

2. Plaintiff James M. Icard was a resident and citizen of the State of California as of the filing of the original Complaint herein. *See* Complaint attached as Exhibit B, paragraph 1[1]; 28 U.S.C. section 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). Mr. Icard remains a resident and citizen of the State of Michigan. Plaintiff Robert Magee was a resident and citizen of the State of California as of the filing of the original Complaint herein, and is currently a resident and citizen of the State of California. (See Declaration of Peter B. Maretz, ¶ 2.)

3. Ecolab is a Delaware corporation whose principal place of business is located at 370 N. Wabasha Street, St. Paul, Minnesota. *See* Declaration of Bryan W. Sill. Ecolab, therefore, is deemed a citizen of Delaware and Minnesota pursuant to 28 U.S.C. section 1332(c)(1); *see also Bank of Calif. National Association v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491-492 (9th Cir. 1972).

---

[1] Although the caption references "James Icard" as the named plaintiff, Judge Kramer of the Superior Court for the County of San Francisco granted the Plaintiffs' motion to substitute Robert Magee and Matthew Ross as class representatives on August 20, 2013. Diversity between the Defendant and any class member is sufficient under 28 U.S.C. section 1332(d)(2) to establish jurisdiction in this Court, so Icard's California domicile is all that is required to establish jurisdiction, even though he is no longer a class representative.

4. Although the complaint names "Does 1-100, inclusive" as Defendants, 28 U.S.C. section 1441(a) provides, "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." *See also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

5. The Second Amended Class Action Complaint is filed on behalf of a putative class of approximately 197 people, whose potential damages, pursuant to the claims made therein, exceed Five Million Dollars ($5,000,000), exclusive of costs. Attached hereto as Exhibit A is a settlement demand letter signed by Plaintiffs' counsel that calculates the alleged class damages at over $60 million.

6. Pursuant to 28 U.S.C. section 1332(d)(2), jurisdiction in this Court is proper.

7. Ecolab has twice before attempted to remove this putative class action to this Court, believing in good faith that this Court held jurisdiction over the case. On both occasions, Plaintiffs' counsel successfully moved to remand, representing to the Court that the amount in controversy was insufficient for purposes of removal. On the first occasion, shortly after the case was filed, Plaintiff disputed evidence that the representative plaintiff's damages would exceed $75,000. [*Case 3:10-cv-00410-JL, Dkt. 14 and Declaration of Daniel Palay.*] On the second occasion, Plaintiff disputed evidence that the potential class damages were in excess of $5 million. [*Case 3:11-cv-03258-CRB, Dkt. 17.*] Now Plaintiffs' counsel has set forth calculations claiming that the amount in controversy exceeds **ten times** that much. *See* Exhibit A.

8. The letter attached as Exhibit A and received by defense counsel on October 2, 2013, is the first acknowledgment by Plaintiffs' counsel since the onset of this litigation that the amount in controversy exceeds the jurisdictional requirement under the Class Action Fairness Act. Moreover, Exhibit A is the first settlement demand received by Ecolab from Plaintiffs herein, let alone a demand exceeding $5 million (*See* Declaration of Peter B. Maretz, ¶ 3.) Pursuant to 28 U.S.C. section 1446(b)(3) and applicable case law, this settlement letter is a "paper from which it may first be ascertained that the case is one which is or has become removable," and the 30-day period for removal was not triggered until its receipt. 28 U.S.C. section 1446(b)(3); *Cohn v.*

*Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Ackerberg v. Citicorp USA, Inc.*, 887 F. Supp. 2d 934, 939 (N.D. Cal. 2012).

9. As a result, although Ecolab disputes all of Plaintiff's claims and requests for relief thereon, based upon the allegations in Plaintiff's Second Amended Complaint and assuming, *arguendo*, Plaintiffs were able to recover upon these claims, diversity of citizenship exists between the parties, and the amount in controversy exceeds $5,000,000. As a result, this case is within the Court's original jurisdiction based on diversity of citizenship and the Class Action Fairness Act of 2005, 28 U.S.C. section 1332(d) ("CAFA").

