UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW ROSS, et al.,

          Plaintiffs,

     v.

ECOLAB INC.,

          Defendant.

Case No. 13-cv-5097-PJH

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR DECERTIFICATION**

Plaintiffs' motion for partial summary judgment, defendant's motion for summary judgment, and defendant's motion for decertification came on for hearing before this court on May 20, 2015.  Plaintiffs Matthew Ross and Robert Magee ("plaintiffs") appeared through their counsel, Alejandro Gutierrez and Brian Hefelfinger.  Defendant Ecolab, Inc. ("defendant" or "Ecolab") appeared through its counsel, Arch Stokes, Shirley Gauvin, Peter Maretz, and John Hunt.  Having read the papers filed in conjunction with the motions and carefully considered the arguments and relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a wage and hour class action centering around the alleged misclassification of employees as exempt.  Plaintiffs work as "Route Sales Managers" (or "RSMs") for Ecolab, which describes itself as "the global leader in water, hygiene, and energy technologies and services."  The exact job duties of the RSMs is a matter of some dispute, but the parties agree that the RSMs travel to the sites of Ecolab's customers (including restaurants and other businesses in the hospitality industry) in order to provide

1  service to their commercial dishwashers, which are leased from Ecolab.  Specifically, the

2  RSMs install, repair, and otherwise maintain the dishwashers, and also sell products

3  (such as detergents, sanitizers, etc.) to the customers.  Plaintiffs claim that they have

4  been misclassified as "exempt," and thus have not received the overtime pay and meal

5  breaks to which they were entitled.

6        The suit was originally filed by plaintiff James Icard in state court in December

7  2009, then removed in January 2010, only to be remanded in June 2010 based on

8  Ecolab's failure to establish the required amount in controversy.  Ecolab then removed

9  the case for a second time in June 2011, but the case was again remanded in September

10  2011, because Ecolab had still not established that the amount in controversy

11  requirement was met.

12        The case was removed for a third time in October 2013, and has been pending in

13  this court since then.  During the case's stint in state court between September 2011 and

14  October 2013, the state court granted class certification, but subsequently found that

15  plaintiff Icard was not a suitable class representative.  In response, plaintiffs' counsel filed

16  a motion to substitute Matthew Ross and Robert Magee as class representatives, which

17  was granted.

18        The class certified by the state court consists of "all employees of Ecolab, who

19  are/were Route Managers or Route Sales Managers (hereafter referred to collectively as

20  'RSMs'), who have worked in California between December 21, 2005 and the present,

21  who do/did not cross state lines in performance of their duties, and have not received full

22  and correct pay for all hours worked and have not received accurate itemized wage

23  statements required pursuant to Labor Code section 226, and who have not fully and

24  completely released all of the claims made in this lawsuit."  See Third Amended

25  Complaint ("TAC"), ¶ 13.

26        The TAC asserts four causes of action on behalf of the class: (1) violation of

27  California Labor Code § 510, for failure to pay overtime and failure to provide meal

28  breaks, (2) violation of California Business and Professions Code § 17200, for failure to

United States District Court
Northern District of California

United States District Court
Northern District of California

1  pay all wages, (3) violation of California Labor Code § 226 for failure to timely provide

2  accurate wage statements, and (4) violation of California's Private Attorneys General Act.

3  Plaintiffs now move for partial summary judgment on three issues: (1) that the "outside

4  salesperson" exemption does not apply to the RSMs, (2) that the "commissioned

5  salesperson" exemption does not apply to the RSMs, and (3) that the "hazardous

6  materials" exemption does not apply to the RSMs.

7      Defendant moves for summary judgment on all asserted claims.  Defendant also

8  moves for decertification of the class.

9                                    **DISCUSSION**

10  A.    Motions for Summary Judgment

11      1.    Legal Standard

12      A party may move for summary judgment on a "claim or defense" or "part of . . . a

13  claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there

14  is no genuine dispute as to any material fact and the moving party is entitled to judgment

15  as a matter of law.  Id.

16      A party seeking summary judgment bears the initial burden of informing the court

17  of the basis for its motion, and of identifying those portions of the pleadings and discovery

18  responses that demonstrate the absence of a genuine issue of material fact.  Celotex

19  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the

20  outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

21  dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

22  jury to return a verdict for the nonmoving party.  Id.

23      Where the moving party will have the burden of proof at trial, it must affirmatively

24  demonstrate that no reasonable trier of fact could find other than for the moving party.

25  Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

26  the nonmoving party will bear the burden of proof at trial, the moving party may carry its

27  initial burden of production by submitting admissible "evidence negating an essential

28  element of the nonmoving party's case," or by showing, "after suitable discovery," that the

3

United States District Court
Northern District of California

1   "nonmoving party does not have enough evidence of an essential element of its claim or

2   defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co.,

3   Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477

4   U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that

5   there is an absence of evidence to support the nonmoving party's case).

6       When the moving party has carried its burden, the nonmoving party must respond

7   with specific facts, supported by admissible evidence, showing a genuine issue for trial.

8   Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence

9   of only "some alleged factual dispute between the parties will not defeat an otherwise

10  properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

11      When deciding a summary judgment motion, a court must view the evidence in the

12  light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

13  Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).  In adjudicating

14  cross-motions for summary judgment, the Ninth Circuit "evaluate[s] each motion

15  separately, giving the nonmoving party in each instance the benefit of all reasonable

16  inferences." ACLU of Nevada v. City of Las Vegas, 466 F.3d 784, 790-91 (9th Cir. 2006)

17  (citations omitted).

18      If a party makes a showing "that there is no genuine issue of material fact as to

19  particular claim(s) or defense(s), the court may grant summary judgment in the party's

20  favor 'upon all or part thereof.'" Schwarzer, Tashima & Wagstaffe, Federal Civil

21  Procedure Before Trial (2008) § 14:33 (emphasis added).  "This procedure is commonly

22  referred to as a 'partial summary judgment.'" Id. § 14:34

23      2.      Legal Analysis

24      As mentioned above, plaintiffs move for partial summary judgment on three

25  issues, all of which are related to Ecolab's classification of RSMs as exempt from

26  overtime regulations.  Plaintiff seek an order finding that (1) the RSMs are not subject to

27  the "outside salesperson" exemption, (2) the RSMs are not subject to the "commission

28  sales" exemption, and (3) the RSMs are not subject to the "hazardous materials" (or "haz-

4

mat") exemption.  Defendant seeks an order granting summary judgment in its favor on

the overtime claim (based on the three exemptions), and further seeks summary

judgment on the remainder of the asserted claims.  The court will first examine the three

overtime exemptions.

a.      Outside salesperson exemption

The outside salesperson overtime exemption applies to employees who

"customarily and regularly work more than half the working time away from the

employer's place of business selling tangible or intangible items or obtaining orders or

contracts for products, services, or use of facilities."  Cal. Labor Code § 1171; Wage

Order 5, ¶ 2(M); Wage Order 4, ¶ 2(M); Wage Order 7, ¶ 2(J).

