Alejandro P. Gutierrez, SBN 107688
**HATHAWAY, PERRETT, WEBSTER,**
**POWERS, CHRISMAN & GUTIERREZ**
A Professional Corporation
200 Hathaway Building
5450 Telegraph Road
Post Office Box 3577
Ventura, CA  93006-3577
Tel: (805) 644-7111; Fax: (805) 644-8296
E-mail: agutierrez@hathawaylawfirm.com

Daniel J. Palay, SBN 159348
Michael A. Strauss, SBN 246718
Brian D. Hefelfinger, SBN 253054
**STRAUSS & PALAY, APC**
121 N. Fir Street, Suite F
Ventura, CA  93001
Tel:  (805) 641-6600; Fax: (805) 641-6607
E-mail: brian@strausspalaylaw.com

Attorneys for Plaintiff and the Certified Class
("Class Counsel")

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ROSS, an individual, for himself and those similarly situated; ROBERT MAGEE, an individual, for himself and those similarly situation; and ROES 1 through 30,000 and the Certified Class,<br><br>    Plaintiff,<br><br>  vs.<br><br>ECOLAB, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO:    C 13-05097 PJH<br>(Removed from San Francisco Superior Court Case No. CGC-09-495344)<br><br>*Assigned to:  Hon. Phyllis J. Hamilton*<br><br>**NOTICE OF MOTION; AND**<br><br>***UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Hearing:**<br>Date:    May 11, 2016<br>Time:    9:00 a.m.<br>Place:    Courtroom 3, Third Floor<br>         Oakland Courthouse<br>         1301 Clay Street<br>         Oakland, CA 94612 |

/ / /

/ / /

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 11, 2016, at 9:00 a.m., or as soon thereafter as the matter can be heard in in the above-entitled courtroom and courthouse located at 1301 Clay Street, Oakland, California 94612, plaintiffs MATTHEW ROSS and ROBERT MAGEE, on behalf of themselves and the Certified Class in this matter, will move for preliminary approval of a class-wide settlement reached herein.  This motion is *unopposed* by Defendant ECOLAB INC.

Said Motion shall be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities filed herewith, the Declaration of counsel Daniel J. Palay, Brian D. Hefelfinger, Michael A. Strauss, and Alejandro P. Gutierrez, the Declarations of Matthew Ross, Robert Magee and James Icard, the Joint Stipulation of Class Action Settlement and Release filed herein, and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

This Motion is made following the mediation and settlement of the matter, which occurred on February 12, 2016.


Dated:   April 6, 2016                                    **STRAUSS & PALAY**
                                                                       **A Professional Corporation**

                                                                       By: ___/s/_____
                                                                                Brian D. Hefelfinger
                                                                                Attorneys for Plaintiffs and the Class

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.    NATURE OF RELIEF SOUGHT ................................................................... 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

III.  NATURE OF THE PLAINTIFFS' OPERATIVE CLAIMS .......................... 3

IV.   PROCEDURAL HISTORY AND BACKGROUND ....................................... 3

V.    DISCOVERY AND INVESTIGATION ........................................................ 7

VI.   THE MEDIATIONS ...................................................................................... 9

VII.  SUMMARY OF THE SETTLEMENT ......................................................... 9

      A.  Settlement Terms ................................................................................ 9

      B.  Settlement Value .............................................................................. 11

VIII. THE SETTLEMENT MEETS, AND EXCEEDS, THE STANDARDS FOR
      PRELIMINARY APPROVAL ................................................................... 12

      A.  The Settlement Resulted from Arm's-Length Negotiations ............. 13

      B.  The Settlement Has No Obvious Deficiencies .................................. 15

IX.   THE NATURE AND METHOD OF CLASS NOTICE ............................... 16

X.    CLAIMS ADMINISTRATION ................................................................... 17

XI.   ATTORNEYS' FEES AND COSTS ............................................................ 17

XII.  ENHANCEMENT AWARD FOR NAMED PLAINTIFFS ........................ 17

XIII. PROPOSED SCHEDULE FOR CLAIMS ADMINISTRATION AND
      FINAL FAIRNESS HEARING ................................................................... 20

XIV.  CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ..................................................15

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................................................12

*Dukes v. Wal-Mart*, 131 S.Ct. 2541 (2011) ..................................................11

*Gatreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ..................................................12

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2nd Cir. 2005) ..................................................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................12

*Joel A. v. Giuliani*, 218 F.3d 132 (2nd Cir. 2000) ..................................................12

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ..................................................15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..................................................16

*Nat'l Rural Telecommunications Cooperative v. Directv, Inc.*, 221 F.R.D. 523
 (C.D. Cal. 2004) ..................................................13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
 688 F.2d 615 (C.D. Cal. 1982) ..................................................12, 13, 15

*Radcliffe v. Experian Information Solutions Inc.*, --- F.3d ---, 2013 WL 1831760, *5
 (April 22, 2013) ..................................................18

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................................13, 14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................18

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ..................................................14

**Treatises**

2 Newberg on Class Actions §11.24 (4th Ed. & Supp. 2002) ..................................................14

2 Newberg on Class Actions §8.32 ..................................................17

*Manual for Complex Litigation*, Fourth, § 22.661 (2004) ..................................................13

*Manual for Complex Litigation*, Fourth, §30.42 (2004) ..................................................14

*Manual for Complex Litigation*, Fourth, § 21.632 (2004) ..................................................12

**Rules**

F. R. Civ. P. Rule 23(b)(3) ......................................................................................... 12, 16, 17

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   NATURE OF RELIEF SOUGHT

By this unopposed motion, Plaintiffs and the Certified Class seek preliminary approval of a substantial settlement of all claims between the parties.   Previously, the class in this matter was certified on May 25, 2012 by the San Francisco Superior Court.   The District Court later affirmed the certification by denying the Defendant's decertification motion.   *See* ECF Docket No. 104, 117.   The parties now seek this honorable Court's approval of the settlement reached, effectively resolving this seven-year litigation.

