1   Alejandro P. Gutierrez, SBN 107688
**LAW OFFICES OF HATHAWAY, PERRETT, WEBSTER,**
2   **POWERS, CHRISMAN & GUTIERREZ, APC**
200 Hathaway Building
3   5450 Telegraph Road
Post Office Box 3577
4   Ventura, CA  93006-3577
Telephone: (805) 644-7111
5   Facsimile: (805) 644-8296
E-mail:  agutierrez@hathawaylawfirm.com
6

7   Daniel J. Palay, SBN 159348
Michael A. Strauss, SBN 246718
8   Brian D. Hefelfinger, SBN 253054
**STRAUSS & PALAY, APC**
9   121 N. Fir Street, Suite F
Ventura, CA  93001
10  Telephone: (805) 641-6600
Facsimile: (805) 641-6607
11  E-mail: djp@palaylaw.com

12  Attorneys for Plaintiffs and the Certified Class

13  **UNITED STATES DISTRICT COURT**

14  **NORTHERN DISTRICT OF CALIFORNIA**

15  MATHEW ROSS, an individual; for himself    ) CASE NO:  C 13-05097 PJH
and those similarly situated; ROBERT         )
16  MAGEE, an individual, for himself and those  ) Action filed December 21, 2009
similarly situated and ROES 1 through 30,000; )
17  and the Certified Class,                     ) **CLASS ACTION**
)
18                                               ) **NOTICE OF MOTION;**
         Plaintiffs,                             ) **MEMORANDUM OF POINTS AND**
19                                               ) **AUTHORITIES IN SUPPORT OF**
)  **PLAINTIFFS'** *UNOPPOSED*
20     vs.                                       ) **MOTION FOR FINAL APPROVAL**
)  **OF ATTORNEYS' FEES AND**
21                                               ) **COSTS**
)
22  ECOLAB, INC., a Delaware Corporation; and   ) **Hearing:**
DOES 1 through 100, inclusive,               ) **Date:**        **August 31, 2016**
23                                               ) **Time:**        9:00 a.m.
)  **Courtroom.:**   3, 3rd Floor
24         Defendants.                           )
)  [Filed concurrently with Declarations of
25                                               ) Alejandro P. Gutierrez; Daniel J. Palay;
)  Michael Strauss; Jenna Strauss, Brian
26                                               ) Hefelfinger, Aaron Kaufmann, Bradley A.
)  Bening and Matthew Righetti]
27                                               )

28

1

**PLEASE TAKE NOTICE** that, on August 31, 2015 at 9:00 a.m., in Courtroom 3 (3rd Floor) of the above-entitled Court located in the Oakland Courthouse at 1301 Clay Street, Oakland, California, or at such other date, time, or place as the Court may designate, Plaintiffs Mathew Ross, Robert Magee, on behalf of themselves and the Certified Class will and hereby do move pursuant to Federal Rule of Civil Procedure 23(h) for the following awards of attorneys' fees and costs to Class Counsel to be paid out of the total common Settlement Fund of $35,000,000:

1.  Attorneys' fees and costs to Class Counsel of 30% of the Settlement Amount, which equals $10,500,000;

2.  An award of costs incurred by Class Counsel in the amount of $73,377.86.

This motion is brought pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Preliminary Approval Order (Dock. No. 138). The motion will be based upon this Notice, the Memorandum of Points and Authorities set forth below; the Declarations of Alejandro P. Gutierrez, Daniel J. Palay, Michael A. Strauss, Jenna H. Strauss, Brian D. Hefelfinger, Aaron Kaufmann, Bradley A. Bening, and Matthew Righetti filed concurrently herewith, all of the pleadings, papers, and documents contained in the file of the within action; and such further evidence and argument as may be presented at or before the hearing on the Motion.

Dated: August 15, 2016          HATHAWAY, PERRETT, WEBSTER, POWERS, CHRISMAN & GUTIERREZ, APC

By _____
ALEJANDRO P. GUTIERREZ
Attorneys for Plaintiffs and the Certified Class

# TABLE OF CONTENTS

Table of Authorities......................................................................................... ii

I.     Introduction.............................................................................................. 1

II.    Statement of Issues to be Decided ..................................................... 2

III.   Statement of Facts.................................................................................. 2

IV.   Legal Argument .................................................................................... 2

   A. Legal Standard for Granting Attorney's Fees ...................................... 2

   B. An Upward Adjustment of the Ninth Circuit Benchmark to 30% of the Fund is Warranted and Reasonable in Light of the Extraordinary Results Achieved by Class Counsel, the High-Quality Work They Performed, and Other Relevant Factors ........................................................................................ 4

      1. The Exceptional Results Achieved Support the Requested Fee ................... 4

      2. The Risks Involved Support the Requested Fee ........................................... 6

      3. The Complexity and Novelty of the Issues Support the Requested Fee ...... 8

      4. The Skill Required and the Quality of Work Support the Requested Fee .. 11

      5. The Contingent Nature of the Case Supports the Requested Fee .............. 13

      6. Fee Awards in Other Northern District Wage and Hour Class Actions Support the Fee Requested ..................................................................................... 14

      7. Lack of Objection by Any Member of Class Supports Fee Award ............ 17

   C. Class Counsel's Fees Are Also Reasonable Under the Lodestar Method........ 17

      1. Class Counsel's Hourly Rates Are Reasonable .......................................... 18

      2. Class Counsel's Hours Expended Were Reasonably and Necessarily Incurred.................................................................................. 19

      3. Enhancement of the Lodestar is Justified by the Facts and Circumstances of This Case.................................................................................................. 20

   D. Class Counsel's Requested Expense Reimbursement is Proper....................... 21

V.     CONCLUSION.................................................................................... 22

i

**TABLE OF AUTHORITIES**

**State Cases**

*Brinker Restaurant Corp. v. Superior Court*
    53 Cal.4th 1004 (2012)...................................................................................... 7

*Chavez v. Netflix, Inc.*
    162 Cal. App. 4th 43 (2008)............................................................................ 14

*Duran v. U.S. Bank Nat. Assn.*
    59 Cal.4th 1 (2014).......................................................................................... 6

*Wershba v. Apple Computer, Inc.*
    91 Cal.App.4th 224 (2001).............................................................................. 3

**Federal Cases**

*Adoma v. Univ. of Phoenix, Inc.*
    913 F. Supp. 2d 964 (E.D. Cal. Dec. 20, 2012) ................................... 7, 12

*Bluetooth Headset Products Liability Litigation*
    654 F.3d 935 (9th Cir. 2011).......................................................................... 3

*Buccellato v. AT & T Operations, Inc.*
    2011 WL 3348055 (N.D.Cal. Jun. 30, 2011) ......................................... 21

*Camacho v. Bridgeport Financial, Inc.*
    523 F.3d 973 (9th Cir. 2008).......................................................................... 18

*Carter v. Anderson Merchandisers, LP*
    2010 WL 1946757 (C.D. Cal. May 11, 2010) ......................................... 8

*Chu v. Wells Fargo Investments, LLC*
    2011 WL 672645 (N.D.Cal. Feb. 16, 2011)............................................. 3

*Craft v. County of San Bernardino*
    624 F.Supp.2d 1113 (C.D.Cal. April 1, 2008) ............................ 10, 17, 21

*Garner v. State Farm Ins.*
    2010 WL 1687829 (N.D.Cal. April 22, 2010) .............................. 5, 13, 17

*In re Activision Sec. Litig.*
    723 F.Supp.1373 (N.D.Cal. Oct. 3, 1989)................................................ 3

ii

*In re Cathode Ray Tube (Crt) Antitrust Litigation*
    2016 WL 721680 (N.D.Cal. Jan. 28, 2016)........................................................15

*In re Chiron Sec. Litig.*
    2007 WL 4249902 (N.D. Cal. Nov. 30, 2007).......................................................19

*In re Equity Funding Corp. Sec. Litig.*
    438 F.Supp.1303 (C.D.Cal. Sept. 29, 1977) ............................................................6

*In re Heritage Bond Litig.*
    2005 WL 1594403 (C.D.Cal. Jun. 10, 2005) ....................................................4, 13

*In re HPL Technologies, Inc. Securities Litigation*
    366 F.Supp.2d 912 (N.D.Cal. April 22, 2005) ......................................................19

*In re Media Vision Tech. Sec. Litig.*
    913 F. Supp. 1362 (N.D. Cal. Jan. 23, 1996) .......................................................21