## LEGISLATIVE HISTORY OF CAFA

10. The removal of this action is fully consistent with the purpose of CAFA. The legislative history of CAFA reflects that Congress intended to prevent class attorneys from "gaming" the system in order to deprive a defendant of its right to a federal forum. Indeed, the Senate Judiciary Committee observed that:

> [CAFA] corrects a flaw in the current diversity jurisdiction statute (28 U.S.C. § 1332) that prevents most interstate class actions from being adjudicated in federal courts. One of the primary historical reasons for diversity jurisdiction "is the reassurance of fairness and competence that a federal court can supply to an out-of-state defendant facing suit in state court." Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, *the Committee firmly believes that such cases properly belong in federal court*. To that end, this bill (a) amends section 1332 to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis, and (b) modifies the federal removal statutes to ensure that qualifying interstate class actions initially brought in state courts may be heard by federal courts if any of the defendants so desire. *Thus, S. 5 makes it harder for plaintiffs' counsel to "game the system" by trying to defeat diversity jurisdiction*, creates efficiencies in the judicial system by allowing overlapping and "copycat" cases to be consolidated in a single federal court, places the determination of more interstate class action lawsuits in the proper forum—the federal courts.

*See* Senate Report 109-14, 109th Cong., 1st Session, Feb. 28, 2005, at pp. 4-5 (emphasis added). *See also id.* at pp. 10-11 (emphasis added):

/ / /

/ / /

/ / /

-4- NOTICE OF REMOVAL OF CIVIL ACTION

> The second [gaming] problem is created by the amount-in-controversy requirement. In interpreting 28 U.S.C. § 1332(a), some federal courts of appeals, relying on a 1974 Supreme Court decision, have held that the amount-in-controversy requirement is normally met in class actions only if each of the proposed class members individually seeks damages in excess of the statutory minimum. That means federal courts can often only hear class actions in which each potential class member claims damages in excess of $75,000. The Committee believes that requiring each plaintiff to reach the $75,000 mark makes little sense in the class action context. After all, class actions frequently involve tens of millions of dollars even though each individual plaintiff's claims are far less than that. *Moreover, class action lawyers typically misuse the jurisdictional threshold to keep their cases out of federal court. For example, class action complaints often include a provision stating that no class member will seek more than $75,000 in relief, even though they can simply amend their complaints after the removal to seek more relief and even though the class action seeks millions of dollars in the aggregate. Under current law, that is frequently enough to keep a major class action in state court.*

See also *Id.* at p. 8:

> [D]iversity jurisdiction was designed not only to protect against actual discrimination, but also "to shore up confidence in the judicial system by preventing even the appearance of discrimination in favor of local residents." In addition, several legal scholars have noted that the Framers were concerned that state courts might discriminate against interstate businesses and commercial activities, and thus viewed diversity jurisdiction as a means of ensuring the protection of interstate commerce. As former Acting Solicitor General Walter Dellinger testified before the Committee, "diversity jurisdiction has served to guarantee that parties of different state citizenship have a means of resolving their legal differences on a level playing field in a manner that nurtures interstate commerce." Both of these concerns—judicial integrity and interstate commerce—are strongly implicated by class actions.

11.   See also *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d 792, 797 (11th Cir. 1999) (reluctantly remanding pre-CAFA class action: "An important historical justification for diversity jurisdiction is the reassurance of fairness and competence that a federal court can supply to an out-of-state defendant facing suit in state court. GMAC is an out-of-state corporate defendant facing a multimillion-dollar judgment—possibly tens or hundreds of millions, once the plaintiffs have waited out the one-year removal window and amend their complaint to seek punitive damages explicitly—in a state court system that has on occasion produced gigantic awards against out-of-state corporate defendants. … One would think that this case is exactly what those who espouse the historical justification for § 1332 would have had in mind, and that this fact

would somehow color the statute's interpretation."), cited in Report 109-14, 109th Cong., 1[st] Session, Feb. 28, 2005, p.12, n.32.

12. Another reason for the passage of CAFA was to relieve the strain on overburdened state courts: "The ability of plaintiffs' lawyers to evade federal diversity jurisdiction has helped spur a dramatic increase in the number of class actions litigated in state courts—an increase that is stretching the resources of the state court systems. In testimony to the Subcommittee on Administrative Oversight and the Courts, Prof. E. Donald Elliott pointed out that the flood of class actions in our state courts is too well documented to warrant significant discussion, much less debate. According to studies, federal class action filings over the past ten years have increased by more than 300 percent. At the same time, class action filings in state courts have grown more than three times faster—by more than 1,000 percent." *Id.* at p. 13.