There is an important difference between how federal law and state law interpret

the "more than half the working time" requirement of the outside salesperson exemption.

The federal exemption focuses on defining the employee's "primary function," asking

whether the employee's "chief duty or primary function is making sales."  Ramirez v.

Yosemite Water Co., Inc., 20 Cal.4th 785, 797 (1999).  If so, then the exemption applies,

so long as no more than 20 percent of the employee's time is spent on non-sales activity.

Id.  The federal exemption also allows activities "incidental to sales" to be counted as

sales-related activity.  Id.

In contrast, California takes a "purely quantitative approach," and focuses

"exclusively on whether the individual 'works more than half the working time . . . selling

. . . or obtaining orders or contracts.'"  Ramirez, 20 Cal.4th at 797.  Also, state law "does

not contain any provision that reclassifies intrinsically nonexempt nonsales work as

exempt based on the fact that it is incidental to sales."  Id. (emphasis in original).

Instead, the "language of the state exemption only encompasses work directly involved in

'selling . . . items or obtaining orders or contracts.'"  Id.  In other words, under the

California exemption, the only question is whether the employee spends over 50% of his

or her time involved in activities directly related to sales, not including activities

incidentally related to sales.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    With that standard in mind, the next step is to determine whether the outside

2  salesperson exemption applies to the RSMs.  The court also notes that "the assertion of

3  an exemption from the overtime laws is considered to be an affirmative defense, and

4  therefore the employer bears the burden of proving the employee's exemption."

5  Ramirez, 20 Cal.4th at 794-95.

6    In their motion, plaintiffs claim that RSMs spend the majority of their work time

7  performing "hands-on duties," such as:

> Installing and repairing commercial dishwashers, dispensers, and related
> equipment; performing preventative maintenance on dishwashers,
> dispensers, and related equipment; testing the pH of the client's water,
> detergent levels, rinse-aid levels, and more; testing the functionality of the
> client's equipment; checking inventory on the client's supply of detergent,
> sanitizers, degreasers, and rinse-aid; talking to customers in an effort to
> diagnose problems with their equipment; responding to emergency calls
> from Ecolab clients when their dishwashers, dispensers, or related
> equipment are malfunctioning; planning their day, including figuring out
> which clients to visit each day; ordering repair parts; ordering materials to
> perform tests on dishwashers, dispensers, and related equipment; and
> preparing Service Detail Reports ("SDRs").

Dkt. 74 at 3.

17    Plaintiffs also cite to 16 employee declarations containing the same list of activities

18  and claiming that more than 80% of an RSM's non-driving work day is spent on those

19  tasks.  Dkt. 74-1, Ex. 4.

20    Plaintiffs do acknowledge that RSMs spend some of their day performing "some

21  minimal sales tasks," including upselling detergents, sanitizers, degreasers, and

22  commercial kitchen accessories; demonstrating new products and services; and taking

23  orders for goods.  Dkt. 74 at 3.  However, the employee declarations state that only five

24  to twenty percent of their workday is spent performing these sales-related tasks.  Dkt.

25  74-1, Ex. 4.

26    Ecolab responds by arguing that "even though the customer calls involve service,

27  sales are the key."  Ecolab provides its own competing employee declarations, with one

28  RSM stating that "my primary duty is sales," another claiming that 100% of his job duties

1   are related to sales, and others making similar statements about the importance of sales

2   to the RSMs' job duties.  See, e.g., Dkt. 87-1, Ex. K, ¶ 3; Ex. M, ¶ 11.  One of Ecolab's

3   declarants states that "there was nothing I did that did not relate to sales," and that even

4   "[b]rushing my teeth or having a cup of coffee in the morning are all related to sales."

5   Dkt. 87-1, Ex. E, ¶ 15.

6        Ecolab also emphasizes the importance that the company itself places on sales,

7   arguing that RSMs are "expected to build relationships with the customers, earn their

8   trust by familiarizing themselves with the customers' needs, and look for opportunities to

9   sell products to the customers," and pointing out that it holds monthly sales meetings with

10   RSMs and distributes sales brochures and videos to RSMs.  Ecolab also notes that it

11   does not charge customers for the service visits that the RSMs provide, and instead

12   derives the majority of its income from the sales of products.

13        Ecolab provides testimony from its expert, Donald Winter, who is offered as a

14   sales expert based on his 40 years of experience as an "advisor and consultant to the

15   hospitality industries."  Dkt. 87-1, Ex. NN.  Mr. Winter opines that "[u]sing both qualitative

16   and quantitative methods," he has "determined that both approaches yield the ineluctable

17   conclusion that Ecolab's Route Sales Managers are primarily sales persons – and

18   further, dishwasher repair comprises but a small portion of the Route Sales Managers'

19   ongoing functions," and that the "majority of the Route Sales Managers' actual time and

20   focus is directed towards the selling function."  Id., ¶ 17.

21        The divide between plaintiffs' and defendant's arguments highlights an area of

22   ambiguity in the application of the outside salesperson exemption.  Plaintiffs focus on the

23   time actually spent on sales-related duties, while Ecolab also introduces arguments

24   related to how much time should be spent selling.  The Ramirez court noted this

25   ambiguity, asking:  "Is the number of hours worked in sales-related activities to be

26   determined by the number of hours that the employer, according to its job description or

27   its estimate, claims that the employee should be working in sales, or should it be

28   determined by the actual average hours the employee spent on sales activity?"  20

United States District Court
Northern District of California

1   Cal.4th at 802 (emphasis in original).

2       The Ramirez court noted a problem with either approach – if the exemption was

3   defined solely by employer expectations, the employer could "make an employee exempt

4   from overtime laws simply by fashioning an idealized job description that had little basis

5   in reality."  20 Cal.4th at 802.  On the other hand, an employee "who is supposed to be

6   engaged in sales activities during most of his working hours and falls below the 50

7   percent mark due to his own substandard performance should not thereby be able to

8   evade a valid exemption."  Id.