The settlement requires Defendant Ecolab Inc. to pay $35 million to the 213 class members affected by the claims asserted in this action.   *See* Joint Stipulation of Class Action Settlement and Release (the "Settlement" or "Joint Stipulation," filed as ECF No. 129, and attached hereto).   The Settlement is in the best interest of the class members, both current and former employees of Ecolab, and the facts warrant approval of the settlement under governing Ninth Circuit standards.

## II.   INTRODUCTION AND SUMMARY OF ARGUMENT

On December 21, 2009, Plaintiff James Icard ("Icard"), on his own behalf, as well as on behalf of the similarly-situated, filed a class action lawsuit against Defendant Ecolab, Inc. ("Ecolab" or "Defendant"). Joint Stipulation, at p. 4; *see also,* Court's Order re: Motions for Summary Judgment and Motion for Decertification, ECF No. 104, at p. 2.   Ecolab services and maintains commercial dishwashers, dispensers, and related machines throughout California (and other states).   ECF No. 104, at pp. 1-2.   Icard is a former employee of Defendant and he alleged that Defendant failed to pay him all wages and penalties owed, including overtime and wages owed at the time his employment terminated, or to provide him with adequate paycheck stubs.   Joint Stipulation, at p. 4.   Plaintiffs Matthew Ross and Robert Magee were confirmed as new class representatives in the matter, in or about October of 2013.   ECF No. 104, at p. 2.

The class represents and consists of all employees of Ecolab, who are/were Route Managers, Route Sales Managers, or PureForce division Sales Service Route Managers (hereafter referred to collectively as "RSMs"), as of the date the San Francisco Superior Court certified a class on May 25, 2012, as amended on November 20, 2015, unless an individual opted out of the Action.   There are a total of 213 Class Members, including the Named Plaintiffs.   *See* Plaintiff's Third Amended

1    Complaint, ECF No. 40, at ¶ 13; Joint Stipulation, "Definitions" par. "F."

2        The parties attended private mediation three times in this matter – on August 8, 2014, with

3    Michael J. Loeb, Esq. of JAMS in San Francisco, California; on April 16, 2015, with Michael J. Loeb,

4    in Los Angeles, California; and finally, with Hunter R. Hughes III, Esq, in Los Angeles, California, in

5    February 2016.  Hefelfinger Decl., ¶¶ 15-17.  At the third and final mediation, the parties agreed to

6    terms of a settlement of the action, which was memorialized in a Memorandum of Understanding

7    ("MOU") executed by all parties and counsel.  Hefelfinger Decl., ¶ 17.  Thereafter, the parties prepared

8    the long-form Joint Stipulation.  Hefelfinger Decl., ¶ 18, and Exhibit 1 thereto.

9        Under the Settlement, Ecolab has agreed to pay an all-in total of $35,000,000.00 (plus

10   employer-side taxes), the rough equivalent of 15 overtime hours per week to the class members for the

11   claims period plus all legal interest on these amounts owed (after fees).  With 213 class members, this

12   represents a *per capita* recovery of $164,319.24 before deduction of fees, litigation expenses,

13   administration costs and incentive awards.  To the knowledge of Plaintiffs' counsel, this is one of the

14   highest (if not the highest) *per capita* wage/hour settlement recoveries ever achieved in California.  In

15   short, the settlement represents a very favorable result for the class members.  Palay Decl., ¶ 38.

16       The terms of the settlement are set forth in the Joint Stipulation of Settlement and Release

17   entered into by and between the parties and attached to the Hefelfinger Declaration, filed herewith, as

18   Exhibit 1.  Pursuant to the Settlement, and the submissions provided with this Motion, Plaintiffs

19   respectfully request that the Court enter an order: (1) preliminarily approving the proposed Settlement;

20   (2) directing that the Class be given notice of the Settlement, in the form of the proposed Notice

21   discussed hereafter; and (3) setting a "final fairness" hearing to consider final approval of the

22   Settlement, entry of a proposed final judgment, and Plaintiffs' counsels' application for an award of

23   attorney's fees and reimbursement of costs and expenses, as well as an enhancement award to the Class

24   Representatives.

25       The parties have agreed on the form of all the necessary documents to be provided to Class

26   Members to inform them of the Settlement.  Said forms are provided herewith for review by the Court.

27   The Notice of Proposed Class Action Settlement and Claim Form are Exhibits A and B, respectively, to

28   the Stipulation of Settlement (and are filed herewith).  The parties have further agreed as to the terms

and conditions under which notice will be provided, designation of a claims administrator (CPT Group, Inc.), the estimated fees of the Claims Administrator, the contingencies or conditions to the Settlement's final approval, and other terms that are necessary and customarily provided by such class action settlements.

The proposed settlement meets the criteria for preliminary approval in the Ninth Circuit, and is well within the range of what would be fair, reasonable, and adequate in this case, and thus the Plaintiffs request that the Court take the first step in the approval process – granting the requested preliminary approval of the Settlement.

## III.   NATURE OF THE PLAINTIFFS' OPERATIVE CLAIMS

The operative Complaint in this matter has four causes of action.  The first is for unpaid wages, interest thereon, and a statutory penalty under California Labor Code section 203.  The second is for unfair business practices in violation of California Business and Professions Code section 17200 *et seq.* (the "UCL").  The third cause of action seeks penalties for violation of California Labor Code section 226.  Together, these first three causes of action seek unpaid overtime premium pay and wage statement penalties from Ecolab for members of the class for the period from December 21, 2005 to the present.  *See* ECF No. 40.

The fourth cause of action is for civil penalties available under the Private Attorneys General Act of 2004, California Labor Code section 2699 *et seq.* (the "PAGA").  The PAGA claim seeks civil penalties against Ecolab for violation of various sections of the Labor Code.  The time period covered by the PAGA claim is from October 2, 2012 to the present.  (*See* ECF Doc. No. 37 at p. 2, explaining PAGA claim period).