*In re Omnivision Technologies, Inc.*
    559 F.Supp.2d 1036 (N.D.Cal. Jan. 9, 2008) ..........................................................3

*In re Oracle Securities Litigation*
    852 F. Supp. at 1459 (N.D.Cal., May 24, 1994) .....................................................4

*In re Pacific Enterprises Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)....................................................................................10

*In re Rite Aid Corp. Securities Litigation*
    396 F.3d 294 (3d Cir. 2005) ...................................................................................17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir.1994)............................................................................13, 21

*Kanawi v. Bechtel Corp.*
    2011 WL 782244 (N.D.Cal. March 1, 2011) ..........................................................5

*Morales v. Stevco, Inc.*
    2013 WL 1222058 (E.D.Cal. March 25, 2013).....................................................7, 8

*Morris v. Lifescan, Inc.*
    54 Fed.Appx. 663 (9th Cir. 2003) .........................................................................10

*Nwabueze v. AT&T Inc.,*
    2013 WL 6199596 (N.D.Cal. Nov. 27, 2013).........................................................4

*Odrick v. UnionBanCal Corp.*
    2012 WL 6019495 (N.D. Cal. Dec. 3, 2012) .......................................................21

iii

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
 904 F.2d 1301 (9th Cir.1990) .................................................................. 3, 4, 10, 13

*Staton v. Boeing Co.*
 327 F.3d 938 (9th Cir. 2003) .................................................................................. 5

*Steiner v. American Broadcating Co., Inc.*
 247 Fed.Appx. 780 (9th Cir. 2007) ...................................................................... 20

*Vasquez v. Coast Valley Roofing, Inc.*
 266 F.R.D. 482 (E.D.Cal. March 9, 2010) ............................................................ 7

*Vizcaino v. Microsoft Corp.*
 290 F.3d 1043 (9th Cir.2002) ......................................................................... *passim*

*Wal-Mart Stores, Inc. v. Dukes*
 131 S.Ct. 2541 (2011) ............................................................................................. 6

**Northern District Wage and Hour Cases**

*Barnes v. The Equinox Group, Inc.*
 2013 WL 3988804 (N.D.Cal. Aug. 2, 2013) ........................................................ 15

*Bentancourt v. Advantage Human Resourcing, Inc.*
 2016 WL 344532 (N.D.Cal. Jan 28, 2016) .......................................................... 15

*Burden v. SelectQuote Insurance Services*
 2013 WL 3988771 (N.D.Cal. Aug. 2, 2013) ........................................................ 15

*Ching v. Siemens Industry, Inc.*
 2014 WL 2926210 (N.D. Cal. June 27, 2014) ..................................................... 16

*Cordy v. USS-POSCO Industries*
 2014 WL 1724311 (N.D.Cal. April 28, 2014) ..................................................... 16

*Cordy v. USS-POSCO Industries*
 2014 WL 212587 (N.D.Cal. Jan. 17, 2014) ......................................................... 16

*Covillo v. Specialtys Café*
 2014 WL 954516 (N.D.Cal. March 6, 2014) ....................................................... 16

*Deaver v. Compass Bank*
 2015 WL 8526982 (N.D.Cal Dec. 11, 2015) ....................................................... 16

*Hopkins v. Stryker Sales Corp.*
2013 WL 496358 (N.D.Cal. Feb. 6, 2013)................................................... 13, 15, 16

*Knight v. Red Door Salons, Inc.*
2009 WL 248367 (N.D.Cal. Feb. 2, 2009)...................................................... 16, 21

*Loretz v. Regal Stone, Ltd.*
756 F.Supp.2d 1203 (N.D. Cal. Nov. 23, 2010) .................................................... 19

*Lusby v. GameStop Inc.*
2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ...................................................... 16

*Martin v. FedEx Ground Package System, Inc.*
2008 WL 5478576 (N.D.Cal. Dec. 31, 2008) ...................................................... 7, 16

*Moore v. PetSmart, Inc.*
2015 WL 5439000 (N.D.Cal. Aug. 4, 2015)........................................................ 18

*Ruch v. AM Retail Group, Inc.*
2016 WL 1161453 (N.D.Cal. March 24, 2016) ...................................................... 16

*Stuart v. Radioshack Corp.*
2010 WL 3155645 (N.D.Cal. Aug. 9, 2010) .......................................................16

*Taylor et al. v. West Marine Products, Inc.*
2015 WL 2452902 (N.D.Cal. May 21, 2015) ........................................................ 19

*Vedachalam v. Tata Consultants*
2013 WL 3941319 (N.D.Cal. July 18, 2013)..................................................... 14, 16

*Willner v. Manpower Inc.*
2015 WL 3863625 (N.D.Cal. June 20, 2015) ..................................................... 11, 17

*Wren v. RGIS Inventory Specialists*
2011 WL 1230826 (N.D.Cal. April 1, 2011) ...................................................... 14, 17

**Central District Wage and Hour Cases**

*Elliott v. Rolling Frito-Lay Sales, LP*
2014 WL 2761316 (C.D.Cal. June 12, 2014) ...................................................... 8, 10

**Eastern District Wage and Hour Cases**

*Franco v. Ruiz Food Products, Inc.*
2012 WL 5941801 (E.D.Cal. Nov. 27, 2012) ................................................. 8, 9, 14

*Garcia v. Gordon Trucking, Inc.*
    2012 WL 5364574 (E.D.Cal. Oct. 31, 2012) ........................................................ 8

**Statutes**

Fed.R.Civ.P. 23(h)........................................................................................................ 2, 3

**Other Authorities**

*Manual for Complex Litigation* § 14.121 ........................................................... 4

*Newberg on Class Actions* ............................................................................... 3, 4

## I.      **INTRODUCTION**

This is a heavily litigated case, involving multi-forum litigation over the course of over six years against a formidable, skilled and well-financed adversary. The protracted, contentious, and intensely fought litigation included among other things, three removals to federal court, two motions to dismiss, two remands, three summary judgment motions, a class certification motion, two motions to decertify the class, one summary adjudication motion, one partial summary judgment motion, three amended complaints, two appeals, one reconsideration motion, discovery motions, a motion to strike affirmative defenses, a motion for contempt of a court order, and three mediations. At the time the parties settled the matter, Ecolab's appeal of this Court's order granting summary judgment in favor of Plaintiffs was pending. The case was not just litigated intensively it was litigated well; Plaintiffs prevailed in *every substantive motion*.

The litigation also involved extensive discovery: Plaintiffs propounded eight sets of requests for production of documents. In response to those requests, Ecolab produced hundreds of thousands of documents, totaling over a million pages. Class Counsel also propounded five sets of special interrogatories, four sets of form interrogatories, and eight sets of requests for admission, and reviewed Ecolab's responses to these discovery requests. Thirty-eight depositions were taken, including those of seven corporate witnesses.

In pursuing claims on behalf of the class, Class Counsel advanced more than $73,377.86 in costs, worked without compensation and lost the opportunity to work on other potentially profitable matters – all with no guarantee that they would receive any compensation for their efforts. Ultimately, Plaintiffs prevailed and their employer agreed to a $35 million non-reversionary settlement which, by any standard of measurement, was an outstanding and remarkable result for 213 class members, resulting in an average class member award of over $108,000 for 217 participating class members (four were added by stipulation and order).

Moreover, in addition to the monetary relief obtained in the settlement agreement, Plaintiffs' lawsuit has also precipitated a significant policy change with respect to Ecolab's classification of its RSMs to non-exempt workers, which change took effect after the parties reached the class settlement

1   agreement.   This is a noteworthy prospective benefit.   By this motion, Class Counsel seek final

2   approval of attorney's fees and costs.

3   **II.      STATEMENT OF ISSUES TO BE DECIDED**

4   **A.**        Whether an award of attorneys' fees of $10,500,000 (or 30% of the Settlement Fund) is

5   reasonable in light of the length, difficulty, risk, novelty and complexity of this case, the skill involved

6   and the size of the $35,000,000 common fund created for 217 participating employees.

7   **B.**        Whether reimbursement of the $73,377.86 in out-of-pocket litigation costs expended by

8   Class Counsel is proper, where these costs were necessary to the prosecution of the litigation.

9   **III.     STATEMENT OF FACTS**

10          The final approval motion filed concurrently herewith and incorporated herein by reference

11   describes in detail the comprehensive and difficult work performed by Class Counsel to overcome the

12   significant risks presented by this litigation and to create the $35 million Settlement fund for the

13   benefit of the class.