13. The California state court system is under a well-known and well-publicized financial strain. In March of 2013, the Chief Justice of California lamented the fact that California's courts have lost 65% of their general funding over the past five years. There have been numerous court closures, employees have lost jobs, their hours have been cut, and court fees have skyrocketed. See attached Exhibit YY.

**REPRESENTATIONS OF CLASS COUNSEL**

14. Defendant has twice sought removal to this Court. The first occasion was shortly after the filing of the initial complaint in December of 2009, when the damages of only the named Plaintiff were at issue. Defendant asserted in opposition to remand that the penalties and attorneys' fees the Plaintiff was seeking would bring the amount in controversy over $75,000. In correspondence, class counsel asserted, "There is no basis for federal jurisdiction in this case." Feb. 2, 2010, letter from Daniel R. Palay to Bruno W. Katz, et al., Exhibit A to the Declaration of Daniel Palay to Docket. 15-1, Case 3:10-cv-00410-J, 3/10/10. Class counsel then moved for remand and persuaded the Court to consider only fees incurred up to that point of the litigation, which class counsel asserted were insufficient to reach the jurisdictional requirement. "Plaintiff's claim, even including his attorney's fees to date, totals far less than $75,000." Declaration of

Daniel Palay in Support of Plaintiff's Motion for Remand, paragraph 8, Docket. 15, Case 3:10-cv-00410-JL, March. 10, 2010. The case was remanded on June 18, 2010.

15. Defendant sought removal once more after the Second Amended Complaint was filed on June 1, 2011, expanding the definition of the putative class by approximately 88 members. At the time, Defendant believed that the amount in controversy was between $5 and $6 million and was sufficient to satisfy the jurisdictional requirements of CAFA. Defendant based this calculation on the size of the putative class in relation to the amount that class counsel claimed that the named plaintiff would recover.

16. Class counsel opposed removal again, however. He first challenged the assumption that all of the putative class members were ex-employees entitled to penalties under California Labor Code section 203. Declaration of Daniel Palay paragraph 20, Docket 18, Case 3:11-cv-03258-CRB, 7/27/11. In response, Defendant submitted a second declaration eliminating all presumed damages pursuant to Labor Code section 203; the calculations nevertheless resulted in a figure above $5 million. *See* Declaration of James Rollwagen, Docket. 25-1, Case 3:11-cv-03258-CRB, 8/25/11. Class counsel also challenged the use of *class counsel's own previously-submitted damages estimates* as a baseline for calculating the potential damages, though he took care not to make his own assessment regarding the overall value of the case. Declaration of Daniel Palay, *supra*, paragraphs 22-24. Nevertheless, even without taking into account attorneys' fees incurred to the date of removal, and even subtracting entirely the penalties that were sought pursuant to Labor Code section 203, the amount in controversy was still reasonably estimated at more than $5 million. *See* Declaration of James Rollwagen, *supra*. Nevertheless, the matter was remanded once again on September 30, 2011: "Given the multiple factual disputes that exist with respect to the likely size of the putative class and the amount of damages each member suffered, defendant has not established the amount in controversy by a preponderance of the evidence." Order at page 2, Docket. 33, Case 3:11-cv-03258-CRB, 9/30/11.

///

///

**CURRENT STATUS OF THE CASE**

17. Class counsel has now, for the first time, asserted that the class and its counsel are entitled to recover over $60 million in this litigation, well over **ten times** the amount necessary to satisfy the requirements of CAFA. (There has never been any dispute regarding the diversity of the parties.) *See* Exhibit A.

18. Pursuant to 28 U.S.C. section 1441(a), a defendant may remove an action within this Court's original jurisdiction to this Court.

19. This Notice of Removal is timely in that it has been filed within thirty (30) days of Ecolab's first receipt of Exhibit A. 28 U.S.C. section 1453(b).

**NOTICE TO PLAINTIFF**

20. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of San Francisco, California.

21. Attached hereto as Exhibits B-XX are true and correct copies of the "process, pleadings, and orders" contained within the San Francisco Superior Court file, pursuant to 28 U.S.C. section 1446(a).

WHEREFORE, having provided notice as required by law, Ecolab removes the aforesaid state court action to this Court under the style shown above.

DATED: October 31, 2013         STOKES, WAGNER, HUNT, MARETZ & TERRELL

By: _____
PETER B. MARETZ
ARCH Y. STOKES
DIANA LERMA
Attorneys for Defendant
Ecolab Inc., a Delaware Corporation