9       According to the Ramirez court, the way to "steer clear of these two pitfalls" was

10  by "inquiring into the realistic requirements of the job."  20 Cal.4th at 802 (emphasis in

11  original).  To do so, the court must "first and foremost" ask "how the employee actually

12  spends his or her time," but should also "consider whether the employee's practice

13  diverges from the employer's realistic expectations, whether there was any concrete

14  expression of employer displeasure over an employee's substandard performance, and

15  whether these expressions were themselves realistic given the actual overall

16  requirements of the job."  Id.

17      The facts of Ramirez are actually strikingly similar to those in this case.  The

18  plaintiffs were bottled water delivery persons, but their job title was "route sales

19  representatives."  20 Cal.4th at 790.  While plaintiffs performed such duties as delivering

20  bottled water, picking up empty bottles, refilling other supplies (cups, etc.), checking

21  bottles for leaks, and occasionally performing minor service on water coolers, the

22  defendant also expected the plaintiffs to "engage the solicitation of new customers," and

23  said that selling "is the main job of our route salespeople."  Id. at 790-92.  The defendant

24  also claimed that it expected the route sales representatives to spend 90 percent of their

25  workday selling, though later clarified to the court that the 90 percent figure included "the

26  time spent delivering bottles of water to the customer as part of the selling activity."  Id. at

27  792.

28      The Ramirez court ultimately found that the plaintiffs engaged in both sales and

8

delivery functions, and that delivery/restocking of bottles was not a "sales" function, because "one who only performed these delivery tasks could not be considered a salesperson." Id.  The court acknowledged that "failure to properly deliver the product would lead to loss of the customer, but that does not make such delivery a sales activity, any more than an attorney's preparation of a legal brief in order to satisfy and thereby retain a client is a sales activity."[1] Id.

The court finds that the rationale of Ramirez applies with equal force to this case. Under Ecolab's view, everything a RSM does is related to sales, essentially arguing that "failure to properly [service] the product would lead to loss of the customer."  However, as in Ramirez, "that does not make such [service] a sales activity."

Ecolab argues that a broader interpretation of the term "sales" is justified by the Ninth Circuit's decision in Christopher v. SmithKline Beecham Corp., 635 F.3d 383 (9th Cir. 2011).  In Christopher, the court held that "pharmaceutical sales representatives" did qualify as outside salespeople even though they did not directly sell products to doctors, and instead engaged only in promotion-type activities.  However, in reaching that conclusion, the court emphasized the unique nature of the pharmaceutical sales industry, noting that "[i]n most industries, there are no firm legal barriers that prohibit the actual physical exchange of the goods offered for sale." Id. at 396 (emphasis in original). "Because such barriers do exist in this industry, the fact that [sales] commitments are non-binding is irrelevant." Id.  Ecolab offers no justification for expanding Christopher's holding, which appears to apply only to sales in the context of the pharmaceutical industry (or, at most, to industries in which direct sales are prohibited) to this case, in which sales representatives are free to effect the "actual physical exchange of the goods

---

[1] The Ramirez court also cited a previous California Court of Appeal decision, in which the court found that car mechanics were not engaged in sales. Keyes Motors, Inc. v. Division of Labor Standards Enforcement, 197 Cal.App.4th 557 (1987).  The Keyes court acknowledged that "[i]t may be true that parts and labor are ultimately sold because mechanics diagnose the need for additional repairs," but held that "this diagnosis and recommendation is no more 'salesmanship' than a plumber's diagnosis and recommendation that an additional pipe is needed to make a repair." Id. at 564.  "Put simply, a mechanic performs labor, not sales." Id.

United States District Court
Northern District of California

offered for sale."

Ecolab's overly expansive view of "sales-related activities" is reflected in its expert's report. In the report, Mr. Winter includes a chart listing the various activities performed by RSMs and categorizes them as "selling," "maintenance," or "repairing." Dkt. 87-46, Ex. A. Interestingly, every single activity is characterized, at least in part, as selling. "Synching up for the day" is categorized as "selling," "inspect, test, and calibrate machines" is categorized as "maintenance" and "selling," and "installation of dishwasher" is categorized as both "repairing" and "selling," though Mr. Winter acknowledges that a "relatively minor proportion is considered to be selling." Id. Most starkly, even "repairs" are categorized as both "repairing" and "selling." Id.

It seems clear that, under Ecolab's view, literally every RSM function can be considered "sales." However, as mentioned above, the Ramirez court specifically rejected this expansive view of "sales-related activities."

By sticking to its "everything is sales" view, Ecolab fails to present the court with any basis for finding that over 50 percent of the RSMs' time is spent on sales-related tasks. In fact, Ecolab has not presented evidence that even one RSM spends over 50 percent of his or her time performing duties directly related to sales, and admitted at the hearing that "no one has quantified" how the RSMs spend their time to distinguish "this is sales, this is not sales." Dkt. 103 at 10. This lack of evidence is especially surprising given the fact that RSMs carry tablets to complete their Service Detail Reports ("SDRs"), which record the specific duties performed at each service call. Dkt. 87 at 5. However, rather than citing to those records and distinguishing between activities directly related to sales and those merely incidental to sales, Ecolab has opted for an all-or-nothing approach, maintaining that every single RSM activity is related to sales.

In a similar case in this district, the court noted that the defendant required its employees to "carry personal digital assistants" to "record the time they spend at each store." Campanelli v. Hershey, 765 F.Supp.2d 1185, 1193 (N.D. Cal. 2011). However, like the defendant in this case, the Hershey defendant failed to provide evidence of how

10

1    employees spent their time, on a quantitative basis, and the court granted partial

2    summary judgment in favor of plaintiff.  Id.  Plaintiffs emphasize the lack of any Service

3    Detail Reports, which the RSMs use to track their daily work activities, that are cited in

4    defendant's papers.

5           Overall, Ecolab has chosen not to present evidence of how much of the RSMs'

6    time was spent on strictly sales-related activities, and has instead opted to argue that all

7    of the RSMs' tasks were directed towards the ultimate goal of sales.  In essence, Ecolab

8    is arguing that all of the RSMs' duties – from "synching up" and "planning for the day," to

9    "upload[ing] info at the end of the day" – are all incidental to sales.  And, indeed, if the

10   federal overtime exemption were at issue in this case, Ecolab's evidence could be

11   sufficient to create a triable issue of material fact as to whether the RSMs' "primary

12   function" was sales.  However, under California's exemption, Ecolab must create a triable

13   issue of material fact that the RSMs spent more than half of their day, on a purely

14   quantitative basis, directly involved in selling.  As mentioned above, Ecolab has not met

15   this standard with respect to even one RSM.  Instead, Ecolab appears to reject the

16   distinction between "direct sales" tasks and tasks "incidental to sales" – relying on

17   generalities such as "even though the customer calls involve service, sales are the key,"

18   or that sales are the "raison d'etre of the RSM position."