## IV.   PROCEDURAL HISTORY AND BACKGROUND

Plaintiffs and the Certified Class have worked as RSMs for Ecolab, which describes itself as "the global leader in water, hygiene, and energy technologies and services."  The parties agree that the RSMs travel to customer sites of Ecolab's customers including restaurants and other businesses in the hospitality industry in order to provide service to their commercial dishwashers, which are leased from Ecolab.  Specifically, the RSMs install, repair, and otherwise maintain the dishwashers, and also promote products such as detergents and sanitizers to the customers.  *See* ECF No. 104, pp. 1:23 – 2:3.

1    Plaintiffs claim that they have been misclassified as "exempt," and thus have not received the overtime

2    pay and meal breaks to which they were entitled.  *Id.*

3        The suit was originally filed in San Francisco Superior Court on December 21, 2009 by James

4    Icard on behalf of himself and a putative class of Ecolab employees who alleged that Ecolab failed to

5    pay all wages owed, including overtime and double-time and failed to provide adequate itemized wages

6    statements, and failed to provide mandated meal breaks.  Ecolab maintains that the RSMs are/were

7    exempt employees not entitled to overtime wages.  Palay Declaration, ¶ 4.

8        On May 25, 2012, the San Francisco County Superior Court issued an Order Certifying the

9    Class, defined as all employees of Ecolab who are/were Route Managers or Route Sales Managers,

10   who have worked in California between December 21, 2005 and the present, who do/did not cross state

11   lines in performance of their duties, and have not received full and correct pay for all hours worked and

12   have not received accurate itemized wage statements required pursuant to Labor Code section 226, and

13   who have not fully released all of the claims made in the lawsuit.  Class Notice and opt-out forms were

14   sent to the putative class members, whose contact information was provided by Ecolab.   Palay

15   Declaration, ¶ 6.

16       In May of 2012, Ecolab brought a Motion for Summary Judgment, or in the Alternative

17   Adjudication of Issues, and then withdrew the motion in August 2012.  In January 2013, Ecolab again

18   filed a Motion for Summary Judgment, or in the Alternative Adjudication of Causes of Action, arguing

19   that Plaintiff's causes of action for wages owed, inaccurate wage statements and unfair business

20   practices had no merit because Route Sales Managers were subject to the "commissioned salesperson"

21   exemption, the "outside sales" exemption, and the "truck driver" or "hazardous materials" (also known

22   as "haz-mat") exemption.  Additionally, Ecolab argued that it had always provided meal periods.  Palay

23   Declaration, ¶ 7.

24       In January 2013, Plaintiffs brought a motion for summary adjudication as to Ecolab's so-called

25   "haz-mat" exemption defense.  The Superior Court continued the motions for summary adjudication

26   until such time as new class representatives were selected and approved to substitute for class

27   representative James Icard.  On August 28, 2013, the Superior Court granted Plaintiffs' motion for an

28   order substituting James Icard with the current class representatives, Matthew Ross and Robert Magee,

1  as Ecolab had raised a question about Mr. Icard's suitability as a class representative.   Palay
2  Declaration, ¶ 8.

3     On September 26, 2013, the Superior Court denied Ecolab's Motion for Summary
4  Judgment/Adjudication.   The Court continued Plaintiffs' motion for summary adjudication to
5  December 19, 2013 for further hearing, as the Court desired additional briefing on the "haz-mat"
6  exemption defense.   Palay Declaration, ¶ 9.

7     On October 31, 2013, Ecolab removed this action to federal court.   On December 2, 2013,
8  Plaintiffs filed a Third Amended Complaint for wages owed, violations of Business & Professions
9  Code § 17200, violation of Labor Code § 226, and violation of California Labor Code Private Attorney
10 General's Act (the "PAGA").   The PAGA cause of action was added after statutory notice was sent via
11 certified mail to the California Labor and Workforce Development Agency ("LWDA") as well as to
12 Ecolab.  On December 16, 2013, Ecolab filed a motion to dismiss the Third Amended Complaint on the
13 basis that it had been filed without leave of court.   The court granted the motion and instructed
14 Plaintiffs to file a motion for leave to amend, which they did on February 6, 2014.   The court granted
15 Plaintiffs' motion and they re-filed their Third Amended Complaint on April 7, 2014.   Palay
16 Declaration, ¶¶ 10-13.

17    In its Answer to Plaintiffs' TAC, Ecolab asserted twenty-seven affirmative defenses. On May
18 16, 2014, Plaintiffs filed a motion to strike many of Ecolab's affirmative defenses as insufficiently pled,
19 which motion was granted in part by the district court on July 23, 2014.  The court ordered Ecolab to
20 file an amended Answer within 21 days of the order.  *Id.*

21    On February 25, 2015, Plaintiffs filed a motion for partial summary judgment as to Ecolab's
22 affirmative defenses based on the outside salesperson exemption, the commissioned sales exemption
23 and the "haz-mat" exemption.   Defendant Ecolab simultaneously re-filed its prior motion for summary
24 judgment asserting that Plaintiffs are exempt from overtime based on each of the three exemptions.   At
25 the same time, Ecolab also filed a motion to decertify the class.  *Id.* at ¶ 14.

26    On September 28, 2015, the court issued its Order Re Motions for Summary Judgment and
27 Motion for Decertification.  *See* ECF No. 104.   In a 27-page decision, the court granted Plaintiffs'
28 motion for partial summary judgment as to the outside salesperson exemption and denied Ecolab's

motion for summary judgment on the exemption.  Similarly, the court granted Plaintiffs' motion for summary judgment as to the "commissioned salesperson" exemption and denied Ecolab's summary judgment motion on the same issue.  *Id.* at 15:16 – 21.  Finally, the court granted Plaintiffs' motion for partial summary judgment as to the "haz-mat" exemption and denied Ecolab's summary judgment motion on the issue.  *Id.* at 18:8–19:20.  As a result of the court granting partial summary judgment in Plaintiffs' favor on all three asserted overtime exemptions, Ecolab's motion for summary judgment on the overtime claim as a whole was denied.  *Id.* at 19:21 – 23.