14          Although the Settlement Agreement states that Ecolab will not oppose an award of up to 33%

15   of the settlement, Plaintiffs request a fee award of only 30% of the $35,000,000 Settlement Amount, or

16   $10,500,000.   As of August 5, 2016, Class Counsel have dedicated over 6,857.65 hours to this

17   litigation, which they took on a contingency-fee basis. Gutierrez Decl., ¶ 75, Ex. C, Hefelfinger Decl.,

18   ¶¶ 28, 33, Ex. 2.  At Class Counsel's hourly rates, which are consistent with the hourly rates of Bay

19   Area class action attorneys of comparable experience, these hours represent a total lodestar of

20   $3,563,182.25.   Gutierrez Fee Decl., ¶ 75, Ex. C; Hefelfinger Decl., ¶ 28, Ex. 2; Bening Decl., ¶ 6;

21   Righetti Decl., ¶¶ 6 – 11; Kaufmann Decl., ¶¶ 11 - 18.  At this lodestar amount, Plaintiffs' fee request

22   represents a lodestar multiplier of approximately 2.94.  Class Counsel have also incurred $73,377.86

23   in out-of-pocket litigation costs, which are described in Class Counsel's supporting declarations.

24   Gutierrez Decl, ¶ 59, Ex. B; Hefelfinger Decl., ¶ 37, Ex. 3.

25   **IV.     LEGAL ARGUMENT**

26   **A. Legal Standard for Granting Attorney's Fees**

27          Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action,

28   the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by

2

1  the parties' agreement." Fed.R.Civ.P. 23(h). Concurrently, Plaintiffs' request for an award of

2  attorneys' fees is authorized under California law. *See Labor Code* §§ 218.5, 218.6, 1194.

3       Plaintiffs' claims in this case arise under California law. Under both California and Ninth

4  Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by

5  applying either the lodestar method or the percentage-of-the-fund method. *Wershba v. Apple*

6  *Computer, Inc.,* 91 Cal.App.4th 224, 253 (2001); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047

7  (9th Cir.2002).  Under the percentage method, the court may award class counsel a percentage of the

8  common fund recovered for the class. *Id.* The Ninth Circuit has permitted courts to award attorney's

9  fees using this method "in lieu of the often more time-consuming task of calculating the lodestar."

10 *Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 942 (9th Cir. 2011).

11      The percentage method is particularly appropriate in common fund cases, where, as here, the

12 benefit to the class is easily quantified. *Id.* Additionally, the percentage-of-the-fund method is

13 appropriate where—as here—the amount of the settlement is fixed without any reversionary payment

14 to the defendant. *See Chu v. Wells Fargo Investments, LLC,* 2011 WL 672645, at *4 (N.D.Cal. Feb.

15 16, 2011). The Settlement here has created an easily ascertainable common fund benefit to the class

16 *excluding* the prospective value of the noteworthy policy change effected by this litigation, which

17 potentially increases the value of the Settlement overall.

18      The Ninth Circuit has approved a "benchmark" percentage of 25%, and courts may adjust this

19 figure upwards or downwards. *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311

20 (9th Cir.1990)). In most common fund cases, "the award exceeds th[e] benchmark." *In re Omnivision*

21 *Technologies, Inc.,* 559 F.Supp.2d 1036, 1047 (N.D.Cal.2008). Percentage awards of 30 percent are

22 common. *See In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377 (N.D.Cal.1989) (". . . nearly all

23 common fund awards range around 30% . . .); *Vizcaino v. Microsoft Corp.* 290 F.3d 1043, 1047 (9th

24 Cir.2002) (20–30% is the usual range . . . [The] Ninth Circuit cases echo this approach."). Usually,

25 50% of the fund is the upper limit on a reasonable fee award from a common fund, although

26 "somewhat larger percentages are not unprecedented." 4 Conte & Newberg, Newberg on Class

27 Actions (4th ed. 2002) § 14:6.

28

1   When deciding if a departure from the 25 percent benchmark is appropriate, courts may

2   consider "the result achieved, the risk involved in the litigation, the skill required and quality of work

3   by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar check."

4   *Nwabueze v. AT&T Inc.*, 2013 WL 6199596, at \*10 (N.D.Cal. Nov. 27, 2013) (citing *Vizcaino*, 290 F.

5   3d at 1048 – 50). As discussed below, each of the above factors supports an upward adjustment of the

6   benchmark in this case.

7   **B. An Upward Adjustment of the Ninth Circuit Benchmark to 30% of the Fund is**
8   **Warranted and Reasonable in Light of the Extraordinary Results Achieved by Class**
       **Counsel, the High-Quality Work They Performed, and Other Relevant Factors**
9

10   **1. The Exceptional Results Achieved Support the Requested Fee**

11   The most important factor in granting a fee award is the degree of success counsel achieved for

12   the class. *See Vizcaino*, 290 F.3d at 1048 (considering counsel's "exceptional results"); *Six (6)*

13   *Mexican Workers*, 904 F.2d at 1311 (noting plaintiffs' "substantial success"). To measure that success,

14   "the factor given the greatest emphasis is the size of the fund created, because 'a common fund is itself

15   the measure of success ... [and] represents the benchmark from which a reasonable fee will be

16   awarded.'" *Manual for Complex Litigation*, § 14.121 (quoting *Newberg on Class Actions* § 14:6 at

17   547, 550).

18   In the present case, Class Counsel achieved a superb result for the class. Class Counsel

19   negotiated a phenomenal non-reversionary $35 million settlement fund for the class members, a

20   sizeable amount by any measure. Even after deducting the proposed awards of fees and incentives, the

21   fund is large enough to provide an average share for the 217 participating class members of over

22   *$108,000.* Cunningham Decl. ISO Motion Final Approval Class Action Settlement, ¶ 15; Gutierrez

23   Decl. ¶ 44. This represents full recovery of wages owed based on an average of 15 hours of overtime

24   a week, practically all of the Class Members' estimated damages. *Id.* This is an exceptional result.

25   *See In re Oracle*, 852 F. Supp. at 1459 (N.D.Cal., May 24, 1994) (describing settlement recovering

26   24.5% of estimated damages as "relatively good" and "respectable" and stating that a recovery of 77%

27   of estimated damages would be "remarkable"); *see also, e.g., In re Heritage Bond Litig.*, 2005 WL

28   1594403, \*19 (C.D. Cal Jun. 10, 2005) (describing settlement recovering 36% of estimated damages

4

1 | as "an exceptional result" and awarding 33.3% of the fund in fees). The massive recovery in the

2 | present case – achieved in the face of the numerous legal uncertainties detailed herein – alone warrants

3 | Class Counsel's request for attorney fees.

4 | Courts also consider the "[i]ncidental or non-monetary benefits conferred by the litigation."

5 | *Vizcaino*, 290 F.3d at 1049. Such benefits can justify an upward departure from the benchmark, and

6 | they do in this case. Here, in addition to the non-reversionary cash settlement fund of $35 million,

7 | Class Counsel's efforts led to a broader policy change with respect to Ecolab's classification of its

8 | RSMs and SSRMs: In April 2016, shortly after the parties' settlement of this action, Ecolab

9 | announced that it was re-classifying individuals in these positions to non-exempt status.[1] This means

10 | that going forward all current and future RSMs and SSRMs will be compensated for all overtime

11 | hours they work. Gutierrez Decl., ¶ 47.

12 | Such benefits, beyond the cash fund itself, are "a relevant circumstance to consider in

13 | determining what percentage of the fund is reasonable as fees." *Staton v. Boeing Co.*, 327 F.3d 938,

14 | 945-46 (9th Cir. 2003). In evaluating this factor, courts consider not merely the benefits afforded to the

15 | class members, but those afforded to non-class members going forward. *See Garner*, 2010 WL

16 | 1687829 at *2 (noting that class counsel achieved non-monetary relief that "will benefit Class

17 | members and [others] for the foreseeable future" (citing *Staton* and *Vizcaino*)); *see Kanawi v. Bechtel

18 | Corp.*, 2011 WL 782244 at *2 (N.D.Cal. March 1, 2011) (non-monetary relief obtained "favors an

19 | increase in the benchmark rate").