19          Because Ecolab bears the burden of establishing the "outside salesperson"

20   exemption, its failure to raise a triable issue of fact as to whether the RSMs spend more

21   than 50 percent of their time on direct sales activities warrants summary judgment in

22   plaintiffs' favor.  Accordingly, plaintiffs' motion for partial summary judgment is GRANTED

23   as to the "outside salesperson" exemption, and defendant's motion for summary

24   judgment is DENIED on the issue.

25                 b.      Commissioned salesperson exemption

26          Separate from the "outside salesperson" exemption, Ecolab also contends that the

27   RSMs are exempt from overtime laws based on the "commissioned salesperson"

28   exemption.  The "commissioned salesperson" exemption applies if the employee's

United States District Court
Northern District of California

1   "earnings exceed one and one-half times the minimum wage, if more than half of that

2   employee's compensation represents commissions."  Wage Order 4, ¶ 3(D); Wage Order

3   7, ¶ 3(D).

4        As a threshold matter, the parties disagree over whether the RSMs are even

5   covered by a wage order which contains the "commissioned salesperson" exemption.

6   Plaintiffs contend that Wage Order 5, which does not contain the exemption, applies to

7   the class members.  Wage Order 5 covers businesses in the "public housekeeping"

8   industry.  Ecolab, on the other hand, argues that the class members are governed by

9   Wage Order 4 or Wage Order 7, both of which contain the "commissioned salesperson"

10   exemption.  Wage Order 4 covers those employed in "professional, technical, clerical,

11   mechanical, and similar occupations," while Wage Order 7 covers the "mercantile"

12   industry.

13        Neither party has presented controlling authority for the applicability of any of the

14   three cited wage orders, so for purposes of plaintiffs' motion for partial summary

15   judgment, the court will view the evidence in the light most favorable to Ecolab and draw

16   all justifiable inferences in its favor.  Accordingly, the court will proceed on the

17   assumption that Ecolab's employees are subject to either Wage Order 4 or Wage Order

18   7, both of which contain the "commissioned salesperson" exemption.

19        As mentioned above, the "commissioned salesperson" exemption applies if the

20   employee's "earnings exceed one and one-half times the minimum wage, if more than

21   half of that employee's compensation represents commissions."  "Commissions" are

22   further defined as "compensation paid to any person for services rendered in the sale of

23   such employer's property or services and based proportionately upon the amount or

24   value thereof."  Cal. Labor Code § 204.1.

25        In interpreting this language, the California Supreme Court cited (with apparent

26   approval) this language from a California appeals court:

27        Labor Code section 204.1 sets up two requirements, both of which must be
         met before a compensation scheme is deemed to constitute 'commission

28

United States District Court
Northern District of California

wages.'  First, the employee must be involved principally in selling a product or service, not making the product or rendering the service.  Second, the amount of their compensation must be a percent of the price of the product or service.

<u>Ramirez</u>, 20 Cal.4th at 803-04 (citing <u>Keyes Motors</u>, 197 Cal.App.3d at 563).

Plaintiffs argue that that the first prong of this test is identical to the "outside salesperson" exemption test.  That is, the relevant inquiry is whether, on a quantitative basis, the employee spends more than half of his or her time directly involved in selling.  The California Supreme Court's decision in <u>Ramirez</u> appears to support this view – after discussing the quantitative test applicable to the "outside salesperson" exemption, the court then discusses the "commissioned salesperson" exemption, and then notes that "[a]s discussed above, it remains to be clarified on remand whether Ramirez was 'involved principally in selling the product or service.'"  20 Cal.4th at 804.  Nothing in <u>Ramirez</u>, nor in any other case cited by Ecolab, suggests that the federal "primary function" test should be used when applying the first prong of the "commissioned salesperson" exemption.  Thus, based on the court's earlier finding that Ecolab has not raised a triable issue of fact as to whether the RSMs spend more than half of their time selling, summary judgment would be warranted in plaintiffs' favor on the "commissioned salesperson" exemption.  However, out of an abundance of caution, the court will also analyze the second prong of the "commissioned salesperson" test – whether the RSMs' compensation is "a percent of the price of the product or service."

The central dispute between the parties can be traced to an ambiguity in the law, which is unclear about whether the employee's compensation must be a percent of the price of the product/service that <u>he himself sells</u>, or may be merely a percentage of the product price in general.  The way the test is structured impliedly suggests that a salesperson's commission must be tied to his own sales – with the first prong requiring that "the employee must be involved principally in selling a product or service," and the second prong requiring that the "amount of their compensation" be "a percent of the price of the product or service" – but there is no controlling authority specifically requiring a

13

1   nexus between the employee's own sales and the commission paid to that employee.

2       Plaintiffs seek to impose such a requirement – in their motion for partial summary

3   judgment, they set out the "commissioned salesperson" test as follows:

> (1) Plaintiffs must have spent more than one half of their total work time engaged in selling a product or service, not making the product or rendering the service, and (2) the purported "commissions" must have been computed as a percent of the price of the product or services that were <u>sold by plaintiffs</u>.

8   Dkt. 74 at 14 (emphasis added).

9       Plaintiffs further argue that the class members "have no control over the

10  'commissions' they passively 'earn' from machine rental fees, excess load charges, or

11  minimum product purchase requirements under a lease contract," and thus, "the

12  'commissions' for those items are not a percent of the price of the products <u>that were sold</u>

13  <u>by the RSMs</u>."  Dkt. 74 at 14 (emphasis added).  Plaintiffs then sum up the argument:

14  "The fact that most of the ostensible 'commissions' received by the RSMs were derived

15  from sales made by others, alone, disqualifies plaintiffs from the commission sales

16  exemption."  <u>Id</u>.