As to Plaintiffs' meal break claim, the court granted Ecolab's motion for summary judgment as to the meal break claim from October 12, 2008 to the present.  The court allowed Ecolab to file a supplemental brief, along with evidence, regarding the viability of Plaintiffs' meal break claim from 2005 to 2008 and deferred its ruling in that regard.  *Id.* at 21:2 – 12.  The court also denied Ecolab's motion for summary judgment as to Plaintiffs' remaining claims under Cal. Bus. & Prof. Code § 17200, Labor Code § 226, and PAGA. *Id.* at 21:13-22:4.  The court further denied Ecolab's motion for class decertification. *Id.* at 27:12.  Soon thereafter, Ecolab hired new counsel on the case, Littler Mendelson.

On October 9, 2015, Ecolab filed a supplemental brief related to the meal break claim and Plaintiffs filed their responsive brief on October 22, 2015.  On October 28, 2015, Ecolab filed a motion for certification of interlocutory appeal of the court's September 28, 2015 Order pursuant to 28 U.S.C. section 1292(b).

On November 3, 2015, the court issued its Order re Meal Break Claim denying Ecolab's motion for summary judgment as to the meal break claim from December 21, 2005 to October 11, 2008, and the Court further denied Ecolab's motion for decertification as to the meal break claim.  ECF No. 117.

On November 11, 2015, Plaintiffs filed a responsive brief to Ecolab's section 1292(b) motion and on November 18, 2015, Ecolab filed its reply.  On November 30, 2015, the parties filed a stipulation and proposed order to stay the proceedings to allow for a third mediation and on December 2, 2015, the court issued the Order staying the proceedings.  Palay Dec., ¶ 20.

On February 12, 2016, the parties mediated the matter for the third time, with a new mediator, Hunter Hughes.  At that time, the matter was successfully resolved.  *Id.,* at ¶ 21.

/ / /

## V.   DISCOVERY AND INVESTIGATION

Over the course of the litigation, the parties engaged in very active and thorough discovery. Plaintiffs propounded and responded to multiple sets of interrogatories, requests for production, and requests for admissions.   Over a million pages of documents – consisting of payroll records and employee data – were produced by Ecolab to Plaintiffs' counsel during this case.   Plaintiffs also took the depositions of various Ecolab employees who were the "most knowledgeable" concerning various topics, along with Ecolab's designated expert witness.   Plaintiffs' counsel defended numerous depositions of class members and the class representatives.   In total, there were more than thirty (30) depositions taken in this case.  *See* Palay Decl., ¶¶ 23-26; Gutierrez Decl., ¶¶ 4-5; Hefelfinger Decl., ¶¶ 11-14.

The written discovery in the matter also was significant.   In addition to the hundreds of written discovery requests, propounded and answered, Ecolab also produced thousands upon thousands of pages (again, exceeding one million in total) of documents, each of which was reviewed and analyzed by Class Counsel.   These documents proved crucial in regard to the investigation of the claims raised in the litigation, and in making ultimate determinations as to which alleged Labor Code violations could, in the opinion of Class Counsel, be factually established.  *See Id.*

Among the documents produced by Ecolab were many thousands of Service Detail Reports ("SDRs").   The SDRs are reports generated by the RSMs at customer locations, and they are akin to receipts.   The SDRs show the services performed by the RSM who serviced a client, and it also shows the date and the start and end time the RSM performed the services.   Obtaining and reviewing the SDRs was critical to the investigation of the claims.  Palay Decl., ¶¶ 22-24; Gutierrez Decl., ¶ 4.

Class Counsel spent days upon days of analyzing the SDRs, the payroll data, the "commission" statements – for each and every class member – and the review of this documentation was critical to the outcome of the case.   This review and analysis was instrumental in preparing Plaintiffs' dispositive motions regarding the three exemptions asserted by Ecolab.  *Id.*   For instance, Class Counsel compiled six months of "commission" data related selected class members, including the twelve individuals whose declarations Ecolab submitted with its summary judgment motion.   They prepared spreadsheets of the total direct and indirect commissions and percentages of sales not related to any sales effort by

1   the route manager.  They also prepared a schedule of average percentages of commissions earned

2   through the sales by distributors.  Based on their analyses, Class Counsel were able to prove that class

3   members were not subject to the commissioned sales exemption. Gutierrez Decl., ¶ 4.

4          Further, Class Counsel went through tens of thousands of Service Detail Reports for multiple

5   class members, including those for the 12 individuals whose declarations Ecolab submitted with its

6   motion for summary judgment.   From those SDRs, Class Counsel compiled "day in the life"

7   spreadsheets of the tasks performed by the RSMs, the times spent at each customer location, and the

8   average hours worked per day.  Class Counsel also reviewed and summarized over thirty deposition

9   transcripts for evidence of the RSMs' actual day-to-day tasks.  This work was crucial in proving that

10  RSMs were working primarily rendering hands-on service, not selling products, and thus not subject to

11  the outside salesperson exemption.   Gutierrez Decl., ¶ 4.  These efforts were also instrumental to the

12  mediations conducted in the case.

13         Due in part to the limitations of the hours-worked data contained in the SDR records, Class

14  Counsel determined that it was necessary to interview dozens of Class Members to gauge the accuracy

15  of these records and, if they were not accurate, to better assess the number of overtime hours worked by

16  Class Members.  Class Counsel thus conducted extensive interviews with close to 100 class members.

17  Hefelfinger Decl., ¶ 11; Palay Decl, ¶ 23; Gutierrez Decl., ¶ 5.

18         For instance, Class Counsel interviewed Class Members regarding their duties at Ecolab, the

19  amount of overtime hours they worked, the amount of weekend duty they had, the contents of their

20  paystubs, the materials they carried on their Ecolab vehicles and the quantities of such materials,

21  whether they kept log books, whether they had a commercial driver's license (none did), whether they

22  were hired as "drivers" (none were), and whether they had "haz/mat" training (none did).  Gutierrez

23  Decl., ¶ 5.  In addition, Class Counsel kept in constant contact with a number of those individuals

24  throughout the course of this action.