20 | In short, Class Counsel achieved exemplary results for the class and amply deserve a

21 | reasonable, 30% share of the fund that their work created. As discussed below, courts routinely award

22 | fees of 30% in cases where far less was achieved.

23 | / / /

---

24
25
26
27 | [1] "[A] California federal court judge recently ruled [in *Ross v. Ecolab*], that RSMs and SSRMs in California who are in the class are overtime eligible, under California state law. . . We have decided to change our compensation model so that Institutional RSMs and Pureforce SSRMs in California will be eligible for overtime. . . This court decision is based on California state law, and the revised compensation model will only apply to California RSMs and SSRMs." E-mail from Ecolab Sr. Vice President, Institutional Field Sales dated April 11, 2016. (Ex. A to Gutierrez Declaration).

28

## 2. The Risks Involved Support the Requested Fee

The next factor justifying an upward departure from the benchmark is the substantial degree of risk faced by Class Counsel. *See Vizcaino*, 290 F.3d at 1048. This was not an easy case.  To achieve the result they accomplished for the class, Class Counsel took on and overcame a series of very significant risks.  As an initial matter, the defendant here mounted a particularly aggressive defense over the course of over six years; each step of this case has been marked by heavily contentious litigation. Ecolab was represented by experienced and well-resourced defense firms, who vehemently contested liability.   Gutierrez Decl., ¶¶ 3, 48.   The quality of opposing counsel is important in evaluating the quality of Class Counsel's work. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F.Supp. 1303, 1337 (C.D.Cal.1977).  Here, Class Counsel's ability to obtain the Settlement with such formidable legal opposition confirms the quality of Class Counsel's representation of Plaintiffs.

Further, there were several pending cases that could have significantly impacted this case. For instance, there was a pending case in the Central District, *Ladore v. Ecolab,* No. CV-11-9386 FMO (JCx), a class action litigated by the same Class Counsel involving Ecolab pest elimination specialists, which could have significantly impacted this case.   There was real risk that a decision against Plaintiffs on the parties' cross-motions for summary judgment in *Ladore* could have doomed Plaintiffs' overtime claims in this case.   Instead, in 2013, more than three years after the commencement of this case, Judge Feess repudiated Ecolab's claim that its pest control workers were subject to the "haz/mat" exemption, one of the same exemptions asserted by Ecolab here.  Gutierrez Decl., ¶ 49.

Also pending during the litigation of this case was *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), which decision Ecolab relied on extensively to support its argument for decertification of the class, asserting that *Wal-Mart* "changed the legal landscape with respect to class certification in misclassification cases." (Dock. 79-1, pg. 26).   Throughout the litigation, the parties disagreed substantially on whether class certification was proper given the disparity between the damages of individual class members and in light of *Dukes*. Gutierrez Decl., ¶ 50.   The California Supreme Court's decision in *Duran v. U.S. Bank Nat. Assn.*, 59 Cal.4th 1 (2014) also caused uncertainty as to whether Plaintiffs could maintain class certification.     Ecolab relied on *Duran* to argue for

6

1    decertification. (Dock. 79-1, pg. 29). *See Martin v. FedEx Ground Package System, Inc.*, 2008 WL

2    5478576, *8 (N.D. Cal. Dec. 31, 2008) (granting fee award of 33% of settlement, stating that, "[C]lass

3    counsel faced a risk of non-recovery at the outset of the litigation, as class certification is sometimes

4    difficult to obtain in wage and hour cases").

5       The litigation also involved a meal break claim. The California Supreme Court was reviewing

6    the standards applicable to recovery of rest and meal period premiums during the pendency of this

7    case. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4[th] 1004 (2012). Indeed, Plaintiffs'

8    motion to certify the class was continued at Ecolab's request to await the *Brinker* decision being

9    published. Gutierrez Decl., ¶ 51. There was a significant risk that the *Brinker* decision could have

10   spelled the end to Plaintiffs' meal break claims. *See Morales v. Stevco, Inc.,* 2013 WL 1222058

11   (E.D.Cal. 2013) ("The state of the law prior to [the *Brinker*] decision was admittedly murky"); *Adoma*

12   *v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. Dec. 20, 2012) ("Both federal and

13   California law regarding class actions is in flux, particularly in the area of employment law. Lower

14   courts are still sorting out the meaning of recent decisions like *Wal–Mart Stores, Inc.,* 131 S.Ct. 2541

15   (2011), and *Brinker Restaurant Corp. v. Sup. Ct.,* 53 Cal.4th 1004 (2012). But there is little doubt

16   that, as a result of these decisions, plaintiffs face increased difficulties in winning wage-and-hour class

17   action lawsuits"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D.Cal. March 9,

18   2010) ("There were significant risks in pursuing this case. Among other things, some of the key

19   claims involved the timely provision of rest and meal periods, an issue that is pending before the

20   California Supreme Court." (Awarding fees of 33.3% of total recovery obtained based in part on risk

21   counsel took pursuing the matter).)

22       Here, challenging as it was to maintain the meal break claim after *Brinker* was published,

23   through Class Counsel's diligent efforts in sifting through thousands of pages of documents for

24   evidence regarding meal breaks and pouring through testimony to rebut Ecolab's argument, Plaintiffs

25   were able to prevail at least in part on their meal break claim, for the period of December 2005 to

26   October 2008. Gutierrez Decl., ¶ 52. *See Vasquez*, 266 F.R.D. at 492 (skill required to litigate rest and

27   meal period claims, including extrapolation of existing records, warranted fee award of 33.3% of

28   settlement).

7

1    The parties fiercely disputed whether Ecolab properly classified the Class Members as exempt

2    from California overtime pay pursuant to one or more of three claimed exemptions– namely, the

3    outside sales exemption, commission exemption and the motor carrier/"haz-mat" exemption.  Had one

4    or more of the exemptions claimed by Ecolab been found applicable to this case, there was a real risk

5    that the class would not have recovered anything. Instead, through Class Counsel's efforts and

6    expertise, Plaintiffs were able to prevail on their class certification motion, survive two motions for

7    decertification, survive three motions for summary judgment on Ecolab's asserted exemptions, and

8    prevail on their own summary adjudication motions related to the three asserted exemptions.

9    Gutierrez Decl., ¶ 53. *See Carter v. Anderson Merchandisers, LP,* 2010 WL 1946757, at *2 (C.D. Cal.

10    May 11, 2010) ("There were significant risks in pursuing these cases . . . potential application of the

11    Motor Carrier Act, 49 U.S.C. §§ 13102, 13501, and 'outside sales' exemptions to the FLSA could

12    have defeated Plaintiffs' legal theory"); *Elliott v. Rolling Frito-Lay Sales, LP,* 2014 WL 2761316

13    (C.D.Cal. June 12, 2014) ("There are novel legal issues presented by the California Motor Carrier Act

14    exemption . . .The contours of this exemption, and to what extent California law adopts such an

15    exemption, are open questions in this lawsuit." (Awarding fees of 30% of settlement fund)).

16    As shown, uncertainty loomed throughout the litigation and Class Counsel assumed a good

17    deal of risk in bringing this action against highly sophisticated parties.  The risks were threefold, in

18    obtaining class certification, in establishing liability --both of which were vigorously contested--and in

19    reaching a favorable settlement. The risk factors favor an increase in the benchmark rate.

20    **3.  The Complexity and Novelty of the Issues Support the Requested Fee**

21    This action involved specialized and highly contested legal issues that are at the cutting edge of

22    recent developments in the law.  As explained by the Eastern District, "California wage and hour law

23    is extremely complex and the statutory/administrative language can be particularly difficult to parse."

24    *Morales v. Steveco, Inc.*, 2013 WL 1222058 (E.D.Cal. 2013).  *See also  Franco v. Ruiz Food Prods.,*

25    *Inc.*, 2012 WL 5941801 at *16 (E.D.Cal. Nov. 27, 2012) (explaining that "specialist skills" are

26    required "to litigate the legal theories relating to wage and hour law and labor law"); *Garcia v. Gordon*

27    *Trucking, Inc.*, 2012 WL 5364575 at *10 (E.D. Cal. Oct. 31, 2012) (in awarding 33% of a common-

28    fund settlement, concluding that "th[e] case required substantial skill in litigating complex legal issues,

8

1 particularly in light of the uncertainty in California law as it relate[s] to [p]laintiffs' meal break
2 claims"). "Overall, the specialized skill of Class Counsel in this area of the law [i]s generally an asset
3 to the Class Members." *Franco*, 2012 WL 5941801 at *16.