17      Ecolab implicitly admits that the RSMs' commissions do not come from sales that

18  they themselves make, through the use of carefully-chosen language.  Ecolab claims

19  that, a few weeks after being hired, a RSM "purchases" a territory, and then moves from

20  a salary-based income to a commission-based income, whereby the income "depends

21  almost entirely on the amount <u>purchased by the customers he services</u>."  Dkt. 87 at 16

22  (emphasis added).  Ecolab similarly states that the commissions "are earned entirely

23  based on the <u>sale of products</u>" and that "the overwhelming majority of his or her

24  compensation derives from <u>the products purchased</u>."  <u>Id</u>.  Notably, Ecolab is careful

25  never to say that an RSM's commission is based on the amount of products that <u>he/she</u>

26  <u>sells</u>, it is based on the amount of products purchased by the customers that he/she

27  <u>services</u>.  Nor does Ecolab dispute plaintiffs' claim that "the majority of RSMs'

28  commissions come to them whether or not they ever sell a single product themselves."

1    Neither party cites any authority, one way or the other, on the nexus needed

2    between the employee's own sales and the sales used to calculate the commission.

3    However, the court finds plaintiffs' interpretation to be more consistent with the test set

4    out in Ramirez, and with the common-sense purpose of the exemption.  The idea of the

5    commissioned salesperson exemption is that, if an employee wants to work longer hours

6    in order to make more sales and increase his own pay, he should be allowed to do so,

7    without triggering overtime laws.  If the employee's income was determined by something

8    other than his own sales – that is, if every employee simply received a percentage of the

9    company's overall sales – then the employee is not really receiving the fruit of his own

10   labor, so the exemption would not be justified.  Moreover, defendant's view of the

11   exemption would allow employers to classify all of their employees as "commissioned

12   salespersons" simply by tying their income to the company's sales.  In other words, rather

13   than paying its janitors a set salary, a company could calculate their salaries as a

14   percentage of the company's total sales, and then argue that they are commissioned

15   salespersons.  Such an interpretation is at odds with the purpose of the exemption.

16   Thus, the court does find that, in order to qualify for the exemption, the employee's

17   compensation must be calculated as a percentage of the price of the products/services

18   that he himself sells.  Because Ecolab has presented no evidence that RSMs'

19   commissions are based on their own sales, plaintiffs' motion for summary judgment is

20   GRANTED as to the "commissioned salesperson" exemption, and defendant's motion for

21   summary judgment is DENIED on the same issue.

22              c.    Hazardous materials exemption

23   The third overtime exemption raised in plaintiffs' motion for partial summary

24   judgment is the "hazardous materials" (or "haz-mat") exemption.  The haz-mat exemption

25   is found in Wage Order 4, Wage Order 5, and Wage Order 7, and provides as follows:

26   The provisions of this section are not applicable to employees whose hours
     of service are regulated by:
27   (1) the United States Department of Transportation Code of Federal
     Regulations, title 49, sections 395.1 to 395.13, regulating Hours of Service

28

United States District Court
Northern District of California

of Drivers, or
(2) Title 13 of the California Code of Regulations, subchapter 6.5, section 1200 and following sections, regulating hours of drivers.

Wage Order 4, ¶ 3(K); Wage Order 5, ¶ 3(I); Wage Order 7, ¶ 3(K).

The parties focus on the second portion of that passage, and note that California Code of Regulations section 1200 covers "[t]wo-axle motor trucks with a gross vehicle weight rating of 26,000 pounds or less transporting hazardous materials in quantities for which placards are not required." According to Ecolab, this ends the analysis. The RSMs drive trucks weighing less than 26,000 pounds, and they transport hazardous materials in quantities that do not require placards – thus, they are covered by section 1200, and in turn, they are exempt from the overtime requirements of the applicable wage order.

Plaintiffs argue that there are more requirements that must be met before the RSMs can be found exempt under the haz-mat exemption. The first one, and the one most heavily discussed in the briefs, is based on the idea that California's regulations apply only to people who are "drivers" by profession, not those for whom driving is incidental to their profession. Plaintiffs' main source of support for this argument is a Central District of California case also involving Ecolab. See Ladore v. Ecolab, Case No. 11-cv-9386, Dkt. 65 (C.D. Cal. Jan. 22, 2013). The key passage of that opinion states that "the federal and state regulations . . . address issues pertaining to those whose occupation is driving rather than those who must drive to a site as an incidental function to the principal duties of their occupation." Ladore at 9. The Ladore court, in turn, cited to the Division of Labor Standards Enforcement ("DLSE") manual, which stated that the exemption "only applies to employees whose regular duty is that of a driver, not any other category of worker." Id. (citing DLSE manual § 50.9.2.1).

In response, Ecolab argues that this portion of the DLSE manual has been amended. Ecolab cites to a case from this court, holding that "the DLSE manual changed section 50.9.2.1 to omit the statement that a driver must drive more than 50% of the time." Wamboldt v. Safety-Kleen Systems, 2007 WL 2409200, at *9 (Aug. 21, 2007).

16

Based on this, Ecolab repeatedly argues that <u>Ladore</u> is "simply wrong" and "egregiously wrong," that it "reflects the misunderstanding of Judge Feess regarding the application of the exemption," and that the changes in the DLSE manual were "ignored by the Judge in <u>Ladore</u>." Dkt. 87 at 21.

However, the portion of section 50.9.2.1 that was quoted in <u>Ladore</u> was not affected by the amendment. In fact, even Ecolab's declarant admits that, while portions of the DLSE manual were amended in 2006, "[t]he language of section 50.9.2.1 that limits the IWC exemption to only those employees whose regular duty is that of a driver, relief driver, or assistant driver was left unchanged." Dkt. 87, Ex. AAA, ¶ 22. For context, section 50.9.2.1 reads as follows:

> The IWC exemption only applies to employees whose regular duty is that of a driver, not any other category of worker. The policy would cover employees regularly employed as relief drivers or as assistant drivers. However, any driver who does not drive or operate a truck for any period of time during an entire workday is entitled to overtime premium compensation for all overtime hours worked performing duties other than driving during that day.

DLSE Policies and Interpretation Manual, section 50.9.2.1.

Ecolab argues that the "new" version of the DLSE manual states "that the overtime exemption fails to apply <u>only</u> when a driver 'does not drive or operate a truck for any period of time during an entire workday.'" Dkt. 87 at 22 (emphasis added). But that argument is belied by the text of the manual itself, which makes clear that an employee can avoid the exemption (and thus receive overtime pay) in <u>two</u> ways, not just one. Either (1) he can have a regular duty that is something other than driving, or (2) he can not drive a truck at all in a given day, and can receive overtime pay for that day. Ecolab ignores (1) and focuses only on (2). In other words, Ecolab argues that the RSMs drive a truck for some period of time every day, and thus, they are not entitled to overtime pay. However, the DLSE manual states that, even if an employee drives a truck every day, they can still be entitled to overtime pay if their regular duty is not that of a driver

1   (phrased a different way, the exemption applies only if the employee's regular duty is

2   being a "driver").