25         A large number of Class Members in this action were particularly pro-active and interested in

26  all aspects of the litigation and Class Counsel were constantly fielding inquiries from those individuals

27  as to the status of the case.  Class Counsel relied on their interviews with Class Members to provide key

28  facts needed to support Plaintiffs' successful motion for class certification and successful summary

judgment motions relating to the exemptions asserted by Ecolab.  This was in addition to the painstaking research Class Counsel conducted related to the legislative history, both state and federal, of the truck driver/motor carrier exemption to overtime laws.  Based on such research, Class Counsel prepared a comprehensive Power Point presentation of all applicable regulations, authorities and interpretive bulletins, to be used if necessary to demonstrate to the Court the purpose of the exemption and why it only applied to drivers.  Gutierrez Decl., ¶ 5.

Further, with all of this information gathered, Class Counsel were able to properly evaluate Ecolab's liability for unpaid overtime and PAGA penalties, for mediation (and, if necessary, trial) purposes.

## VI.   THE MEDIATIONS

This matter was mediated on three (3) separate occasions.  A first mediation occurred before Michael Loeb on February 10, 2014.  A second mediation occurred before the same mediator on April 16, 2015.  Both were unsuccessful.  On February 12, 2016, the parties attended a mediation before Hunter Hughes.  Palay Decl., ¶ 31.  As noted, prior to the mediation, the parties exchanged all necessary payroll and related information necessary to permit a full and complete analysis of the value of the potential recovery.  The information included the dates of employment of each class member, the salary and commissions earned by each class member throughout the claims period, and the names and dates of all class members who at any time during the claims period took a personal leave of absence.  Palay Decl., ¶¶ 31-32.  Through discovery, the parties had gained even more knowledge of the claims and value thereof.  In short, the parties began negotiations at the mediation with full knowledge of the strengths, weaknesses, and value of the claims and defenses asserted.

The third mediation was successful.  The parties entered into a settlement terms in a memorandum of understanding at the mediation.  The proposed long-form Settlement echoes the terms of that settlement terms sheet.  The key terms of the settlement are discussed in the following section.

## VII.   SUMMARY OF THE SETTLEMENT

### A.   Settlement Terms.

The settlement discussions between the parties have been non-collusive, adversarial, and at arm's length.  The investigation and discovery described above, the parties' ongoing case evaluations and

exchanges of ideas, the full and complete briefing regarding class certification and summary judgment/adjudication, the Court's rulings, and multiple mediation sessions have all combined to enable the two sides to fully and completely assess the merits of their respective positions.

The terms of the settlement are set forth in the Settlement Agreement attached hereto as Exhibit 1 and incorporated herein by reference.  The principal terms are:

(a)  Defendant will pay a Maximum Settlement Amount of $35,000,000.00.  This sum includes payments made to claimants, $100,000 payable to the California Labor and Workforce Development Agency for PAGA penalties (the "LWDA payment"), settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the named plaintiffs.

(b) After the LWDA payment, settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the named plaintiffs, the remaining amount will be disbursed to all class members. This amount is designated in the Settlement Agreement as the Net Settlement Amount.

(c)  Defendant will not object to an award of attorneys' fees to Class Counsel not to exceed 33% of the Maximum Settlement, and up to $100,000.00 in actual costs and expenses.

(e)  Plaintiffs will seek incentive awards up to a maximum of $8,000.00 each for the current class representatives, Ross and Magee), and up to a maximum of $3,000.00 for former class representative James Icard.  Defendant will not object to the requested incentive awards to each of the plaintiffs up to these amounts amount.  The Settlement Agreement explicitly relates that the settlement of the action is <u>not</u> contingent upon the incentive awards to the class representatives.

(f)  Each Class Member will be entitled to receive a portion of the amount of the Net Settlement Amount, determined by converting the Net Settlement Amount into a weekly value. The weekly value will be established by dividing the Net Settlement Amount by all full workweeks worked by the 213 members of the Class as an RSM. The weeks worked during the class period will be derived from the hire and termination dates and payroll data in Ecolab's records to be supplied to the Administrator. Leave of absence weeks will be excluded.  The gross settlement award for each Class Member will then be determined by multiplying the weekly value by the number of weeks they individually worked during the class period.

(g)  The parties have selected CPT Group, Inc. ("CPT") as the Claims Administrator.  CPT has

provided a quotation of $11,689.18 for its administration expenses, and the parties have stipulated to a "not to exceed" amount of $15,000 for administration expenses.

(H)     The parties have agreed on a Notice of Settlement form to be mailed to the Class, which is attached hereto as Exhibit A to the Settlement.  The Notice of Settlement informs the class members of the essential terms of the Settlement, and their right to object thereto.

(h)     The Notice Packet will be mailed by First Class Mail.

(i)     Class members will have forty-five (45) calendar days from the date the Notice of Settlement packets are mailed to postmark their objections, if any.

(j)     The Claims Administrator will perform a skip-trace on returned mail and re-mail Claim Forms to an updated address (if any) within five (5) calendar days of receiving notice that a Notice of Settlement packet was undeliverable.

**B.  <u>Settlement Value</u>.**

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy.  Clearly, there were significant disagreements between the parties as to the facts, the law, and the application of both to Defendant's business model.  As an example, the parties disagreed substantially on (1) whether class certification was proper given the disparity between the damages of individual class members and in light of *Dukes v. Wal-Mart*, 131 S.Ct. 2541 (2011); (2) whether Defendant properly classified the Class Members as exempt from California overtime pay pursuant to one or more of three claimed exemptions– namely, the outside sales exemption, commission exemption and haz/mat exemption; (3) whether Plaintiffs had standing to pursue PAGA and waiting-time penalties; and (4) whether the law permitted proving damages at trial by use of statistical evidence.