4     This action contained many complex legal issues, i.e., whether the claims for overtime
5 compensation were barred based on the three asserted exemptions.   Subsumed within the
6 commissioned sales exemption issue was a sub-issue of which IWC Wage Order applied to class
7 members, since the commissioned sales exemption appears in only two of the Wage Orders. This
8 Court noted the "ambiguity in the application of the outside salesperson exemption." (Dock. No. 104,
9 pg. 7). The Court also noted that the parties' dispute as to the commissioned sales exemption could be
10 traced to "an ambiguity in the law . . ." (Dock. 104, pg. 12).   Resolution of the issues involved
11 researching and analyzing conflicting court opinions and comparing and contrasting the facts of this
12 case to those of recent cases. Gutierrez Decl., ¶ 54.

13     Ecolab required expert assistance in its decertification and summary judgment briefing with
14 respect to the outside salesperson exemption, which "expert" (Donald Winter) Class Counsel
15 examined in three separate depositions.   Class Counsel examined several of Ecolab's corporate
16 witnesses in regard to the outside sales exemption and commissioned sales exemption, such as the
17 duties and responsibilities of RSMs, the percentage of time spent by RSMs in their various duties, how
18 sales commissions were earned, including commissions earned by RSMs on machine rental fees, the
19 contents of commission statements, and the contents of all written lease agreements, among other
20 things.  In all, Class Counsel deposed seven Ecolab corporate witnesses, one of them twice. Gutierrez
21 Decl., ¶ 55.

22     The litigation also involved particularly specialized skills from Class Counsel in analyzing the
23 "haz-mat" exemption asserted by Ecolab.  The scant published cases that dealt with the California
24 motor carrier exemption focused on issues distinct from those raised in this case; indeed, the issues
25 presented here are completely novel. Because of the vacuum of authority relating to the application of
26 this exemption to workers who were hired for positions other than driver (here, dishware service
27 technicians), Class Counsel undertook in-depth research into the legislative history of both the
28 California motor carrier exemption and the federal Motor Carrier Act exemption and all associated

9

1  regulations and statutes, expending a significant amount of time and incurring appreciable fees.

2  Gutierrez Decl., ¶ 56.  Class Counsel also spent a significant amount of time reviewing material safety

3  data sheets related to the products, such as detergents and rinses, that were sometimes transported on

4  class members' service vehicles and comparing them to the Hazardous Materials Table and to the

5  Materials of Trade exception to the transportation of hazardous materials found in both federal and

6  state regulations.  Gutierrez Decl., ¶ 56.

7        Reflecting the complexity of this issue is the fact that Ecolab required the assistance of three

8  experts for its decertification and summary judgment briefing with respect to the motor carrier

9  exemption, who purported to explain to the Court hours of service regulations (Robert Jones); U.S.

10  Department of Transportation Hazardous Materials Regulations (Frits Wybenga and Michelle

11  Gardner); the Materials of Trade exception to transporting hazardous materials (Michelle Gardner);

12  and Material Safety Data Sheets information (Michelle Gardner). Class Counsel examined Ecolab

13  corporate witnesses Ms. Gardner and Greg Suggar in depth regarding the materials transported by

14  class members and examined Ecolab corporate witness Troy Sharratt with regard to Ecolab's policies

15  regarding hours of service regulation training. Gutierrez Decl., ¶ 57. *See Romero v. Producers Dairy*

16  *Foods, Inc.*, 2007 WL 3492841 (E.D.Cal. Nov. 14, 2007) (Motor Carrier Act exemption was complex

17  legal issue contained in case, on which basis, among others, court awarded 33% of settlement fund);

18  *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *6 (C.D. Cal.

19  June 12, 2014) ("there are novel legal issues presented by the California Motor Carrier Act exemption

20  . . ." (awarding fees of 30% of $1.6 million settlement amount).

21        Here, given the complexity of the issues, an upward adjustment to the benchmark is

22  appropriate. *See Pacific Enterprises*, 47 F.3d 373, 379 (9th Cir. 1995) (holding fees justified "because

23  of the complexity of the issues and the risks"); *Morris v. Lifescan, Inc.* 54 Fed.Appx. 663 (9th Cir.

24  2003) (affirming district court's award of 33% of $12 settlement in risky and complicated class action

25  with vigorous opposition); *Six (6) Mexican Workers*, 904 F.2d at 1311 (noting that case "involved

26  complicated legal and factual issues"); *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1117

27  (C.D.Cal. April 1, 2008) ("the law was not settled in the areas encompassed by the suit" (applying a

28  5.2 multiplier to lodestar).

### 4.  The Skill Required and the Quality of Work Support the Requested Fee

Class Counsel has demonstrated substantial skill, diligence, efficiency, and high quality of work in achieving the proposed Settlement and its creation of a common fund of $35,000,000 and precipitating noteworthy policy changes. Bening Decl., ¶ 6; Kaufmann Decl., ¶ 16; Righetti Decl., ¶ 9. They obtained this excellent result in face of vigorous opposition involving issues for which there was no precedent.   Class Counsel was able to reach the Settlement due to their expertise and experience in wage and hour class actions. Gutierrez Decl. ¶ 62; Palay Decl., ¶ 5; Hefelfinger Decl., ¶ 21; Michael A. Strauss Decl., ¶ 5-6; Jenna H. Strauss Decl., ¶ 4.  This experience allowed Class Counsel to focus the factual and legal issues and seek resolution as well as analyze discovery produced by Ecolab and participate in the mediations and other settlement negotiations that led to this Settlement.

As stated, the case was fiercely litigated; the parties engaged in substantial motion practice, including among other things, three removals to federal court, two motions to dismiss, two remands, three summary judgment motions, a class certification motion, two motions to decertify the class, one summary adjudication motion, one partial summary judgment motion, three amended complaints, two appeals, one reconsideration motion, discovery motions, a motion to strike affirmative defenses, a motion for contempt of a court order, and three mediations.  Gutierrez Decl., ¶¶ 7, 10, 15, 24 - 39. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *6 (N.D.Cal. June 22, 2015) (awarding fees of 30% of settlement fund where the fact that the "parties have engaged in substantial motion practice, including briefing multiple motions to dismiss or strike, a motion to transfer venue, cross-motions for summary judgment, and a class certification motion" weighed in favor of requested fee award.)

Class Counsel were faced with a tremendous task of marshaling evidence. Class Counsel went through over a million pages of documents produced by Ecolab, including Service Detail Reports, commission statements, earnings statements, check details, performance track reports, annual review forms, 360 opportunity reports,  coaching plans, ESM-time records, territory rankings reports, training modules, hand-outs and manuals, training transcript reports, compensation plans, personnel files, Ecolab ware washing lease program materials, product promotional material, various sample lease and distributor agreements, material safety data sheets, chemical labels and other relevant documents.

11

1    Class Counsel spent dozens of hours reviewing, indexing, and analyzing this documentation in order

2    to prepare Plaintiffs' certification and dispositive motions regarding the exemptions asserted by

3    Ecolab. Gutierrez Decl. ¶¶ 11 - 13.

4         From painstakingly reviewing, indexing and analyzing these documents, as well as creating

5    spreadsheets of data for samplings of individual class members, Class Counsel were able to prove that

6    class members were performing primarily hands-on work and therefore not subject to the outside sales

7    exemption; that the "commissions" purportedly earned by class members were in reality largely

8    generated from sales made by distributors, from repeat sales of products required by dish machine

9    leases not sold by class members, and/or from lease fees from leases not sold by class members; and

10   that there was a complete lack of any evidence to support Ecolab's assertion that RSMs were

11   commercial drivers subject to the "haz/mat" exemption.   Gutierrez Decl., ¶ 12.   As previously

12   mentioned, Plaintiffs prevailed on *every single substantive motion*. Gutierrez Decl., ¶¶ 7, 15, 24 - 38.

13   *See Adoma,* 913 F.Supp.2d at 982 (the fact that plaintiffs prevailed in nearly every motion was a factor

14   in favor of some increase in the fee award).