3          Ecolab glosses over the first part of the DLSE definition, making no attempt to

4   argue that RSMs' regular duty is that of a driver.  Instead, Ecolab limits its arguments to

5   the issue of whether the RSMs have any non-driving days.  One possible reason for this

6   line of argument is that, with respect to the "outside salesperson" exemption, Ecolab has

7   argued that the primary duty of the RSMs is sales, so it would be inconsistent to now

8   argue that their primary duty is driving.  Regardless of the reason, Ecolab does not even

9   attempt to raise a triable issue of fact as to whether the RSMs' regular duty is that of a

10  driver.  Accordingly, because there is no triable issue of fact as to whether the RSMs'

11  regular duty is that of "drivers," the court finds that the haz-mat exemption does not apply.

12  Plaintiffs' motion for partial summary judgment on the haz-mat exemption is GRANTED,

13  and defendant's motion on the issue is DENIED.

14         The court also finds an additional basis for granting plaintiffs' motion for partial

15  summary judgment as to the haz-mat exemption.  As set forth above, the exemption

16  applies to "employees whose hours of service <u>are regulated by</u>" the applicable California

17  regulations (section 1200 and following sections).  <u>See</u> Wage Order 4, ¶ 3(K); Wage

18  Order 5, ¶ 3(I); Wage Order 7, ¶ 3(K) (emphasis added).  Thus, in order to qualify for the

19  exemption, Ecolab must show that the RSMs' hours of service were actually regulated by

20  section 1200 and the following sections.  However, Ecolab has made no attempt to do so,

21  and instead, plaintiffs point to the <u>Ladore</u> court's finding that Ecolab actually did not

22  comply with many of these supposedly-required regulations.  For instance, (1) section

23  1212.5 imposed limits on driving time, which were not followed by Ecolab, (2) section

24  1214 required records of drivers' driving time, fatigue levels, and illness status to be kept,

25  which Ecolab did not keep, (3) section 1215 required daily reports to be kept, which

26  Ecolab did not keep, and (4) sections 1230 and 1232 required regular inspections and

27  maintenance of trucks, which Ecolab did not perform.  <u>See</u> <u>Ladore</u> at 8.  On the basis of

28  those findings, the court found that "Ecolab plainly wants to have its cake and eat it too."

United States District Court
Northern District of California

18

United States District Court
Northern District of California

1    Id.  "To the extent that Ecolab believes the haz-mat exemption applies, it clearly feels no

2    compulsion to abide by the regulations that would be applicable."  Id. at 8-9.  In other

3    words, while Ecolab argues that the RSMs are not exempt because they are subject to

4    the haz-mat regulations, the Ladore court emphasized that Ecolab makes no effort to

5    actually comply with those haz-mat regulations.

6        Similarly, in the present case, Ecolab makes no effort to show that the RSMs'

7    "hours of service" are actually regulated by "section 1200 and following sections," and

8    instead attempts to read that language out of the wage order exemption by arguing that,

9    because the RSMs are covered by section 1200 (which governs only vehicle weight and

10   the amount of hazardous materials carried, not the drivers' hours of service), they are

11   exempt.  In other words, Ecolab would have the court read the following language – "The

12   provisions of this section are not applicable to employees whose hours of service are

13   regulated by . . .  Title 13 of the California Code of Regulations, subchapter 6.5, section

14   1200 and following sections, regulating hours of drivers" – as this:  "The provisions of this

15   section are not applicable to employees who are regulated by . . .  Title 13 of the

16   California Code of Regulations, subchapter 6.5, section 1200."  Because it is Ecolab's

17   burden to show that the haz-mat exemption applies, its failure to address the requirement

18   that the employees' hours of service are regulated by section 1200 and the following

19   sections provides an additional basis for granting plaintiffs' motion and denying Ecolab's

20   motion on the haz-mat issue.

21       As a result of the court granting partial summary judgment in plaintiffs' favor on all

22   three asserted overtime exemptions, defendant's motion for summary judgment on the

23   overtime claim, as a whole, is denied.

24            d.   Evidentiary objections

25       In both their opposition to Ecolab's motion for summary judgment and their reply

26   brief in support of their own motion for partial summary judgment, plaintiffs raised a

27   number of evidentiary objections.  In particular, plaintiffs claim that certain witnesses

28   were not properly disclosed under Rule 26 and that certain lay witnesses are being

19

1   offered as experts.  Because the court finds that plaintiffs' motion must be granted, and

2   defendant's denied as to the overtime exemptions, even without excluding the challenged

3   evidence, the court finds that plaintiffs' objections are moot.

4             e.      Meal breaks and other claims

5        In their complaint, plaintiffs allege that Ecolab failed to provide meal breaks to the

6   RSMs, and in its motion for summary judgment, Ecolab provides evidence of a policy that

7   required its employees to take meal breaks in accordance with California law.  See Dkt.

8   78, Ex. III.  Under the policy, employees are sent a "meal break reminder message" that

9   says "please ensure you take your required meal and rest breaks," and also must certify

10   that they have been provided all meal and rest breaks when they sign their timesheets.

11   Id.

12        Plaintiffs respond by arguing that the policy "did not go into effect until 2008," and

13   thus, because the class period runs from December 21, 2005 to the present, denial of

14   summary judgment is warranted.

15        At the hearing, the court sought to clarify the timing of Ecolab's meal break policy,

16   and asked defense counsel to identify which part of the evidentiary record showed that

17   Ecolab's policy was in effect during the entire class period.  Counsel was given one week

18   to submit a reference to the evidentiary record.

19        In its supplemental filing, Ecolab pointed out that the first portion of the cited policy

20   (which set forth the meal break requirement, but did not have the "reminder" or the

21   certification) reflected that it was last revised in June 2007.  Ecolab further cited to

22   portions of deposition testimony from its employees, many of whom testified that Ecolab

23   had a meal break policy in effect in 2005 and earlier.  Finally, Ecolab pointed to the

24   deposition testimony of its "person most knowledgeable," who testified that the meal

25   break policy has existed at least since December 2005.  However, Ecolab did not submit

26   the "person most knowledgeable" testimony as part of its motion for summary judgment,

27   and requests leave of court to do so now.