After significant discovery, litigation, motion practice, and mediation preparations in the case, Plaintiffs valued the realistic range of provable damages at between $20 million and $50 million.  Given the risks of litigation, including the uncertainty over whether Defendant would prevail in an appeal of the final judgment on the basis of whether the hazmat/sales/commission exemption decision was proper, uncertainty regarding the amount of overtime hours worked, and the possibility that the Court would reduce any PAGA penalties against Defendant, the settlement of $35 million represents a reasonable comprise.  In essence, the $35 million figure roughly equals an average of 15 overtime hours worked per

1   employee per week, along with interest thereon.  The average payment (measured by dividing amongst the

2   class members the Net Settlement Amount after payment of expenses, administration costs and fees) will

3   be in excess of $100,000 to each class member.   Palay Decl., ¶ 38 subd. (a).

4   **VIII.   THE SETTLEMENT MEETS, AND EXCEEDS, THE STANDARDS FOR**

5   **PRELIMINARY APPROVAL**

6         Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must

7   receive court approval.  The court has broad discretion to grant such approval and should do so where

8   the proposed settlement is "fair, adequate, reasonable, and not a product of collusion."  *Hanlon v.*

9   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir.

10  2000).   In determining whether a proposed settlement should be approved, the Ninth Circuit has a

11  "strong judicial policy that favors settlement, particularly where complex class action litigation is

12  concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

13        Court approval involves a two-step process in which the Court first determines whether a

14  proposed class action settlement deserves preliminary approval and the, after notice is given to the

15  Class Members, whether final approval is warranted.  *Manual for Complex Litigation*, Fourth, § 21.632

16  (2004).  *See Hanlon*, 150 F.3d at 1019 ("The court ordinarily holds a preliminary hearing to determine

17  whether there is a likelihood it could approve the settlement before conducting a full 'fairness

18  hearing.'").

19        At the preliminary approval stage, the Court need only "determine whether the proposed

20  settlement is within the range of possible approval."  *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th

21  Cir. 1982).  Ultimately, a class action should be approved if it "is fundamentally fair, adequate and

22  reasonable."  *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice v. Civil Service Com'n of City and*

23  *County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("The court's intrusion on what is

24  otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the

25  extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

26  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole,

27  is fair, reasonable and adequate to all concerned.").  There is a "strong initial presumption that the

28  compromise is fair and reasonable."  *Hanlon*, 150 F.3d at 1019.

1    Although at this stage of preliminary approval, the Court is not expected to engage in the more-

2  rigorous analysis that is required for final approval (*see Manual for Complex Litigation*, Fourth, §

3  22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several

4  factors, including some or all of the following:

> [T]he strength of plaintiffs' case; the risk, expense, complexity and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed, and the stage of the proceedings;
> the experience and views of counsel; the presence of a governmental
> participant; and the reaction of the Class Members to the proposed
> settlement.

9  *Officers for Justice*, 688 F.2d at 625.

10    Not all of the above factors apply to every class action settlement, and one factor alone may

11  prove determinative in finding sufficient grounds for court approval.  *Nat'l Rural Telecommunications*

12  *Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  District courts have wide

13  discretion in assessing the weight and applicability of each factor.  *Id.*

14    **A.   <u>The Settlement Resulted from Arm's-Length Negotiations</u>.**

15    The Ninth Circuit has shown longstanding support of settlements reached through arms' length

16  negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir.

17  2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision

18  of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027).  The primary reason for

19  deferring to such settlements is the experience of counsel and the participation of a neutral, both of

20  which factors are present here:

> [T]he court's intrusion upon what is otherwise a private consensual
> agreement negotiated between the parties to a lawsuit must be
> limited to the extent necessary to reach a reasoned judgment that the
> agreement is not the product of fraud or overreaching by, or
> collusion between, the negotiating parties, and that the settlement,
> taken as a whole, is fair, reasonable and adequate to all concerned.

25  *Id.* at 965 (quoting *Officers for Justice*, 688 F.2d at 625).

26    The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive,

27  negotiated resolution, and have never prescribed a particular formula by which that outcome must be

28  tested." *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the *Rodriguez* court explained, "In reality,

parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 Newberg on Class Actions §11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation*, Fourth, §30.42 (2002).

The proposed Settlement here is the product of literally weeks, months and years of preparation and arm's-length negotiations between the parties. Plaintiffs conducted significant investigation of the facts and law during the prosecution of this action, including (1) extensive review and analysis of critical documents, (2) comprehensive depositions of key Ecolab personnel, (3) filing a certification motion which the Defendant strenuously opposed and thereafter sought reconsideration and appeal to the Ninth Circuit, (4) investigating, researching and filing a motions for summary judgment, (5) researching and drafting a comprehensive oppositions to Defendant's motions for summary judgment, (6) obtaining and reviewing detailed employment records and wage histories for all class members, and (7) retention of Richard Drogin, Ph.D. for the purpose of conducting a comprehensive analysis of the employment data obtained. Negotiations between counsel occurred over the course of several years, and included three separate private mediation sessions. Hefelfinger Decl., ¶ 11; Palay Decl., ¶¶ 6-30.

Plaintiffs' counsel considered the strengths and weaknesses of their case, and of Ecolab's defenses. Considerable effort has been put forth to analyze the law as it would apply to the facts of this matter, including the Plaintiffs' claim that they and the class were improperly classified as exempt from overtime under the HazMat, Sales, and/or Commission exemptions. Palay Decl., ¶¶ 27-35. This settlement of $35 million represents nearly all, if not all, of the potential overtime damages and interest that the class may have recovered. Palay Decl., ¶ 27.

The parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The opinion of experienced counsel, as here, supporting the settlement is entitled to considerable weight. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005).

1  *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is

2  entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)

3  (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).[1]

4       Plaintiffs have also taken into account the uncertainty and risk of the outcome of further

5  litigation, and the difficulties and delays inherent in such litigation. Plaintiffs are also aware of the

6  burdens of proof necessary to establish the amount of damages for the class members given that so-

7  called "trials by formula" are discouraged, not to mention the strong likelihood that Defendant would

8  appeal the Court's decision that the exemptions were inapplicable.

9       Based on the foregoing, Plaintiffs and their counsel have determined that the settlement set

10  forth in the Agreement is a fair, adequate and reasonable settlement, and is in the best interests of

11  Plaintiffs and the proposed Settlement Class.  Palay Decl., ¶ 38; Gutierrez Decl. ¶ 8.  Defendant also

12  has expended substantial amounts of time, energy and resources in connection with the litigation, and

13  unless this Settlement is approved, will continue to have to do so.  Defendant has, therefore, agreed to

14  settle in the manner and upon the terms set forth in the Settlement Agreement, to put to rest the claims

15  as set forth in the Class Action.

16       **B.   <u>The Settlement Has No Obvious Deficiencies.</u>**

17       The proposed settlement has no obvious deficiencies.  Under the terms of the settlement,

18  Defendant will make a payment of $35,000,000.00.  The settlement provides no preferential treatment

19  for Plaintiffs or other Class Members.  Plaintiffs will receive distributions from the settlement proceeds

20  calculated in the same manner as the distributions to all other Class Members.[2]

21       There is no standard or benchmark for determining whether any given settlement is fair.

22  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing,

23  gross approximations and rough justice.'"  *Officers for Justice*, 688 F.2d at 625 (citation omitted).  In

24  making its determination, the Court should weigh the benefits that the settlement will realize for the

25  class against the uncertainty of litigation and the possibility that the class members would obtain no

---

[1] The Class has been represented by highly experienced Class Counsel.  *See* the Declarations of counsel Alejandro P. Gutierrez, Daniel J. Palay, and Brian D. Hefelfinger, filed herewith.

[2] In addition, the named plaintiffs will provide Defendant with releases that are more extensive than the release provided by absent class members.

relief in the absence of a settlement.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.")

Throughout this litigation, Plaintiffs have argued that Defendant should be held liable for unpaid overtime because the Haz/Mat and sales exemptions do not apply.  Defendant, on the other hand, has steadfastly maintained that Plaintiffs and the class were properly classified as exempt under the three exemptions.  Defendant has also maintained that Plaintiffs and the class could never prove class-wide damages because of the varied nature of the work performed by the Class Members.  This Settlement represents a substantial recovery for the class, and a well-crafted compromise of the divergent positions of the parties in relation to these issues.

The Settlement has been reached after considerable negotiation, and involving the mediation efforts and expertise of two highly experienced mediators.  Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this Settlement represents a responsible means of addressing the claims of Plaintiffs, and the defenses of Defendant.  The Settlement – which approximates damages in the case assuming that 15 overtime hours per week, per class member, is proven – represents a very probable outcome of the matter.

Depending on the testimony of the RSMs, it is possible that the overtime figure at trial, as calculated by Plaintiffs' expert witness, would be less than the 15 weekly overtime hours the Settlement provides, or it is possible that it would be higher.  The Settlement, however, mitigates the risk to both the Plaintiffs and the Defendants by fixing the overtime figure at a probable outcome.

## IX.   THE NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to Class Members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise."  Fed. R. Civ. P. 23(e)(B).  Here, the parties have agreed upon a notice packet that will be mailed to all last known addresses in the Defendant's records, updated via use of the National Change of Address database.  This direct mail notice is the most efficient and effective

method for notifying class members.

As for the content of the notice, Rule 23(c)(2) requires that the notice inform prospective class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule23(c)(3).   Rule 23(e) generally requires the same concepts.   "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  2 Newberg on Class Actions §8.32 (4th Ed. & Supp. 2002) at 8-103.  The proposed Notice in this matter meets all of these requirements.

## X.   CLAIMS ADMINISTRATION

The parties have agreed to the appointment of CPT Group, Inc. as the Claims/Class Administrator.   CPT has acted as claims administrator in numerous wage and hour class actions prosecuted by Class Counsel, CPT has provided an estimate that its expenses will not exceed $11,689.18.  The parties have further allowed for any potential overrun, stipulating to a "not to exceed" amount of $15,000 for claims administration costs.

## XI.  ATTORNEYS' FEES AND COSTS

The Settlement Agreement contemplates that Class Counsel will apply to the Court for an award to be paid from this common fund established for the benefit of the class.   Although the Settlement Agreement permits Class Counsel to seek fees of 33%, Class Counsel intends to seek fees of 30 percent of the Maximum Settlement Amount (i.e., $10,500,000.00) as well as costs and expenses not to exceed $100,000.00.  The request for this award is disclosed in the proposed Notice.

Class Counsel will file their motion for an award of fees and costs in a timely manner such that class members have the required Northern District motion notice period to review the same prior to the expiration of the time to object to the settlement.

## XII.  ENHANCEMENT AWARD FOR NAMED PLAINTIFFS

The Settlement Agreement (Exhibit 1) contemplates that the named plaintiffs will apply to the Court for an incentive award to be paid from the common fund established for the benefit of the class.

The current named plaintiffs, Ross and Magee, will each seek an incentive award of up to $8,000.00. Former named plaintiff Mr. Icard will seek an incentive award of up to $3,000.00. These incentive awards are reflective of the considerable time, effort and risk that the named plaintiffs expended and were exposed to by virtue of the action.

Defendant has agreed not to object to Plaintiffs' request for an enhancement. The request for these incentive awards is fully disclosed in the proposed Notice. The named plaintiffs will file their motion for an award in a timely manner such that class members have the appropriate Northern District notice period to review the same prior to the expiration of the time to object to the settlement.

The Settlement Agreement explicitly relates that the settlement of the action is <u>not</u> contingent upon the incentive awards to the class representatives. *See, e.g., Radcliffe v. Experian Information Solutions Inc.,* --- F.3d ---, 2013 WL 1831760, *5 (April 22, 2013) (disapproving class action settlement because incentive awards were conditioned on the representatives' support of the settlement). The amounts sought will be up to $19,000.00 in the aggregate total, and the Court, in its discretion, may approve a lower amount.

The requested award amounts are not disproportionately large in comparison to the amounts the Class Members will receive in the settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 975-978 (9th Cir. 2003) (reversing a district court's approval of class action settlement because the settlement provided for disproportionately large payments to class representatives – an average of $30,000 for each when the average payout to non-class representatives was roughly $1,000). The requested amount of up to $8,000.00 for plaintiffs Ross and Magee, and up to $3,000.00 for former representative Icard, is much less than the average payout to Class Members here. Although Plaintiffs will be filing a motion for incentive awards with their motion for final approval of the class action settlement, Plaintiffs note that "the district court must evaluate their awards individually, using relevant factors 'includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation'" and other risks. *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the current and former named Plaintiffs have dedicated themselves to representing the Class Members' interests. First, Plaintiff Icard stepped forward and decided to file in instant case while

still employed by Ecolab in order to force Ecolab to change its ways with respect to him and the rest of his co-workers.  Icard Decl., ¶ 3; Gutierrez Decl., ¶ 2.  Before and throughout the litigation, he provided Class Counsel with important insight and helped gather evidence needed for the motion for class certification and motion for summary adjudication.  He interfaced between Class Counsel and shy Class Members prior to class certification and, after certification, continued to be an important point-of-contact for Class Members with questions about the case and, eventually, the settlement.  He reviewed the pleadings and motions filed in the case.  He had his deposition taken.  In Mr. Icard's 100+ hours spent actively participating in this case, he at all times has held the class's interest in the same regard as his own.  *See* Icard Decl., ¶ 3-6, 8-11; Gutierrez Decl., ¶ 2.

Plaintiffs Matthew Ross and Robert Magee, who were appointed Class Representatives on August 27, 2013, were in frequent contact with Class Counsel from near the beginning of the case.  Ross Decl., ¶¶ 3-4; Magee Decl., ¶¶ 3-4.  Both provided a declaration in support of the motion for class certification. Ross Decl., ¶ 3; Magee Decl., ¶ 3.  They contacted other employees (and have remained in contact with them) as an interface for Class Counsel concerning the employees' questions about the litigation.  They further volunteered to be Class Representative despite taking on the risk of possible retaliation by current or future employers in the industry, not to mention the financial risk of having to pay litigation costs fronted by Class Counsel.  Ross Decl., ¶ 7, 14; Magee Decl., ¶ 6, 13; Palay Decl, ¶ 41.   After their appointment as Class Representatives, each sat for his deposition and began to review pleadings and motions.  Ross Decl., ¶ 8; Magee Decl., ¶ 5.  Ross and Magee also participated in the mediations conducted in the case.  Ross Decl., ¶ 9; Magee Decl., ¶ 8.  They also reviewed the lengthy Stipulation of Settlement and had Class Counsel explained to each at length before signing it.   Ross Decl., ¶ 12; Magee Decl., ¶ 11.  Like Mr. Icard, Plaintiffs Ross and Magee always kept the class members' interest in equal respect to their own.  Ross Decl., ¶ 18; Magee Decl., ¶ 17.

Additionally, the current and former Class Representatives are entering into comprehensive releases with Defendant, whereas the rest of the Class Members will only release their wage and hour claims against Defendant upon making a claim on the settlement.  Settlement Agreement at p. 17.  Importantly, because Icard, Ross and Magee each signed fee agreements with Class Counsel that obligate them to repay litigation costs fronted by Class Counsel, they took on a significant financial

risk, especially in light of the uncertain nature of the law surrounding the exemption defenses.  Ross Decl., ¶ 14; Magee Decl., ¶ 13.  Class Counsel has incurred approximately $100,000 in litigation costs, which is a significant exposure for most individuals, including the Class Representatives. Palay Decl,, ¶ 41.  Consequently, the Class Representatives in this matter satisfy the base requirements for incentive awards, which they will explain at more length in their eventual motion for enhancement awards.

## XIII.   PROPOSED SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL FAIRNESS HEARING

Subject to the Court's availability, Plaintiffs propose that the Court set the date, time, and place for a final fairness hearing (and hearing on Class Counsel's motion for attorney's fees and costs and the Class Representatives' motion for service enhancements).

Plaintiffs request the Court enter an order approving of the following schedule governing the dissemination of the Notice of Class Action Settlement, the objection deadline, the schedule for the final approval and attorneys' fee motions, and the final approval hearing date:

| Event | Date |
|---|---|
| Notice of Proposed Class Action Settlement Form To Be Mailed by CPT Group | Within 20 days of Preliminary Approval Order |
| Deadline to Object to Settlement | 45 calendar days after date CPT first mails Notice of Class Action Settlement packet |
| Motions for Final Approval, Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards to be Filed by Plaintiffs' Counsel | 28 days prior to Final Approval Hearing |
| Final Approval Hearing | TBD based on Court's availability [2nd half of August 2016] |

## XIV. CONCLUSION

The parties have reached this settlement following extensive litigation, ongoing case discussions and arm's-length negotiations.  Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith, and for such additional relief as this Court should deem proper.

1

2   Dated:   April 6, 2016                    **STRAUSS & PALAY**

3                                             **A Professional Corporation**

4                                             By: _____/s/_____

5                                                    Brian D. Hefelfinger
                                                     Attorneys for Plaintiffs and the Class
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28