15        In addition, obtaining the Settlement was a protracted, difficult process, which required three

16   mediation sessions plus numerous teleconferences with the mediators and Ecolab, preparation of

17   mediation briefs, completing statistical analyses for use in damages models and once settlement was

18   achieved, preparing the Settlement Agreement. Class Counsel negotiated each and every aspect of the

19   Settlement Agreement.  Gutierrez Decl., ¶¶ 40 – 44.

20        In settling the action, Class Counsel were able to obtain an extraordinarily favorable result for

21   the Class, both in monetary compensation and in changes made to Ecolab's employment policies and

22   practices, as discussed above.  Counsel expended substantial effort in achieving a settlement in this

23   case despite the difficult challenges. Gutierrez Decl., ¶¶ 48 - 57. Class Counsel also spent time

24   preparing the motion for preliminary approval of the settlement and all supporting documents, the

25   motion for final approval, motion for fees, and motion for incentive awards, and will also spend

26   additional time monitoring the distribution of the settlement funds. Absent Class Counsel's

27   exceptional efforts in this case, 217 participating Ecolab employees would not be entitled to receive,

28   and Ecolab would not be obligated to pay, on average $108,000 per employee in wages and

12

1   prejudgment interest.  Cunningham Decl. ISO Final Approval Class Action Settlement, ¶ 15.  Absent

2   Class Counsel's efforts, Ecolab would not have re-classified class members to non-exempt employees.

3        In sum, to use the words of another court in which a 30% fee was awarded, "prosecuting this

4   case required an extraordinary commitment of time, resources, and energy from Class Counsel, and

5   the relief achieved simply would not have been possible but for the commitment and skill of Class

6   Counsel." *Garner*, 2010 WL 1687829 at *2.

7        Class Counsel's skill and diligence in achieving a settlement is a factor that weighs heavily

8   toward awarding a substantial percentage fee award.

9        **5.  The Contingent Nature of the Case Supports the Requested Fee**

10       The burdens borne by Class Counsel in taking on the litigation is another relevant factor that

11   justifies an upward adjustment of the benchmark. *See Vizcaino*, 290 F.3d at 1050; *Six (6) Mexican*

12   *Workers*, 904 F.2d at 1311). Adding to the other risks discussed herein is the fact that Class Counsel

13   undertook this litigation on a contingent-fee basis, requiring them to shoulder not only the cost of

14   attorney time, but all the substantial costs of more than six years of litigation.  Gutierrez Decl., ¶ 58 -

15   60; Hefelfinger Decl., ¶ 33.

16       Courts have long recognized the public policy of rewarding attorneys for accepting

17   representation on a contingent fee basis. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19

18   F.3d 1291, 1299 (9th Cir.1994) ("It is an established practice in the private legal market to reward

19   attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates

20   for winning contingency cases."). This is especially true where, as here, Class Counsel have

21   significant experience in the particular type of litigation – wage and hour class actions – at issue.

22       Moreover, when counsel takes cases on a contingency fee basis and litigation is protracted, the

23   risk of non-payment after years of litigation justifies a significant fee award.  *See In re Heritage,* 2005

24   WL 1594403, at *19 (C.D.Cal. June 10, 2005) (awarding attorneys' fees in the amount of 33 percent

25   of the common fund based in part on the effort, skill and experience of class counsel and collecting

26   cases regarding the same); *Hopkins v. Stryker Sales Corp.* 2013 WL 496358 at *3 (N.D.Cal. 2013) (in

27   awarding fees of 30% of the settlement, the court explained that "[c]lass [c]ounsel took a significant

28   risk investing in this case" because it "was conducted on an entirely contingent fee basis against a

1  well-represented [d]efendant" and because [a]ll of the financial risk of litigation was therefore

2  assumed by [c]lass counsel, whose fee arrangement with [p]laintiffs required [c]lass [c]ounsel to bear

3  all the costs of litigation"; *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801 at *16 (E.D.Cal. Nov.

4  27, 2012) ("an award of one-third of the common fund as attorneys' fees has been found appropriate"

5  when an "action [i]s undertaken on a contingency fee basis and [when], as such, [c]lass [c]ounsel

6  invest[] time, effort, and money with no guarantee of recovery").

7         Here, judged relative to these risks, this factor weighs in favor of granting the present motion

8  in full. Class Counsel performed all of the described work on a pure contingency-fee basis, with no

9  guarantee that they would ever be paid for any of their work or be reimbursed for any of their out-of-

10  pocket costs.  They turned down other potentially lucrative matters in order to take on this large-scale

11  case, and devoted resources to it that could have been devoted to other potentially income-generating

12  matters.  Gutierrez Decl., ¶ 69; Hefelfinger Decl., ¶ 24.  Counsel's willingness to undertake this

13  complicated litigation and see it through to completion, notwithstanding these burdens and the risk

14  that they might never be paid at all, should be recognized and rewarded, in accordance with Ninth

15  Circuit precedent. *See Vizcaino*, 290 F.3d at 1049.

16  **6.  Fee Awards in Other Northern District Wage and Hour Class Actions Support the
17  Fee Requested**

18         Plaintiffs' request for attorney's fees in the amount of 30% of the $35,000,000 common fund

19  falls well within the norms accepted by not only the Ninth Circuit courts but California state courts in

20  comparable wage and hour class actions. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, at 66 n.11

21  (2008) (noting that fee awards in class actions average around one-third of the recovery); *Vedachalam

22  v. Tata Consultancy Services, Ltd.*, 2013 WL 3941319, *2 (N.D.Cal. July 18, 2013) (in awarding 30%

23  of the $29,750,000 settlement fund in a wage and hour class action, the court noted that "the requested

24  fee is well within the usual range of percentages awarded in similar cases."). *See also Wren v. RGIS

25  Inventory Specialists*, 2011 WL 1230826, * 27 (N.D.Cal. April 1, 2011) (Although the court chose to

26  use the lodestar method in determining fees, it reached same result using percentage of fund approach

27  in amount of 42% of $27,000,000 settlement amount in a wage and hour class action).

28         In the table below of recent Northern District wage and hour cases where courts awarded 30%

14

1    or more of the common fund, many involved settlements below $10 million.  That does not mean that

2    those awards are not comparable to the one sought here.  Although some cases outside the Ninth

3    Circuit prescribe the use of an inverse scale in percentage of the fund fee awards, e.g. the higher the

4    common fund, the lower the percentage for the fee, the Ninth Circuit has expressly rejected the

5    principle that the award decreases as the fund increases.  *Vizcaino*, 290 F.3d at 1047.  Although this

6    case is not remotely a "megafund" case; e.g., one with a recovery of $100 million to over $1 billion,

7    even in "megafund" cases courts in the Ninth Circuit award fees in the 25 – 33% range.  *In re Cathode*

8    *Ray Tube (Crt) Antitrust Litigation,* 2016 WL 721680, *42 (N.D.Cal. Jan. 28, 2016).  For example, the

9    Northern District court in *Cathode Ray Tube* awarded 30% of the settlement fund, or $173,025,000.

10   *Id.* at * 43.  Accordingly, the size of the fund in this case is relevant only to show the extraordinary

11   result of Class Counsel's efforts.

12        Further, the court in *Hopkins v. Stryker Sales Corp.* 2013 WL 496358 (N.D.Cal. 2013)

13   considered the average net recovery per class member of $30,424.04 – less than one-third of the

14   average recovery per class member here - to be a "remarkable award" and "substantial results" and

15   awarded plaintiffs' counsels' fees in the amount of 30% of the $4,250,000 settlement.

16        The fee award sought here is not opposed by Ecolab and is only modestly more than the Ninth

17   Circuit's 25% "benchmark" percentage. In light of the many wage and hour class action cases in this

18   circuit that have granted fee awards of 30% or more and, more importantly, the result obtained-

19   $35,000,000 and reclassification of the RSM position as non-exempt entitled to overtime- the

20   requested fee is well within the usual range of percentages awarded in similar wage and hour cases.