28        While Ecolab's decision not to include this evidence along with its motion is

1  puzzling, the court will nonetheless allow the parties an opportunity to fully address the

2  proper temporal scope of the meal break claim.  Based on the current evidence, the court

3  finds that there is no evidence of any meal break violation from October 12, 2008 (the

4  earliest date for which defendant has submitted records) to the present, and thus

5  GRANTS defendant's motion for summary judgment as to the meal break claim for that

6  time period.  Because there remains a triable issue of fact regarding the existence of

7  meal break violations from December 21, 2005 to October 11, 2008, the court will defer

8  its ruling until after Ecolab submits its new evidence and plaintiffs have an opportunity to

9  respond.  Ecolab shall have until **October 9, 2015** to file a supplemental brief, along with

10  evidence, regarding the viability of plaintiffs' meal break claim from 2005 to 2008.

11  Plaintiffs shall then have until **October 23, 2015** to file a responsive brief.  The briefs

12  shall not exceed five pages each.

13          Ecolab then argues that plaintiffs' remaining claims (specifically, the claims under

14  Cal. Bus. & Prof. Code § 17200, Cal. Labor Code § 226, and PAGA) must fail because

15  they are dependent on an unpaid wage claim.  Because the court has found that

16  plaintiffs' overtime claim remains viable, so too are these claims, and thus, Ecolab's

17  motion for summary judgment is DENIED on that basis.

18          With respect to the section 226 claim, Ecolab further argues that the presence of a

19  good-faith dispute precludes a finding that any violation was "knowing and intentional,"

20  and further argues that plaintiffs suffered no harm from any alleged violation.  First,

21  Ecolab's argument regarding the "good-faith dispute" is completely conclusory, as it

22  consists of only a one-line argument without any support for such a finding.  Ecolab's

23  motion is DENIED on that basis.

24          Second, as to harm, plaintiffs allege that they suffered harm "in not receiving their

25  overtime wages based on actual hours worked," creating a "substantial risk that without

26  accurate wage stubs the plaintiffs will continue not to be paid their overtime wages in

27  accordance with the law."  That alone distinguishes this case from the non-precedential

28  case cited by Ecolab, in which the Ninth Circuit noted that the plaintiff "conceded in his

United States District Court
Northern District of California

1   deposition that he experienced no harm as a result of his employer's alleged violations of

2   section 226(a), and that the alleged violations had no consequences." Villacres v. ABM

3   Industries Inc., 384 Fed. Appx. 626, 627 (9th Cir. 2010).  Accordingly, Ecolab's motion is

4   also DENIED on that basis.

5   B.      Motion for Decertification

6           1.      Legal Standard

7           The court may, at its discretion, decertify a class if the requirements of Federal

8   Rule of Civil Procedure 23 are not satisfied.  See, e.g., O'Connor v. Boeing North

9   American, Inc., 197 F.R.D. 404, 409–10 (C.D.Cal. 2000).  The standards used for

10  determination of class certification, contained in Rule 23 of the Federal Rules of Civil

11  Procedure, are applied in determining whether to decertify a class.  O'Connor, 197 F.R.D.

12  at 410.

13          Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality

14  and adequacy of representation in order to maintain a class.  Mazza v. American Honda

15  Motor Co., 666 F.3d 581, 588 (9th Cir. 2012).  That is, the class must be so numerous

16  that joinder of all members individually is "impracticable;" there must be questions of law

17  or fact common to the class; the claims or defenses of the class representative must be

18  typical of the claims or defenses of the class; and the class representative must be able

19  to protect fairly and adequately the interests of all members of the class.  See Fed. R.

20  Civ. P. 23(a)(1)-(4).

21          If the class is ascertainable and all four prerequisites of Rule 23(a) are satisfied,

22  the court must also find that the plaintiff has "satisf[ied] through evidentiary proof" at least

23  one of the three subsections of Rule 23(b).  Comcast Corp. v. Behrend, 133 S.Ct. 1426,

24  1432 (2013).  A class may be certified under Rule 23(b)(1) upon a showing that there is a

25  risk of substantial prejudice or inconsistent adjudications from separate actions.  Fed. R.

26  Civ. P. 23(b)(1).  A class may be certified under Rule 23(b)(2) if "the party opposing the

27  class has acted or refused to act on grounds that apply generally to the class, so that

28  final injunctive relief or corresponding declaratory relief is appropriate respecting the

United States District Court
Northern District of California

22

1    class as a whole."  Fed. R. Civ. P. 23(b)(2).  Finally, a class may be certified under Rule

2    23(b)(3) if a court finds that "questions of law or fact common to class members

3    predominate over any questions affecting only individual members, and that a class

4    action is superior to other available methods for fairly and efficiently adjudicating the

5    controversy."  Fed. R. Civ. P. 23(b)(3).

6              2.    Legal Analysis

7         Ecolab's primary challenge to certification is on the "predominance" prong of Rule

8    23(b)(3), although its motion also purports to challenge the commonality, typicality,

9    adequacy, and superiority prongs.

10        In its motion, Ecolab first addresses predominance and commonality together,

11   noting that the commonality analysis is "subsumed" by the predominance analysis.  With

12   regard to the overtime claim, Ecolab argues that individual issues predominate as to each

13   of the three asserted overtime exemptions.  First, as to the sales exemptions, Ecolab

14   argues that different RSMs may spend more or less than 50% of their time performing

15   sales activities, and that "many RSMs think their business is all sales, all the time, and

16   describe the 'service' part of the job as minimal," while others may minimize the sales

17   aspect of the job.

18        As an initial matter, having granted plaintiffs' motion for partial summary judgment

19   on both sales-related exemptions, the presence or absence of individual issues is now

20   moot.  Regardless, even if the court had not granted plaintiffs' motion, the court finds that

21   Ecolab's argument depends on the same re-casting of all duties as sales-related that has

22   been rejected by the California Supreme Court.  Ecolab relies on evidence regarding the

23   subjective belief of its employees, showing that they have adopted the "all sales, all the

24   time" viewpoint that was rejected in Ramirez.  Ecolab appears to suggest that, if enough

25   employees simply believe that they are salespeople, that is sufficient for individual issues

26   to predominate over common ones.  The court rejects that argument.  Employees'

27   subjective beliefs are irrelevant to the application of the sales-related overtime

28   exemptions.  If Ecolab had instead presented evidence that at least some of the RSMs

United States District Court
Northern District of California

1   actually spent more than 50% of their time performing tasks directly related to sales, that

2   would affect the predominance analysis.  However, as noted above in the context of the

3   summary judgment motions, Ecolab has failed to present evidence that even one RSM

4   spent more than 50% of his or her time, on a purely quantitative basis, involved in sales.