21

22

| Case Name | Results | Award |
|---|---|---|
| *Barnes v. The Equinox Group, Inc.* No. C 10-3586 LB, 2013 WL 3988804 (N.D.Cal. Aug. 2, 2013) | $150,000 total payment Avg. settlement amount $146.53 "Results achieved are fair." | 33.33% |
| *Bentancourt v. Advantage Human Resourcing, Inc.* No. 14-CV-01788 JST, 2016 WL 344532 (N.D.Cal. 2016) | $320,000 Gross Settlement Average individual recovery $15.60 "Given the results achieved," fee award of 34.3% reasonable. | 34.3% |
| *Burden v. SelectQuote Insurance Services* No. C 10-5966 LB, 2013 WL 3988771 (N.D.Cal. 2013) | $750,000 Gross Settlement Amount Between $1,850 and $3,335 per class member "Quality results" | 33% |

15

| | | |
|---|---|---|
| *Ching v. Siemens Industry, Inc.* No. 11-CV-04838 MEJ, 2014 WL 2926210 (N.D. Cal. 2014) | $425,000 Maximum Gross Settlement Amount Average individual award of $2,672.56 "Very favorable" result | 30% |
| *Cordy v. USS-POSCO Industries* No. 12-cv-00553 JST, 2014 WL 1724311 (N.D.Cal. April 28, 2014); 2014 WL 212587 (N.D.Cal. 2014) | $3,500,000 Gross Settlement Amount Avg. payment $1,759 for wage statement subclass; $1,029 for waiting time subclass; $1,524 for continual presence subclass Results achieved justified adjusting the 25 percent benchmark upward | 30% |
| *Covillo v. Specialtys Café* No. C-11-00594 DMR, 2014 WL 954516 (N.D.Cal. 2014) | Gross settlement amount $2,000,000 Average gross recovery $1,477 per class member; injunctive relief "Substantial results"; "substantial recovery" | 30% |
| *Deaver v. Compass Bank* No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D.Cal Dec. 11, 2015) | $500,000 settlement fund Average recovery $700 per class member "Very favorable" results | 33.33% |
| *Hopkins v. Stryker Sales Corp.* No. 11-CV-02786-LHK, 2013 WL 496358 (N.D.Cal. 2013) | $4,250,000 Settlement Amount Average net recovery per class member $30,424.04 (95 class members) "Substantial results"; "remarkable award" | 30% (reduced from requested 33.3%) |
| *Knight v. Red Door Salons, Inc.* No. 08-01520 SC, 2009 WL 248367 (N.D.Cal. 2009) | $500,000 settlement, representing 50% of damages class members could seek "The results achieved weigh in favor of granting the requested 30% fee." | 30% |
| *Lusby v. GameStop Inc.* No. C12-03783 HRL, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) | Non-reversionary fund of $750,000 available to 13,872 class members; also GameStop implemented changes in response to action | 33% |
| *Martin v. FedEx Ground Package System, Inc.* No. C 06-6883 VRW, 2008 WL 5478576 (N.D.Cal. 2008) | $8,125,000 Max Settlement Amount Avg. share $200 per year worked "Class counsel faced a risk of non-recovery at the outset of the litigation, as class certification is sometimes difficult to obtain in wage and hour cases." | 33% (preliminary approval) |
| *Ruch v. AM Retail Group, Inc.* No. 13-CV-05352-MEJ, 2016 WL 1161453 (N.D.Cal. March 24, 2016) | $1,150,000 settlement amount | 30% (preliminary approval) |
| *Stuart v. Radioshack Corp.* No. C-07-4499 EMC, 2010 WL 3155645 (N.D.Cal. Aug. 9, 2010) | $4,500,000 total settlement 1,444 member class | 33.33% |
| *Vedachalam v. Tata Consultants* No. 06-0963-CW, 2013 WL 3941319 (N.D.Cal. 2013) | $29,750,000 Settlement fund (12,700 class members) Average recovery $1,600 for each class member | 30% |

16

| | "Excellent results" | |
|---|---|---|
| *Willner v. Manpower Inc.* No. 11-CV-02846-JST, 2015 WL 3863625 (N.D.Cal. 2015) | $8,750,000 Settlement fund Class Counsel's actions in bringing litigation caused change in policy and practice | 30% (reduced from requested 33.3%) |
| *Wren v. RGIS Inventory Specialists* No. C-06-05778 JCS, 2011 WL 1230826 (N.D.Cal. 2011) | Gross settlement amount of $27,000,000 Average award share $207.69 | 42% |

Class Counsels' request for attorney fees in the amount of 30% of the common fund falls well within the range of acceptable attorney fees in the Ninth Circuit for cases of this size and complexity. By any measurement, the results achieved here are extraordinary. A 30% award is particularly appropriate in this case, given the size of the fund, the risks overcome, and the work involved to achieve a settlement that will make class members whole – even if the requested 30% fee is awarded.

### 7. Lack of Objection by Any Member of Class Supports Fee Award

Finally, the absence of objections from the class further demonstrates the reasonableness and fairness of the attorney's fee request. *See Garner v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 1687829, at *2 (N.D.Cal. Apr.22, 2010) (noting "single objection out of a sizeable class, after notice, further demonstrates the reasonableness and fairness of [c]lass [c]ounsels' request"). *See* Cunningham Decl. ISO Motion for Final Approval of Class Action Settlement, ¶ 13 ("As of the date of this declaration, Settlement Administrator has not received any written objections to the settlement.")

### C. Class Counsel's Fees Are Also Reasonable Under the Lodestar Method

While Class Counsel are not seeking an award of fees based upon the lodestar/multiplier approach, cross-checking the fees under this doctrine confirms the reasonableness of the fee. *Craft,* 624 F.Supp.2d at 1122 (though not required, a court may consider the lodestar in evaluating a percentage award request). The lodestar cross-check requires "neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Securities Litigation,* 396 F.3d 294, 306 (3d Cir. 2005). Class Counsel's lodestar, unadjusted by a multiplier is $3,563,182.25. (Gutierrez Decl. 75, Ex. C; Hefelfinger Decl. ¶ 29, Ex. 2). Class Counsel is seeking a 2.94 multiplier.

/ / /

1       **1.  Class Counsel's Hourly Rates Are Reasonable**

2              Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the community

3       for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v.*

4       *Bridgeport Financial, Inc.* 523 F.3d 973, 979 (9th Cir. 2008).  Ordinarily, reasonable hourly rates are

5       based on each attorney's *current* hourly rates.  *Vizcaino*, 290 F. 3d at 1051.  The relevant community

6       is the location where the district court sits, in this case the Northern District of California.  *Camacho,*

7       523 F.3d at 979.

8              Plaintiffs and the Class were represented by two law firms experienced in wage and hour class

9       actions on a contingency basis.  The hourly rates for each law firm are set forth in the concurrently

10      filed Class Counsel declarations and summarized in the table below.

11

12

| Name | Year Admitted to California Bar | Position | Hourly Rate Sought |
|------|--------------------------------|----------|--------------------|
| Alejandro P. Gutierrez | 1983 | Attorney | $800 |
| Daniel J. Palay | 1997 | Attorney | $700 |
| Michael A. Strauss | 2006 | Attorney | $500 |
| Jenna H. Strauss | 2006 | Attorney | $500 |
| Brian D. Hefelfinger | 2007 | Attorney | $450 |
| Adam A. Acevedo | 2008 | Attorney | $400 |
| Coleen DeLeon | N/A | Paralegal | $195 |
| Debra D. Acevedo | N/A | Paralegal | $195 |

19             Class Counsel's rates have previously been approved by California courts as reasonable in

20      class action cases:  In *Aguiar et al. v. Zep et al.*, USDC Case No. 13-cv-99563-WHO, for example,

21      another wage and hour case, the court found in its August 2014 order granting plaintiffs' attorneys'

22      fees that Mr. Gutierrez's then-hourly rate of $700 was reasonable. Further, in the *Ladore v. Ecolab*

23      wage-and-hour class action in which Class Counsel here represented the plaintiffs, the Central District

24      granted the plaintiffs' motion for attorney's fees where attorneys Gutierrez and Palay had billed at the

25      rate of $700 per hour.  The *Ladore* court found that the result that Class Counsel had achieved was an

26      exceptional result. Order, 11-9386, Doc. 112; Gutierrez Decl., ¶ 74.

27             Class Counsel's hourly rates are within the range of those found reasonable in employment

28      cases in the Northern District.  *See, e.g., Moore v. PetSmart, Inc.*, 2015 WL 5439000, *12 (N.D.Cal.

18

1   Aug. 4, 2015) ("In this case, the relevant community is the Northern District of California where

2   reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and

3   paralegals and litigation support staff range from $150 to $240"; *Taylor et al. v. West Marine*

4   *Products, Inc.*, 2015 WL 2452902, *2 (N.D.Cal. 2015), (hourly rate of $790 reasonable for a 41-year

5   attorney and $625 reasonable for 12-year attorneys); *Loretz v. Regal Stone, Ltd.*, 756 F.Supp.2d 1203,

6   1211 (N.D. Cal. 2010), (hourly rates of $775 to $900 for partners and $225 for a legal assistant

7   reasonable). *See also* Bening Decl., ¶¶ 3 - 6; Kaufmann Decl., ¶¶ 10 - 17, Righetti Decl., ¶¶ 10 - 11.

8   Alternatively, in assessing reasonableness, courts often refer to the *Laffey* matrix, "[a] widely

9   recognized compilation of attorney. . . rate data" for the District of Columbia, "so named because of

10  the case that generated the index." *In re Chiron Sec. Litig.*, 2007 WL 4249902 at *6 (N.D. Cal. Nov.

11  30, 2007). The Laffey adjusted matrix for the period 6/1/15 to 5/31/16 determines that the average rate

12  for attorneys with 20+ years of experience is $796.00.   Gutierrez Decl., ¶ 78, Ex. D.   This rate,

13  however, is tailored for the District of Columbia, which has a +24.22% locality pay differential, while

14  the San Francisco area has a locality pay differential of +35.15%. Gutierrez Decl., ¶ 79 Ex. E.   This

15  differential means that the $796 figure must be adjusted upward by 9% to $867.64. (See *In re HPL*

16  *Technologies, Inc. Securities Litigation*, 366 F.Supp.2d 912, 920 – 921 (N.D.Cal. April 22, 2005)

17  explaining how to adjust Laffey Matrix rates.)    Here, Plaintiffs' counsels' hourly rates are

18  commensurate with those demonstrated in the Laffey Matrix even before adjusting it for locality

19  differentials.

20  Attorneys and paralegals practicing wage and hour class actions in the Bay Area also charge

21  rates that are comparable to those sought here by Class Counsel for lodestar cross-check purposes.

22  *See* declarations of attorneys Kaufmann Decl., ¶¶ 12 - 18; Righetti Decl., ¶¶ 7 - 11; Bening Decl., ¶ 6.

23  Such attorneys attest that Class Counsel's rates are reasonable for class action attorneys with

24  comparable experience in the local community. *Id.*

25  **2.  Class Counsel's Hours Expended Were Reasonably and Necessarily Incurred**

26  From this case's inception in December 2009 to the present, a period of over six years, Class

27  Counsel recorded 6,857.65 hours in litigating this matter. *See* task summaries by category for each

28  firm, Ex. C to Gutierrez Decl.; Ex 2 to Hefelfinger Decl. Class Counsel exercised sound billing

1 | discretion by reducing the billable hours incurred, including writing off time billed by three associate
2 | attorneys.  Gutierrez Decl., ¶ 76, Hefelfinger Decl., ¶ 34. Class Counsel also delegated many tasks to
3 | lower-billing paralegals and associate attorneys.   Gutierrez Decl., ¶¶ 4, 76; Palay Decl., ¶ 11.
4 | Although Class Counsel's two firms have submitted separate summaries of their firm's lodestar hours,
5 | they seek a collective amount of $10,500,000.

6 |     Because this was a contingency fee case, Class Counsel had little incentive to spend
7 | unnecessary time on tasks to inflate their fees.  The hours Class Counsel spent litigating the case were
8 | limited to that necessary to pursue Plaintiffs' claims and to respond to Ecolab's relentless opposition
9 | and motion practice.  Class Counsel worked closely and in cooperation with one another to divide
10 | tasks, ensure efficient case management, and prevent duplication of efforts.  Gutierrez Decl., ¶ 4;
11 | Hefelfinger Decl., ¶ 7; Palay Decl., ¶ 3.  Accordingly, the hours expended were reasonably and
12 | necessarily incurred.

### 3.  Enhancement of the Lodestar is Justified by the Facts and Circumstances of This Case

16 |     Class Counsel's lodestar figure is $3,563,182.25.  The 30% fee requested by Class Counsel
17 | reflects a multiplier of 2.94.   It is well-settled that a positive multiplier is appropriate in common fund
18 | cases to reward attorneys for the risk assumed in taking and litigating the case. "[C]ourts have
19 | routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *In re Wash.*
20 | *Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1300 (9th Cir.  1994). "This mirrors
21 | the established practice in the private legal market of rewarding attorneys for taking the risk of
22 | nonpayment by paying them a premium over their normal hourly rates for winning contingency
23 | cases." *Vizcaino*, 290 F.3d at 1051.

24 |     In *Vizcaino*, the court examined a survey of multipliers in common fund cases, and found that
25 | they went as high as 19.6. *Id.* at 1052. The Ninth Circuit in *Steiner v. American Broadcasting Co.,*
26 | *Inc.*, 247 Fed.Appx. 780, 783 (9th Cir. 2007) in affirming an attorney fee award representing a lodestar
27 | multiplier of 6.85, concluded that, "Although this multiplier is higher than those in many common
28 | fund cases . . . it still falls well within the range of multipliers that courts have allowed." *See also*

1   *Craft*, 624 F.Supp at 1125 (approving 25% fee award yielding a multiplier of 5.2 and stating that

2   "there is ample authority for such awards resulting in multipliers in this range or higher"); *Buccellato*

3   *v. AT & T Operations, Inc.,* 2011 WL 3348055, at *2 (N.D.Cal. Jun. 30, 2011) (awarding multiplier of

4   4.3 in wage and hour class action).

5          Here, the exceptional monetary relief obtained for the Class, the risks involved in the litigation,

6   the contingent nature of the fee, the novelty and complexity of the issues presented, the protracted and

7   difficult nature of the litigation and the experience of Class Counsel in litigating wage and hour class

8   actions as described herein justify a significant multiplier. *See Washington Pub. Power,* 19 F. 3d at

9   1299 – 1300 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of nonpayment by

10  paying them a premium over their normal hourly rates for winning contingency cases.")   A lodestar-

11  plus-multiplier cross-check therefore further supports the reasonableness of the requested 30% fee.

12         **D.      Class Counsel's Requested Expense Reimbursement is Proper**

13         "Reasonable costs and expenses incurred by an attorney who creates or preserves a common

14  fund are reimbursed proportionately by those class members who benefit from the settlement." *In re*

15  *Media Vision Tech. Sec. Litig*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)

16         In the present case, the litigation expenses Class Counsel incurred were necessary to secure the

17  resolution of this litigation.  Class Counsel advanced all costs without assurance that they would ever

18  be repaid. The Settlement Agreement permits Class Counsel to seek reimbursement of their litigation

19  costs up to $100,000 and class notice informed class members that Class Counsel would seek an

20  award of costs not to exceed that amount.  Class Counsel is making a request for reimbursement of

21  $73,377.86. (Back-up documentation is available should the Court wish to inspect the same).

22         As detailed in the Declarations of Alejandro P. Gutierrez and Brian D. Hefelfinger filed

23  herewith, the costs include travel costs, mediation fees, expert fees, attorney service fees, filing fees,

24  and Pacer fees, which are routinely reimbursed. *See Odrick v. UnionBanCal Corp.,* 2012 WL 6019495

25  at *6 (N.D. Cal. Dec. 3, 2012) (in a common-fund settlement reimbursement of costs and expenses for

26  a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs

27  in their entirety was justified); *Knight,* 2009 WL 248367 at *7 (appropriate for counsel to recover

28  expenses for online legal research, travel, postage and messenger services, phone and fax charges,

1   court costs, and the costs of travel from the settlement fund).  Here, the expenses incurred by Class

2   Counsel are appropriate and should be reimbursed.

3   **V.   CONCLUSION**

4   It is difficult to imagine a settlement result more qualified for a five-percent increase of the

5   25% benchmark than that created here.  The amount of the Settlement and the other benefits it confers

6   upon class members are extraordinary and all of the criteria that determine whether an increase is

7   warranted are satisfied.   The proposed award of attorneys' fees and costs to Class Counsel are

8   reasonable  and  appropriate  under  the  governing  legal  standards.    Accordingly,  Class  Counsel

9   respectfully requests that the Court approve the same.

10

11  Dated: August 15, 2016          HATHAWAY, PERRETT, WEBSTER, POWERS,
                                    CHRISMAN & GUTIERREZ, APC

12

13                          By _____

14                                  ALEJANDRO P. GUTIERREZ
                                    Attorneys for Plaintiffs and the Certified Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF ATTORNEY FEES, COSTS– C 13-05097 PJH**