5   In other words, while Ecolab is correct that "variations among employees are material to

6   deciding" whether the employees are exempt, those variations must go to the time spent

7   on sales tasks.  Simply showing variations in employees' subjective beliefs about the

8   importance of sales is not sufficient.

9        Ecolab then makes a separate argument applicable to only the commissioned

10   salesperson exemption, arguing that some RSMs may not earn more than 1.5 times the

11   minimum wage for every hour during weeks in which they worked over 40 hours, as

12   required to trigger the exemption.  Again, having found that the commissioned

13   salesperson exemption does not apply, the presence or absence of individual issues is

14   now irrelevant.  In addition, on the merits, Ecolab has presented no evidence showing

15   that certain RSMs earn above the required income threshold while some do not.  Instead,

16   Ecolab relies on speculation that some of the RSMs may fall below the threshold, making

17   it possible that individual issues would predominate.  Such speculation is not sufficient to

18   warrant decertification.  Moreover, Ecolab has not presented evidence that any single

19   RSM receives commissions based on his or her own sales, further demonstrating that

20   any individual issues regarding the "1.5 times the minimum wage" prong are speculative.

21        With regard to the haz-mat exemption, Ecolab argues that different RSMs may

22   carry different amounts of the hazardous materials on different days.  Even if true, the

23   court has previously found that the haz-mat exemption does not apply to any of the

24   RSMs, because their regular duty is not that of drivers and because the drivers' hours of

25   service are not actually regulated.  Thus, the amount of materials carried by the RSMs is

26   irrelevant.

27        Apart from the overtime claims, Ecolab argues that individual inquiries

28   predominate regarding the meal break claim and derivative claims.  Taking the derivative

1    claims first, to the extent that they are derivative of the overtime claim, the court finds that

2    common issues do predominate over individual ones, for the same reasons described

3    above.

4         With regard to the meal break claim, the court will re-assess the predominance

5    analysis after the parties have submitted their supplemental evidence and briefing.

6         Next, Ecolab argues that the proposed class representatives are not typical of the

7    class, because other RSMs have submitted declarations stating that they spend the

8    majority of their time selling.  Again, Ecolab is placing far too much emphasis on the

9    subjective beliefs of its employees, which is irrelevant to the "purely quantitative" analysis

10   required under California law.  Given that Ecolab has not presented any evidence

11   showing that the proposed class representatives are atypical in terms of how they

12   actually spend their time while working, the court finds no basis on which to decertify the

13   class based on lack of typicality.

14        Ecolab then argues that the proposed class representatives are not adequate.

15   Specifically, Ecolab argues that Ross is not adequate because he is a former employee

16   and thus lacks standing to seek injunctive relief, and argues that Magee is not adequate

17   because he works as a SSRM (a Sales Service Route Manager), not a RSM (Route

18   Sales Manager), and thus falls outside of the class definition.

19        With respect to Ross, the court finds no reason why he, even as a former

20   employee, would not have standing to pursue claims for damages; and moreover, courts

21   in this district have found that "not only are former employees adequate representatives

22   of current employees in class actions seeking at least in part declaratory and/or injunctive

23   relief, but ... former employees provide superior representation in bringing claims against

24   the employer."  See, e.g., Mendez v. R+L Carriers, Inc., 2012 WL 5868973 (Nov. 19,

25   2012); Krzesniak v. Cendant Corp., 2007 WL 1795703 (June 20, 2007).

26        As to Magee, it appears undisputed that he works as a SSRM rather than as a

27   RSM.  Plaintiffs contend that this is a distinction without a difference, as SSRMs perform

28   the same functions as RSMs, the only difference being that they are assigned to work in

United States District Court
Northern District of California

25

1    a different division of Ecolab, referred to as the "PureForce" division.  Plaintiffs also

2    emphasize that, after the class was certified in state court, Magee (and the other SSRMs)

3    were included on the notice list provided by Ecolab to the notice administrator.

4         If the latter is true, plaintiffs may have an argument that Ecolab is estopped from

5    arguing that the SSRMs should not be in the class.  However, as it stands now, the

6    SSRMs are not within the definition of the class that was actually certified, which includes

7    only employees "who are/were Route Managers or Route Sales Managers."  If plaintiffs

8    wish to amend the class definition to include Sales Service Route Managers, they may

9    move to do so, but the court will not expand the class definition on its own.  Thus, based

10   on the current class definition, the court finds that Magee is not an adequate class

11   representative.  However, because the court finds that Ross is an adequate class

12   representative, Magee's lack of adequacy does not provide a basis for granting Ecolab's

13   motion for decertification.

14        Ecolab makes one other argument as to adequacy, but it is simply a rehash of

15   their sales-related argument that has been repeatedly rejected throughout this order.  In

16   short, Ecolab argues that Ross and Magee are not adequate class representatives

17   because they are "antagonistic to the RSM group, many of whom love selling full-time

18   and do not want their classification to change."  Whether some class members do indeed

19   "love selling" is entirely irrelevant to the claims at issue, and does not affect the Rule 23

20   analysis whatsoever.

21        Ecolab then challenges the superiority of a class action as a means of litigating

22   this case, although its arguments appear to be reiterations of its predominance and

23   adequacy arguments.  Specifically, Ecolab argues that "the lack of common evidence"

24   would make trial unmanageable, and that "RSMs have their own collection of

25   experiences, most of which are markedly different from those alleged by Ross/Magee."

26   Having already ruled on Ecolab's arguments regarding predominance and adequacy, the

27   court finds no new issues to be raised by these arguments, and finds that the superiority

28   requirement is met.

United States District Court
Northern District of California

Finally, after Ecolab's reply was filed, plaintiffs filed evidentiary objections, and in response to the objections, Ecolab filed a motion to strike, arguing that the so-called objections actually constituted an impermissible sur-reply, because the filing contained substantive arguments on the motion.  While the court agrees that the objections straddle the line between objections and argument, they do not constitute an improper sur-reply, and the court denies the motion to strike.

**CONCLUSION**

Based on the foregoing reasons, plaintiffs' motion for partial summary judgment is GRANTED; Ecolab's motion for summary judgment is DENIED with the exception of the meal break claim, for which summary judgment is GRANTED for the time period from October 12, 2008 to the present and DEFERRED for the time period from December 21, 2005 to October 11, 2008; and Ecolab's motion for decertification is DENIED, with the exception of the meal break claim, for which a decision on decertification is DEFERRED.

**IT IS SO ORDERED.**

Dated:  September 28, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge