1  Alejandro P. Gutierrez, SBN 107688
2  **LAW OFFICES OF HATHAWAY, PERRETT, WEBSTER, POWERS, CHRISMAN & GUTIERREZ, APC**
3  200 Hathaway Building
   5450 Telegraph Road
   Post Office Box 3577
4  Ventura, CA  93006-3577
   Telephone: (805) 644-7111
5  Facsimile: (805) 644-8296
   E-mail: agutierrez@hathawaylawfirm.com
6

7  Daniel J. Palay, SBN 159348
   Michael A. Strauss, SBN 246718
8  Brian D. Hefelfinger, SBN 253054
   **STRAUSS & PALAY, APC**
9  121 N. Fir Street, Suite F
   Ventura, CA  93001
10 Telephone: (805) 641-6600
   Facsimile: (805) 641-6607
11 E-mail: djp@palaylaw.com

12 Attorneys for Plaintiffs and the Certified Class

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

16 MATHEW ROSS, an individual; for himself         ) CASE NO:  C 13-05097 PJH
   and those similarly situated; ROBERT           )
17 MAGEE, an individual, for himself and those    ) Action filed December 21, 2009
   similarly situated and ROES 1 through 30,000;  )
18 and the Certified Class,                       ) **CLASS ACTION**
                                                  )
19              Plaintiffs,                        ) **NOTICE OF MOTION AND**
                                                  ) *UNOPPOSED* **MOTION FOR**
20                                                 ) **FINAL APPROVAL OF CLASS**
        vs.                                        ) **ACTION SETTLEMENT;**
21                                                 ) **MEMORANDUM OF POINTS &**
                                                  ) **AUTHORITIES IN SUPPORT**
22                                                 ) **THEREOF**
   ECOLAB, INC., a Delaware Corporation; and      )
23 DOES 1 through 100, inclusive,                  ) **Hearing:**
                                                  ) **Date:**       **Aug. 31, 2016**
24              Defendants.                        ) **Time:**       9:00 a.m.
                                                  ) **Courtroom.:** 3, 3rd Floor
25                                                 )
                                                  )
26 _____        )

27

28

                                      1

**TO DEFENDANT ECOLAB INC. AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on August 31, 2016 at 9:00 a.m., in Courtroom 3 (3rd Floor) of the above-entitled Court located in the Oakland Courthouse at 1301 Clay Street, Oakland, California, or at such other date, time, or place as the Court may designate, Plaintiffs Mathew Ross and Robert Magee, on behalf of themselves and the Certified Class will and hereby do move pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1.  To grant final approval to the Settlement Agreement ("Settlement," attached as Exhibit 1 to the Declaration of Alejandro P. Gutierrez in Support of Plaintiffs' Motion for Final Approval);

2.  To determine that adequate notice was provided to the Settlement Class after the Court preliminarily approved the Settlement and notice plan by Order of May 13, 2016;

3.  To dismiss with prejudice all claims asserted in the case, as the "Released Claims" are defined in Section III(P) of the Settlement Agreement (Ex 1); and

4.  To retain jurisdiction over the case and the parties to the extent necessary to implement the terms of the Settlement Agreement until each act agreed to be performed by the Parties under the Settlement has been fully performed.

This motion is *unopposed* by Defendant Ecolab Inc.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's Preliminary Approval Order (Dock. No. 138). The motion will be based upon this Notice, the Memorandum of Points and Authorities set forth below; the Declarations of Alejandro P. Gutierrez and Tim Cunningham filed concurrently herewith, the Joint Stipulation of Class Action Settlement and Release filed herein, all of the pleadings, papers, and documents contained in the file of the within action, and such further evidence and argument as may be presented at or before the hearing on the Motion.

This motion is made following the completion of the class notice process whereby the Claims Administrator mailed the Class Notice to all identified Class members by June 2, 2016 and after the July

17, 2016 deadline for filing objections.

Dated: August 15, 2016   HATHAWAY, PERRETT, WEBSTER, POWERS, CHRISMAN &
            GUTIERREZ, APC

By _____
    ALEJANDRO P. GUTIERREZ
    Attorneys for Plaintiffs and the Certified Class

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

I.     Introduction .............................................................................................................. 1

II.    Issues to Be Decided ............................................................................................... 1

III.   Statement of Facts ................................................................................................... 1

IV.    Discovery and Investigation .................................................................................... 5

V.     The Mediations ........................................................................................................ 8

VI.    Summary of The Settlement ..................................................................................... 9

     A. Settlement Terms ............................................................................................... 9

     B. Settlement Value .............................................................................................. 11

VII.   Legal Argument ...................................................................................................... 11

     A.  The Settlement Meets Criteria for Final Approval ........................................ 11

     B. The Strength of Plaintiffs' Case Supports Final Approval ............................. 12

     C. The Complexity, Expense, and Likely Duration of Further Litigation Support
        Approval ......................................................................................................... 13

     D. The Risk of Maintaining Class Action Status Supports Final Approval ................. 14

     E. The Amount Offered in Settlement Supports Final Approval ................................. 14

     F. The Extent of Discovery Completed and State of Proceedings Supports Final
        Approval ......................................................................................................... 15

     G. The Settlement is the Product of Informed, Arm's-Length Negotiations Conducted by
        Experienced Counsel with the Assistance of an Experience Mediator .................. 16

     H. The Experience and Views of Counsel Support Final Award ................................ 18

     I.  The Presence of a Governmental Participant ............................................................ 19

     J.  The Reaction of the Class Members to the Settlement Supports Final Approval ... 19

VIII.  The Court-Approved Notice Plan Comports with Due Process ........................................ 20

IX.    Conclusion .............................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.*
  485 F.Supp. 610 (N.D.Cal. 1979) ................................................................. 19

*Burns v. Elrod*
  757 F.2d 151 (7th Cir. 1985) ....................................................................... 20

*Cannon v. Tex. Gulf Sulphur Co.*
  55 F.R.D. 308 (S.D.N.Y. 1972) ................................................................... 18

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ..................................................................... 11

*Chun-Hoon v. McKee Foods Corp.*
  716 F.Supp.2d 848 ............................................................................... 12, 20

*Churchill Vill., LLC. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) .................................................................. 11, 20

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) .................................................................................... 20

*Garner v. State Farm Mut. Auto.Ins. Co.*
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................... 12, 19

*Glass v. UBS Financial Services*
  2007 WL 221862 (N.D.Cal. Jan. 26, 2007) ................................................. 16

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011(9th Cir. 1998) ................................................................ 11, 17

*In re Omnivision Tech, Inc.*
  559 F.Supp.2d 1036 (N.D.Cal. 2008) ......................................................... 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D.Cal. 2004) ................................................................. 19

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir.1982) .................................................................. 12, 17

*Rodriguez v. West Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ............................................................ 12, 16, 17

ii

*Torrisi v. Tuscon Elec. Power Co.*
    8 F.3d 1370 ............................................................................................................ 22

*Williams v. Vukovich*
    720 F.2d 909 (6th Cir. 1983) ............................................................................... 17

*Wren v. RGIS Inventory Specialists*
    2011 WL 1230826 (N.D.Cal. April 1, 2011) ...................................................... 14

**Statutes**

Fed. R. Civ Proc. 23(e) ............................................................................... 1, 11, 20

28 U.S.C. § 1715 ........................................................................................... 5, 19

**Other Authorities**

Manual for Complex Litigation ............................................................... 11, 17, 22

Newberg on Class Actions ............................................................................. 17, 18

1    I.    **INTRODUCTION**

2    By Order of May 13, 2016, this Court granted preliminary approval to the Class Action

3    Settlement that Plaintiffs Mathew Ross and Robert Magee ("Plaintiffs"), on behalf of the Certified Class

4    they represent, reached with Defendant Ecolab Inc. ("Ecolab") (collectively, "the Parties").  Notice of

5    the Settlement was provided to the Class, in response to which no Class Member objected to the

6    Settlement.  Plaintiffs now seek final approval of the Settlement.  Plaintiffs respectfully submit that the

7    Settlement is fair, adequate, reasonable, and in the best interests of the Class as a whole – as confirmed

8    by the widespread support the Class Members have shown for the Settlement.

9    The Parties negotiated a $35 million, non-reversionary settlement of this litigation on behalf of

10   213 Class Members (four employees were later added by stipulation and order).  The average payment

11   measured by dividing amongst the participating class members (217) the Net Settlement Amount after

12   expenses, administration costs and fees, is in excess of $108,000 to each class member.  Class Counsel

13   believe this Settlement, which resulted from nearly seven years of fiercely fought litigation and arm's-

14   length settlement negotiations, to be a fair and reasonable resolution of the Class claims against Ecolab,

15   in light of the substantial risks and lengthy delay Plaintiffs and Class Members would have faced if this

16   matter had proceeded to trial and a likely appeal.

17   Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs respectfully request

18   that the Court (1) grant final approval to the Settlement; (2) direct the parties to perform their obligations

19   as set out in the Settlement; (3) dismiss with prejudice all "Released Claims," as that term is defined in

20   Section III(P) of the Settlement Agreement; and (4) retain jurisdiction to the extent necessary to

21   implement the terms of the Settlement until each act to be performed by the Parties under the Settlement

22   has been performed.

23   II.   **ISSUES TO BE DECIDED**

24   Whether the Court should grant final approval of the Class Action Settlement after preliminarily

25   approving the same on May 13, 2016.

26   III.  **STATEMENT OF FACTS**

27   On December 21, 2009, Plaintiff James Icard, on his own behalf, as well as on behalf of the

28

1

1   similarly-situated, filed a class action lawsuit against Defendant Ecolab Inc. Icard is a former employee
2   of Ecolab and he alleged that Ecolab failed to pay him all wages and penalties owed, including overtime
3   wages owed at the time his employment terminated, or to provide him with adequate paycheck stubs.
4   Gutierrez Decl. ¶ 3. Plaintiffs Matthew Ross and Robert Magee were confirmed as new class
5   representatives in the matter, in or about October of 2013. Gutierrez Decl., ¶ 9.

6        Plaintiffs and the Certified Class have worked as RSMs for Ecolab, which describes itself as "the
7   global leader in water, hygiene, and energy technologies and services." The parties agree that the RSMs
8   travel to customer sites of Ecolab's customers including restaurants and other businesses in the
9   hospitality industry in order to provide service to their commercial dishwashers, which are leased from
10  Ecolab. Specifically, the RSMs install, repair, and otherwise maintain the dishwashers, and also promote
11  products such as detergents and sanitizers to the customers. *See* Order Re Motions for Summary
12  Judgment and Motion for Decertification ("Order", Docket No. 104, pp. 1:23- 2:3). Plaintiffs claim that
13  they have been misclassified as "exempt," and thus have not received the overtime pay and meal breaks
14  to which they were entitled. Gutierrez Decl., ¶ 4.

15       The suit was originally filed in San Francisco Superior Court. Gutierrez Decl., ¶ 5. The operative
16  Complaint in this matter has four causes of action. The first is for unpaid wages, interest thereon, and a
17  statutory penalty under California Labor Code section 203. The second is for unfair business practices
18  in violation of California Business and Professions Code section 17200 *et seq.* (the "UCL"). The third
19  cause of action seeks penalties for violation of California Labor Code section 226. Together, these first
20  three causes of action seek unpaid overtime premium pay and wage statement penalties from Ecolab for
21  members of the class for the period from December 21, 2005 to the present. *See* Docket No. 40.

22       The fourth cause of action is for civil penalties available under the Private Attorney General Act
23  of 2004, California Labor Code section 2699 *et seq.* (the "PAGA"). The PAGA claim seeks civil
24  penalties against Ecolab for violation of various sections of the Labor Code. The time period covered
25  by the PAGA claim is from October 2, 2012 to the present. (*See* Docket No. 37 at p. 2, explaining PAGA
26  claim period).

27       Prior to the filing of this case, Ecolab had defended itself in a series of New York federal lawsuits
28  brought on behalf of its RSMs throughout the country, including California. At that time, the RSM

1 position was titled "Route Manager." After the resolution of those cases, Ecolab retitled the position

2 "Route Sales Manager," likely in an attempt to claim an overtime exemption available to salespersons.

3 Those New York cases resolved together at some point in 2009, and a handful of California RSMs

4 entered into a release of their claims through that date. The release is not an issue here, because Mr.

5 Icard's case only involved those RSMs who had not released their claims.  Gutierrez Decl. ¶ 6.

6       On May 25, 2012, the San Francisco County Superior Court issued an Order Certifying the Class,

7 defined as all employees of Ecolab who are/were Route Managers or Route Sales Managers, who have

8 worked in California between December 21, 2005 and the present, who do/did not cross state lines in

9 performance of their duties, and have not received full and correct pay for all hours worked and have

10 not received accurate itemized wage statements required pursuant to Labor Code section 226, and who

11 have not fully released all of the claims made in the lawsuit. Class Notice and opt-out forms were sent

12 to the putative class members, whose contact information was provided by Ecolab. Gutierrez

13 Declaration, ¶ 7.

14       In May of 2012, Ecolab brought a Motion for Summary Judgment, or in the Alternative

15 Adjudication of Issues, and then withdrew the motion in August 2012. In January 2013, Ecolab again

16 filed a Motion for Summary Judgment, or in the Alternative Adjudication of Causes of Action, arguing

17 that Plaintiff's causes of action for wages owed, inaccurate wage statements and unfair business

18 practices had no merit because Route Sales Managers were subject to the "commissioned salesperson"

19 exemption, the "outside sales" exemption, and the motor carrier or "hazardous materials" (also known

20 as "haz-mat") exemption. Additionally, Ecolab argued that it had always provided meal periods.

21 Gutierrez Declaration, ¶ 8.

22       In January 2013, Plaintiffs brought a motion for summary adjudication as to Ecolab's so-called

23 "haz-mat" exemption defense. The Superior Court continued the motions for summary adjudication

24 until such time as new class representatives were selected and approved to substitute for class

25 representative James Icard. On August 28, 2013, the Superior Court granted Plaintiffs' motion for an

26 order substituting James Icard with the current class representatives, Matthew Ross and Robert Magee,

27 as Ecolab had raised a question about Mr. Icard's suitability as a class representative. Gutierrez

28 Declaration, ¶ 9.

1    On September 26, 2013, the Superior Court denied Ecolab's Motion for Summary

2  Judgment/Adjudication. The Court continued Plaintiffs' motion for summary adjudication to December

3  19, 2013 for further hearing, as the Court desired additional briefing on the "haz-mat" exemption

4  defense. Gutierrez Declaration, ¶ 10.

5    On October 31, 2013, Ecolab removed this action to federal court. On December 2, 2013,

6  Plaintiffs filed a Third Amended Complaint for wages owed, violations of Business & Professions Code

7  § 17200, violation of Labor Code § 226, and violation of California Labor Code Private Attorney

8  General's Act (the "PAGA"). The PAGA cause of action was added after statutory notice was sent via

9  certified mail to the California Labor and Workforce Development Agency ("LWDA") as well as to

10  Ecolab. On December 16, 2013, Ecolab filed a motion to dismiss the Third Amended Complaint on the

11  basis that it had been filed without leave of court. The court granted the motion and instructed Plaintiffs

12  to file a motion for leave to amend, which they did on February 6, 2014. The court granted Plaintiffs'

13  motion and they re-filed their Third Amended Complaint on April 7, 2014. Gutierrez Decl. ¶¶ 11, 13.

14    In its Answer to Plaintiffs' TAC, Ecolab asserted twenty-seven affirmative defenses. On May

15  16, 2014, Plaintiffs filed a motion to strike many of Ecolab's affirmative defenses as insufficiently pled,

16  which motion was granted in part by the district court on July 23, 2014. The court ordered Ecolab to file

17  an amended Answer within 21 days of the order. Gutierrez Decl., ¶ 14.

18    On February 25, 2015, Plaintiffs filed a motion for partial summary judgment as to Ecolab's

19  affirmative defenses based on the outside salesperson exemption, the commissioned sales exemption

20  and the "haz-mat" exemption. Defendant Ecolab simultaneously re-filed its prior motion for summary

21  judgment asserting that Plaintiffs are exempt from overtime based on each of the three exemptions. At

22  the same time, Ecolab also filed a motion to decertify the class. Id. at ¶ 15.

23    On September 28, 2015, the court issued its Order Re Motions for Summary Judgment and

24  Motion for Decertification. See Docket No. 104. In a 27-page decision, the court granted Plaintiffs'

25  motion for partial summary judgment as to the outside salesperson exemption and denied Ecolab's

26  motion for summary judgment on the exemption. Similarly, the court granted Plaintiffs' motion for

27  summary judgment as to the "commissioned salesperson" exemption and denied Ecolab's summary

28  judgment motion on the same issue. Id. at 15:16 – 21. Finally, the court granted Plaintiffs' motion for

1  partial summary judgment as to the "haz-mat" exemption and denied Ecolab's summary judgment
2  motion on the issue. *Id.* at 18:8–19:20. As a result of the court granting partial summary judgment in
3  Plaintiffs' favor on all three asserted overtime exemptions, Ecolab's motion for summary judgment on
4  the overtime claim as a whole was denied. *Id.* at 19:21 – 23. Gutierrez Decl., ¶ 16.

5       As to Plaintiffs' meal break claim, the court granted Ecolab's motion for summary judgment as
6  to the meal break claim from October 12, 2008 to the present. The court allowed Ecolab to file a
7  supplemental brief, along with evidence, regarding the viability of Plaintiffs' meal break claim from
8  2005 to 2008 and deferred its ruling in that regard. *Id.* at 21:2 – 12. The court also denied Ecolab's
9  motion for summary judgment as to Plaintiffs' remaining claims under Cal. Bus. & Prof. Code § 17200,
10 Labor Code § 226, and PAGA. *Id.* at 21:13-22:4. The court further denied Ecolab's motion for class
11 decertification. *Id.* at 27:12. Soon thereafter, Ecolab hired new counsel on the case, Littler Mendelson.
12 Gutierrez Decl., ¶ 17.

13      On October 9, 2015, Ecolab filed a supplemental brief related to the meal break claim and
14 Plaintiffs filed their responsive brief on October 22, 2015. On October 28, 2015, Ecolab filed a motion
15 for certification of interlocutory appeal of the Court's September 28, 2015 Order pursuant to 28 U.S.C.
16 section 1292(b).  Gutierrez Decl., ¶¶ 18, 19.

17      On November 3, 2015, the Court issued its Order re Meal Break Claim denying Ecolab's motion
18 for summary judgment as to the meal break claim from December 21, 2005 to October 11, 2008, and
19 the Court further denied Ecolab's motion for decertification as to the meal break claim. Docket No. 117.
20 Gutierrez Decl. ¶ 20.

21      On November 11, 2015, Plaintiffs filed a responsive brief to Ecolab's section 1292(b) motion
22 and on November 18, 2015, Ecolab filed its reply. On November 30, 2015, the parties filed a stipulation
23 and proposed order to stay the proceedings to allow for a third mediation and on December 2, 2015, the
24 court issued the Order staying the proceedings. Gutierrez Decl., ¶ 21., a motion to strike affirmative
25 defenses, a motion for contempt of a court order, and three mediations.

26 **IV.    DISCOVERY AND INVESTIGATION**
27      The litigation involved extensive discovery: Plaintiffs propounded eight sets of requests for
28

1  production of documents, five sets of special interrogatories, four sets of form interrogatories, and eight

2  sets of requests for admission, and reviewed Ecolab's responses to these discovery requests.  Thirty-

3  eight depositions were taken, including those of seven Ecolab corporate witnesses.  Gutierrez Decl., ¶

4  22.

5       Class Counsel went through over a million pages of documents produced by Ecolab, including

6  Service Detail Reports, commission statements, earnings statements, check details, performance track

7  reports, annual review forms, 360 opportunity reports,  coaching plans, ESM-time records, territory

8  rankings reports, training modules, hand-outs and manuals, training transcript reports, compensation

9  plans, personnel files, Ecolab ware washing lease program materials, product promotional material,

10  various sample lease agreements, material safety data sheets, chemical labels and other relevant

11  documents. Class Counsel spent dozens of hours reviewing, indexing, and analyzing this documentation

12  in order to prepare Plaintiffs' certification and dispositive motions regarding the exemptions asserted by

13  Ecolab. Gutierrez Decl. ¶ 23.

14       Further, Class Counsel went through tens of thousands of Service Detail Reports for multiple

15  class members, including those for the 12 individuals whose declarations Ecolab submitted with its

16  motion for summary judgment. From those SDRs, Class Counsel compiled "day in the life" spreadsheets

17  of the tasks performed by the RSMs, the times spent at each customer location, and the average hours

18  worked per day. Class Counsel also reviewed and summarized thirty-eight deposition transcripts for

19  evidence of the RSMs' actual day-to-day tasks. This work was crucial in proving that RSMs were

20  working primarily rendering hands-on service, not selling products, and thus not subject to the outside

21  salesperson exemption. These efforts were also instrumental to the mediations conducted in the case.

22  Gutierrez Decl., ¶ 24.

23       Due in part to the limitations of the hours-worked data contained in the SDR records, Class

24  Counsel determined that it was necessary to interview dozens of Class Members to gauge the accuracy

25  of these records and, if they were not accurate, to better assess the number of overtime hours worked by

26  Class Members. Class Counsel thus conducted extensive interviews with close to 100 class members.

27  Gutierrez Decl., ¶ 25. For instance, Class Counsel interviewed Class Members regarding their duties at

28  Ecolab, the amount of overtime hours they worked, the amount of weekend duty they had, the contents

of their paystubs, the materials they carried on their Ecolab vehicles and the quantities of such materials, whether they kept log books, whether they had a commercial driver's license (none did), whether they were hired as "drivers" (none were), and whether they had "haz/mat" training (none did). *Id.*

In addition, Class Counsel kept in constant contact with a number of those individuals throughout the course of this action. Gutierrez Decl., ¶ 26.

A large number of Class Members in this action were particularly pro-active and interested in all aspects of the litigation and Class Counsel were constantly fielding inquiries from those individuals as to the status of the case. Class Counsel relied on their interviews with Class Members to provide key facts needed to support Plaintiffs' successful motion for class certification and successful summary judgment motions relating to the exemptions asserted by Ecolab. This was in addition to the painstaking research Class Counsel conducted related to the legislative history, both state and federal, of the motor carrier/"haz-mat" exemption to overtime laws. Based on such research, Class Counsel prepared a comprehensive Power Point presentation of all applicable regulations, authorities and interpretive bulletins, to be used if necessary to demonstrate to the Court the purpose of the exemption and why it only applied to drivers. Gutierrez Decl., ¶ 27.

With all of this information gathered, Class Counsel were able to properly evaluate Ecolab's liability for unpaid overtime and PAGA penalties, for mediation (and, if necessary, trial) purposes. Gutierrez Decl., ¶ 28.

Using the information produced by Ecolab, it was possible to calculate Ecolab's maximum possible exposure at trial for unpaid overtime and interest thereon, penalties under Labor Code section 203, and civil penalties under the Private Attorney General Act of 2004 ("PAGA"). Going into the mediation, by Plaintiffs' calculation, which assumed 15 hours of overtime worked per week by each Class Member for the class period, they calculated Ecolab's potential exposure to be on the order of:

- Overtime Wages: Est. $25 Million
- Interest on Overtime: Est. $13 Million
- Penalty under Labor Code section 203: Est. $1.5 Million
- Penalties under PAGA: Est. $7 Million
- Total: Est. $46.5 Million

1    Gutierrez Decl., ¶ 29.

2         Of these figures, the PAGA penalties were the most uncertain. There was a dispute between the

3    parties as to whether Plaintiffs could pursue the "second-level" penalties available under PAGA. Even

4    so, Plaintiffs acknowledged that PAGA penalties are at the discretion of the trial court and are by no

5    means certain. The $7M figure for PAGA penalties reflects a target of probable "first-level" penalties

6    at trial for violations of Labor Code sections 201, 202, 203, 204, 226, 510, 558, and 1194 and Wage

7    Order 5-2001. Gutierrez Decl., ¶ 30.

8         Getting to the stage of proving damages first required Class Counsel to strenuously litigate the

9    exemptions, as outlined above. As previously discussed, dispositive motions were filed in both the state

10   court and in this Court. Both courts found in favor of Plaintiffs. Gutierrez Decl., ¶ 31.

11        After   the   granting   of   Plaintiffs'   motion   for   summary   adjudication   on   the

12   Haz/Mat/Sales/Commission exemptions, Class Counsel had to begin preparing for what was likely to

13   be a highly complex, expert-driven damages-only trial. In preparation for the eventual trial of this case,

14   Plaintiffs hired Dr. Richard Drogin to be their statistical sampling expert. Class Counsel brought Dr.

15   Drogin up to speed on the case and he reviewed thousands of pages of documents in preparation for his

16   role as expert witness. Gutierrez Decl., ¶ 32.

17   **V.    THE MEDIATIONS**

18        This matter was mediated on three (3) separate occasions. A first mediation occurred before

19   Michael Loeb on February 10, 2014. A second mediation occurred before the same mediator on April

20   16, 2015. Both were unsuccessful. On February 12, 2016, the parties attended a mediation before Hunter

21   Hughes. As noted, prior to the mediation, the parties exchanged all necessary payroll and related

22   information necessary to permit a full and complete analysis of the value of the potential recovery. The

23   information included the dates of employment of each class member, the salary and commissions earned

24   by each class member throughout the claims period, and the names and dates of all class members who

25   at any time during the claims period took a personal leave of absence. Through discovery, the parties

26   had gained even more knowledge of the claims and value thereof.   In short, the parties began

27   negotiations at the mediation with full knowledge of the strengths, weaknesses, and value of the claims

28   and defenses asserted. Gutierrez Decl., ¶ 33.

At the third and last mediation, the parties entered into a settlement, the terms of which were memorialized in a memorandum of understanding at the mediation. The proposed Settlement echoes the terms of that settlement. Under the Settlement, Ecolab has agreed to pay an all-in total of $35 million (plus employer-side taxes), the equivalent of 15 overtime hours per week to the class members for the claims period plus all legal interest on these amounts owed (after fees). With 213 class members, this represented a *per capita* recovery of $164,319.24 before deduction of fees, litigation expenses, administration costs and incentive awards. The average net payment (measured by dividing amongst the class members the Net Settlement Amount after payment of expenses, administration costs and fees) for the 217 participating class members is in excess of $108,000 to each class member. Cunningham Decl., ¶ 16. This is one of the highest (if not the highest) *per capita* wage/hour settlement recoveries ever achieved in California.

By any measure, the settlement represents a very favorable result for the class members.

## VI. SUMMARY OF THE SETTLEMENT

### A. Settlement Terms.

The settlement discussions between the parties have been non-collusive, adversarial, and at arm's length. The investigation and discovery described above, the parties' ongoing case evaluations and exchanges of ideas, the full and complete briefing regarding class certification and summary judgment/adjudication, the Court's rulings, and multiple mediation sessions have all combined to enable the two sides to fully and completely assess the merits of their respective positions.

The terms of the settlement are set forth in the Settlement Agreement attached hereto as Exhibit 1 and incorporated herein by reference. The principal terms are:

(a) Defendant will pay a Maximum Settlement Amount of $35,000,000.00. This sum includes payments made to claimants, $100,000 payable to the California Labor and Workforce Development Agency for PAGA penalties (the "LWDA payment"), settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the named plaintiffs.

(b) After the LWDA payment, settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the named plaintiffs, the remaining amount will be disbursed to all class members. This amount is designated in the Settlement Agreement as the Net Settlement Amount.

9

1    (c) Defendant will not object to an award of attorneys' fees to Class Counsel not to exceed 33%

2    of the Maximum Settlement, and up to $100,000.00 in actual costs and expenses.

3    (d) Plaintiffs will seek incentive awards up to a maximum of $8,000.00 each for the current class

4    representatives, Ross and Magee), and up to a maximum of $3,000.00 for former class representative

5    James Icard. Defendant will not object to the requested incentive awards to each of the plaintiffs up to

6    these amounts amount. The Settlement Agreement explicitly relates that the settlement of the action is

7    not contingent upon the incentive awards to the class representatives.

8    (e) Each Class Member will be entitled to receive a portion of the amount of the Net Settlement

9    Amount, determined by converting the Net Settlement Amount into a weekly value. The weekly value

10   will be established by dividing the Net Settlement Amount by all full workweeks worked by the 213

11   members of the Class as an RSM. The weeks worked during the class period will be derived from the

12   hire and termination dates and payroll data in Ecolab's records to be supplied to the Administrator.

13   Leave of absence weeks will be excluded. The gross settlement award for each Class Member will then

14   be determined by multiplying the weekly value by the number of weeks they individually worked during

15   the class period.

16   (f) The parties have selected CPT Group, Inc. ("CPT") as the Claims Administrator. CPT has

17   provided a quotation of $11,689.18 for its administration expenses, and the parties have stipulated to a

18   "not to exceed" amount of $15,000 for administration expenses.

19   (g) The parties have agreed on a Notice of Settlement form to be mailed to the Class, which is

20   attached hereto as Exhibit A to the Settlement. The Notice of Settlement informs the class members of

21   the essential terms of the Settlement, and their right to object thereto.

22   (h) The Notice Packet will be mailed by First Class Mail.

23   (i) Class members will have forty-five (45) calendar days from the date the Notice of Settlement

24   packets are mailed to postmark their objections, if any.

25   (j) The Claims Administrator will perform a skip-trace on returned mail and re-mail Claim Forms

26   to an updated address (if any) within five (5) calendar days of receiving notice that a Notice of Settlement

27   packet was undeliverable. See Exhibit 1 to Gutierrez Decl.

28   ///

1     **B. Settlement Value.**

2     The settlement represents a compromise between the positions and evaluations of the two sides

3     to this controversy. Clearly, there were significant disagreements between the parties as to the facts, the

4     law, and the application of both to Defendant's business model. As an example, the parties disagreed

5     substantially on (1) whether class certification was proper given the disparity between the damages of

6     individual class members and in light of *Dukes v. Wal-Mart*, 131 S.Ct. 2541 (2011); (2) whether

7     Defendant properly classified the Class Members as exempt from California overtime pay pursuant to

8     one or more of three claimed exemptions– namely, the outside sales exemption, commission exemption

9     and haz/mat exemption; (3) whether Plaintiffs had standing to pursue PAGA and waiting-time penalties;

10    and (4) whether the law permitted proving damages at trial by use of statistical evidence.

11    After significant discovery, litigation, motion practice, and mediation preparations in the case,

12    Plaintiffs valued the realistic range of provable damages at between $20 million and $50 million. Given

13    the risks of litigation, including the uncertainty over whether Defendant would prevail in an appeal of

14    the final judgment on the basis of whether the hazmat/sales/commission exemption decision was proper,

15    uncertainty regarding the amount of overtime hours worked, and the possibility that the Court would

16    reduce any PAGA penalties against Defendant, the settlement of $35 million represents a reasonable

17    comprise.

18    **VII.    ARGUMENT**

19    **A. The Settlement Meets Criteria for Final Approval**

20    Judicial policy strongly favors settlement, particularly in complex class actions. *Class Plaintiffs*

21    *v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Churchill Vill., LLC. v. Gen. Elec.*, 361

22    F.3d 566, 576 (9th Cir. 2004). It is within the trial court's sound discretion whether to approve

23    settlements in the class actions before it. *Hanlon v. Chrysler Corp.*, 150 F.3d1011, 1026 (9th Cir. 1998).

24    In determining final approval, the court's inquiry under Federal Rule of Civil Procedure Rule 23(e), is

25    whether the settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). A class action

26    settlement meets this standard when "the interests of the class are better served by the settlement than

27    by further litigation." Manual for Complex Litigation(Fourth) § 21.61 (2004). Courts will generally not

28    intrude into the private consensual agreement negotiated between the parties except to ensure that the

1  settlement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties."

2  *Garner v. State Farm Mut. Auto.Ins. Co.*, 2010 WL 1687832 at *8 (N.D. Cal. Apr. 22, 2010) (Wilken,

3  J.) (citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982)). In deciding

4  whether a class action settlement is fair, adequate, and reasonable, courts in the Ninth Circuit consider

5  the following factors:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely
> duration of further litigation; [3] the risk of maintaining class action status throughout
> the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and
> the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of
> a governmental participant; and [8] the reaction of the class members to the proposed
> settlement.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).  In this case, these factors

10  weigh in favor of final approval because the benefit of a considerable and certain financial recovery of

11  $35 million outweighs the increased risks, costs, and delays inherent in protracted litigation.

### B. The Strength of Plaintiffs' Case Supports Final Approval

The first fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of

possible recovery.  *See Rodriguez,* 563 F.3d at 964 – 965. In determining the probability of Plaintiffs'

success on the merits, there is no "particular formula by which that outcome must be tested." *Id.* at 965.

Rather, the Court's assessment of the likelihood of success is "nothing more than an 'amalgam of delicate

balancing, gross approximations and rough justice.' *Officers for Justice,* 688 F.2d at 625 (citation

omitted). Nor, at this stage, need the Court "reach any ultimate conclusions on the contested issues of

fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation

and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Instead, the

Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable

range of settlement by considering Plaintiff's likelihood of recovery. *Garner v. State Farm Mut. Auto*

*Ins. Co.,* 2010 WL 1687832 at *9 (citing *Rodriguez,* 563 F.3d at 965). This factor is generally satisfied

when plaintiffs must overcome barriers to make their case. *Chun-Hoon v. McKee Foods Corp.,* 716 F.

Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, although Plaintiffs obtained class certification and prevailed on their summary judgment

motion regarding the three asserted exemptions, Ecolab had a legitimate argument to defend itself from

1    the claim for statutory penalties under Labor Code section 203 (waiting-time penalties). Section 203

2    requires a willful failure to pay wages. A defendant may avoid the penalty by showing a good faith

3    dispute over whether wages were owed. 8 Cal. Code Regs., § 13520. Ecolab could very well argue that

4    there was a good faith dispute.  Gutierrez Decl., ¶ 36.

5        By far the strongest claim asserted on behalf of the Class is the overtime violation. If Ecolab had

6    been successful in an appeal of a final judgment, Plaintiffs would have been without a remedy, including

7    for this claim, since the other claims were derivative of the overtime claim.  Gutierrez Decl., ¶ 37.  Even

8    assuming the appeal was decided in Plaintiffs' favor, the class would not have received any

9    compensation from this case until such appeal was exhausted.  Therefore, Plaintiffs and the class would

10   have faced substantial risk in proceeding with the litigation had a settlement not been reached.

11       Given the risks faced by Plaintiffs as described herein, the Settlement Fund represents an

12   excellent resolution. The Settlement mitigates the risk to both the Plaintiffs and the Defendants by fixing

13   the overtime figure at a probable outcome, as discussed above.  Accordingly, this factor favors approval

14   of the proposed settlement, which represents a substantial recovery for the class and a well-crafted

15   compromise of the divergent positions of the parties in relation to these issues.

16   **C. The Complexity, Expense, and Likely Duration of Further Litigation Support Approval**

17       This Settlement also allows the Class to avoid the complexity, delay, and expense of continuing

18   with the litigation and instead provides a considerable and concrete recovery for the Class.  The Parties

19   entered into the Settlement Agreement before a jury trial related to damages.  Although Plaintiffs believe

20   they would have ultimately prevailed if this case were litigated through trial, they nonetheless recognize

21   the risks and delay of further litigation.  Gutierrez Decl., ¶ 39.

22       Throughout this litigation, Plaintiffs have argued that Ecolab should be held liable for unpaid

23   overtime because the haz/mat and sales exemptions do not apply.  Ecolab, on the other hand, has

24   steadfastly maintained that Plaintiffs and the class were properly classified as exempt under the three

25   exemptions. Ecolab has also maintained that Plaintiffs and the class could never prove class-wide

26   damages because of the varied nature of the work performed by the Class Members.  Again, had an

27   Ecolab appeal been successful, Plaintiffs could have lost everything.  Gutierrez Decl., ¶ 39.

28

1       Further, had the case proceeded to trial Plaintiffs still faced numerous obstacles to recovery,

2  including challenges to statistical sampling, challenges to their expert witnesses and to damages

3  calculations and pursuing their claims against skilled defense attorneys who have significant trial

4  experience in similar cases.  The Parties disagreed about how to measure damages at trial.  During the

5  time the case was being litigated in state court, Plaintiffs proposed a trial management plan that involved

6  an aggregate computation of class monetary relief.  Ecolab vigorously opposed a statistical sampling

7  method, arguing it implicated due process concerns.  The time and expense associated with trial

8  preparation would mount, as the parties would have to complete depositions of trial witnesses, prepare

9  and defend against motions *in limine* and *Daubert* motions, draft trial briefs, prepare trial exhibits,

10  appear for pre-trial conferences, and ultimately, try the case to a jury. Gutierrez Decl., ¶ 40.  *See Wren*

11  *v. RGIS Inventory Specialists*, 2011 WL 1230826 at \*7 (N.D.Cal. April 1, 2011) (mounting time and

12  expenses associated with trial preparation and potential appeals supported approval of settlement).

13       Because the Settlement offers Class Members a certain recovery rather than further, uncertain,

14  and costly litigation, this fairness factor favors approval.

15  **D. The Risk of Maintaining Class Action Status Supports Final Approval**

16       Throughout the case, Ecolab has maintained that there was a wide variation among RSMs in the

17  actual performance of their jobs and in how they spent their time such that class treatment was improper.

18  *See* e.g. Docket No. 79-1.  Ecolab purported that the variations in RSM experiences were the product of

19  RSMs working in "27 different districts, under different district managers, management styles and

20  practices, and with different customer basis and with "significant disparities in mindset, motivation,

21  talent, personal preference and work habits of RSMs with regard to the performance of their duties."

22  *Id.,* pg. 10.  Even though this Court denied Ecolab's attempt to decertify the class, because a district

23  court may decertify the class at any time, Plaintiffs faced the risk that Ecolab would have appealed

24  certification if there were a final, adverse judgment.  At the time of the settlement, the risk remained

25  that the class might be decertified.  This factor weighs in favor of settlement.

26  **E. The Amount Offered in Settlement Supports Final Approval**

27       Given the challenges inherent in demonstrating damages on a class-wide basis and the risks of

28  further litigation and appeals, the fourth fairness factor, the amount offered in settlement, favors final

approval here because the Settlement benefits the Class by providing them with a substantial net financial recovery – on average *$108,000 per Class Member*. Cunningham Decl., ¶ 16. None of the $35,000,000 Settlement Fund will revert to Ecolab because, under the Settlement's terms, all of the Net Settlement Fund will be distributed to Class Members in proportion to the number of weeks that s/he worked for Ecolab as an RSM compared to all the weeks worked by all the Certified Class Members as an RSM. Gutierrez Decl., Ex. 1, pg. 9. Any check not cashed within 120 calendar days will be void. Within 30 days after the check stale date the money from the uncashed checks shall escheat to the State of California Unclaimed Wages fund, in the name of the Class Member. Ex. 1, pg. 10.

The Settlement offers Class Members a certain and considerable recovery of the wages they earned and were not paid by Ecolab during the class period, as well as penalties and interest thereon. The recovery represents 100% of the value of Class claims based on 15 hours of overtime per workweek. Gutierrez Decl., ¶ 34.

As such, because the Settlement provides substantial relief to the Class while avoiding the expense and uncertainty of continued litigation, this factor shows that the Settlement is fair, reasonable, and adequate.

**F.  The Extent of Discovery Completed and the State of Proceedings Support Final Approval**

Because the Parties engaged in extensive discovery and have litigated this case both in this Court and in state court since the filing of the case in December 2009, the fifth fairness factor also supports final approval. Where the parties have engaged in extensive discovery and summary judgment motions, a court "could find that counsel had a good grasp on the merits of their case before settlement talks began." *Rodrigues,* 563 F.3d at 967.

As shown, the case at bar is a heavily litigated case, involving multi-forum litigation over the course of over six years against a formidable, skilled and well-financed adversary. The protracted, contentious, and intensely fought litigation included among other things, three removals to federal court, two motions to dismiss, two remands, three summary judgment motions, a class certification motion, two motions to decertify the class, one summary adjudication motion, one partial summary judgment motion, three amended complaints, two appeals, one reconsideration motion, discovery motions, a motion to strike affirmative defenses, a motion for contempt of a court order, and three mediations. At

15

1   motion to strike affirmative defenses, a motion for contempt of a court order, and three mediations.  At

2   the time the parties settled the matter, Ecolab's appeal of this Court's order granting summary judgment

3   in favor of Plaintiffs was pending.  Gutierrez Decl., ¶¶ 7 – 21.

4         As previously stated, the litigation also involved extensive discovery: Plaintiffs propounded

5   eight sets of requests for production of documents.  In response to those requests, Ecolab produced

6   hundreds of thousands of documents, totaling over a million pages. Gutierrez Decl., ¶ 22. Class Counsel

7   also propounded five sets of special interrogatories, four sets of form interrogatories, and eight sets of

8   requests for admission, and reviewed Ecolab's responses to these discovery requests. Gutierrez Decl., ¶

9   22. Class Counsel interviewed hundreds of Class Members and prepared dozens of declarations based

10  on the interviews. Gutierrez Decl., ¶¶ 22 - 26.

11        Thirty-eight depositions were taken, including depositions of the three named Plaintiffs, several

12  Class Member witnesses, Ecolab's expert and Ecolab's corporate witnesses.  Class Counsel examined

13  Ecolab's corporate witnesses in regard to the outside sales exemption and commissioned sales

14  exemption, such as the duties and responsibilities of RSMs, the percentage of time spent by RSMs in

15  their various duties, how sales commissions were earned, including commissions earned by RSMs on

16  machine rental fees, the contents of commission statements, and the contents of all written lease

17  agreements, among other things.  In all, Class Counsel deposed seven Ecolab corporate witnesses, one

18  of them twice. Gutierrez Decl., ¶ 22.  *Cf. Glass v. UBS Financial Services,* 2007 WL 221862, at *4

19  (N.D.Cal. Jan. 26, 2007) (approving class settlement despite absence of any formal discovery).

20        As stated, the Parties mediated the controversy three times.  By the time of the final mediation

21  in February 2016, the Parties had conducted a significant amount of discovery and had a "good grasp

22  on the merits of their case before settlement talks began." *Rodriguez,* 563 F.3d at 967; Gutierrez Decl.,

23  ¶ 33. As such, this factor weighs in favor of approving the Settlement.

24  **G.  The Settlement is the Product of Informed, Arm's-Length Negotiations Conducted by**

25       **Experienced Counsel with the Assistance of an Experience Mediator**

26        The Ninth Circuit has shown longstanding support of settlements reached through arms' length

27  negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009),

28  the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the

16

1   [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027). The primary reason for deferring to such

2   settlements is the experience of counsel and the participation of a neutral, both of which factors are

3   present here:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated
> between the parties to a lawsuit must be limited to the extent necessary to reach a
> reasoned judgment that the agreement is not the product of fraud or overreaching by, or
> collusion between, the negotiating parties, and that the settlement, taken as a whole, is
> fair, reasonable and adequate to all concerned. *Id.* at 965 (quoting *Officers for Justice*,
> 688 F.2d at 625).

8   The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive,

9   negotiated resolution, and have never prescribed a particular formula by which that outcome must be

10   tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the *Rodriguez* court explained, "In reality,

11   parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by

12   considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of

13   obtaining it, discounted to present value." *Id.* (citations omitted). *See also Williams v. Vukovich*, 720

14   F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who

15   has competently evaluated the strength of his proofs"); 2 Newberg on Class Actions §11.24 (4th Ed. &

16   Supp. 2002); *Manual for Complex Litigation*, Fourth, §30.42 (2002).

17   The proposed Settlement here is the product of years of preparation and arm's-length

18   negotiations between the parties. Plaintiffs conducted significant investigation of the facts and law

19   during the prosecution of this action, including (1) extensive review and analysis of critical documents,

20   (2) comprehensive depositions of key Ecolab personnel, (3) filing a certification motion which the

21   Defendant strenuously opposed and thereafter sought reconsideration and appeal to the Ninth Circuit as

22   well as two attempts at decertification (4) investigating, researching and filing a motions for summary

23   judgment, (5) researching and drafting comprehensive oppositions to Ecolab's motions for summary

24   judgment, (6) obtaining and reviewing detailed employment records and wage histories for all class

25   members, and (7) retention of Richard Drogin, Ph.D. for the purpose of conducting a comprehensive

26   analysis of the employment data obtained. Negotiations between counsel occurred over the course of

27   several years and included three separate private mediation sessions. Gutierrez Decl., ¶ 35.

28

1    Plaintiffs' counsel considered the strengths and weaknesses of their case and of Ecolab's

2    defenses. Considerable effort has been put forth to analyze the law as it would apply to the facts of this

3    matter, including the Plaintiffs' claim that they and the class were improperly classified as exempt from

4    overtime under the "haz/mat," outside salesperson, and/or commission sales exemptions. Gutierrez

5    Decl., ¶¶ 33 - 34. This settlement of $35 million represents nearly all, if not all, of the potential overtime

6    damages and interest that the class may have recovered. *Id.*

7    Plaintiffs have also taken into account the uncertainty and risk of the outcome of further litigation

8    and the difficulties and delays inherent in such litigation. Plaintiffs are also aware of the burdens of

9    proof necessary to establish the amount of damages for the class members given that so-called "trials by

10   formula" are discouraged, not to mention the strong likelihood that Ecolab would appeal the Court's

11   decision that the exemptions were inapplicable.

12   In its May 13, 2016 Order Granting Preliminary Approval of the Class Action Settlement, the

13   Court found that the Settlement is the product of "serious, informed, non-collusive negotiations

14   conducted at arm's-length by the Parties." In making such finding, the Court considered the potential

15   damages claimed in the lawsuit, Defendant's potential liability, the risks of continued litigation

16   including trial outcome, delay and potential appeals, the substantial benefits available to the Certified

17   Class as a result of the Settlement, the Parties' participation in mediation with an experienced class

18   action mediator, and the fact that the proposed Settlement represents a compromise of the Parties'

19   respective positions rather than the result of a finding of liability at trial. Docket No. 138, pg. 2, ¶ 2.

20   As this Court properly held in its Preliminary Approval Order, the Settlement is "fair, adequate

21   and reasonable." *Id.*, pg. 2, ¶ 1. Accordingly, final approval should be granted.

22   **H. The Experience and Views of Counsel Support Final Award**

23   Finally, the fact that the lawyers for both Plaintiffs and Ecolab – who have all vigorously litigated

24   this case for over six-and-one-half years – support the Settlement weighs in favor of final approval. *See*

25   Newberg § 11.47 at p. 148 (citing *Cannon v. Tex. Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y. 1972

26   ("The court should give great weight to the fact that the lawyers for substantially all of the plaintiffs and

27   defendants who have been engaged in this arduous litigation for seven years unanimously support the

28   settlement")). The Settlement has been reached after considerable negotiation, and involving the

1    a responsible means of addressing the claims of Plaintiffs, and the defenses of Defendant. Gutierrez

2    Decl., ¶¶ 47 - 49.

3            As demonstrated in their declarations, Class Counsel have extensive experience in the litigation,

4    certification, trial and settlement of complex wage and hour class action cases.  Gutierrez Decl., ¶ 46;

5    Palay Decl. ISO Fee Motion, ¶¶ 4 – 5; Hefelfinger Decl. ISO Fee Motion, ¶¶ 15 – 18; Michael Strauss

6    Decl. ISO Fee Motion, ¶¶ 5 – 11; Jenna Strauss Decl, ISO Fee Motion, ¶¶4 - 6.  In general, the

7    "recommendations of plaintiffs' counsel should be given a presumption of reasonableness" by the

8    courts." *In re Omnivision Tech, Inc.*, 559 F.Supp.2d 1036, 1043 (N.D.Cal. 2008) (citing *Boyd v. Bechtel*

9    *Corp.*, 485 F.Supp. 610, 622 (N.D.Cal. 1979)).  In negotiating the Settlement, Class Counsel benefitted

10   from their years of experience along with their intimate knowledge of the factual and legal issues in this

11   case.  Gutierrez Decl., ¶¶ 46 - 48.

12           This factor also weighs in favor of granting final approval of the Settlement.

13   **I.   The Presence of a Governmental Participant**

14           Though there is no governmental participant involved in the case, pursuant to 28 U.S.C. § 1715

15   of the Class Action Fairness Act (CAFA), Ecolab provided notice of the Settlement to the Office of the

16   Attorney General for the United States and the Office of the Attorney General for the State of California.

17   Doc. No. 130, Ex. 1, pg. 51.  The courts have noted that "[a]lthough CAFA does not create an affirmative

18   duty for either state or federal officials to take any action in response to a class action settlement, CAFA

19   presumes that, once put on notice, state or federal officials will raise any concerns that they may have

20   during the normal course of the class action settlement procedures." *Garner*, 2010 WL 1687832 at *14.

21   To date, no federal or state official has raised any such concerns.  Gutierrez Decl., ¶ 45.

22   **J.   The Reaction of the Class Members to the Settlement Supports Final Approval**

23           "It is established that the absence of a large number of objections to a proposed class action

24   settlement raises a strong presumption that the terms of a proposed class settlement action are favorable

25   to the class members." *In re Omnivision*, 599 F.Supp.2d at 1043, citing *Nat'l Rural Telecomms. Coop.*

26   *v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D.Cal. 2004).  Here, after this Court's Preliminary

27   Approval Order, the Parties implemented the Court-approved Notice Plan.  As stated, under the terms

28   of the Settlement, the Settlement Class Members had until July 17, 2016 to object to the Settlement.  As

1   of the Settlement, the Settlement Class Members had until July 17, 2016 to object to the Settlement. As

2   of August 9, 2016, there were two hundred seventeen (217) participating class members due to the

3   addition of four members. Cunningham Declaration, ¶ 16. This represents a 100% participation rate.

4   *Id.* Based on estimated settlement calculations, the average payment per participating class member is

5   estimated at $108,602.80 and the highest payment is estimated at $264,069.54. Cunningham Decl., ¶

6   16. As of August 9, 2016, no Class Member submitted any objection to the Settlement. Cunningham

7   Declaration, ¶ 14. Moreover, many Class Members have expressed their great satisfaction with the

8   Settlement.[1]

9   　　As such, the overwhelmingly positive reaction of Class Members and the absence of objectors

10   favors final approval. *See Chun-Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 852 (June 7, 2010)

11   (final approval granted where there were zero objections and sixteen opt-outs of class of 329 members.)

12   　　Overall, all of the fairness factors favor final approval of the Settlement. Given the risks and

13   costs associated with future litigation and appeals, this Settlement, which is worth $35 million and

14   resulted from arm's-length negotiations between experienced attorneys and facilitated by an experienced

15   mediator, warrants final approval.

16   **VIII.   THE COURT-APPROVED NOTICE PLAN COMPORTS WITH DUE PROCESS**

17   　　Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members

18   who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). Class Members are entitled

19   to receive the "best notice practicable" under the circumstances. *Burns v. Elrod,* 757 F.2d 151, 154 (7th

20   Cir. 1985). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail

21   to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,*

22   *L.L.C.,* 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). Moreover, notice that is mailed to

23   each member of a settlement class "who can be identified with reasonable effort" constitutes reasonable

24   notice. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974).

25   　　Here, the Notice approved by the Court met the requirements for the "best practicable" notice

26   necessary to protect the due process rights of class members. In its May 13, 2016 Order Re: Motion for

27

28

---

[1] Reaction from class members was overwhelmingly positive and even ecstatic. Gutierrez Decl., ¶ 44.

20

1   Preliminary Approval of Class Action Settlement, the Court instructed Ecolab to provide to the Claims
2   Administrator updated contact information for the 213 Class Members as set forth in the Settlement.
3   Docket No. 138, pg. 3, ¶ 6.  The Court appointed CPT Group, Inc. as the Claims Administrator.  Docket
4   No. 138, pg. 3, ¶ 7.  The Court instructed CPT Group to prepare a final version of the Notice of Proposed
5   Class Action Settlement, incorporating into it the relevant dates and deadlines set forth in its Order and
6   the Settlement Agreement. *Id.*  The Court instructed CPT Group to commence the notice process by
7   mailing the Class Notice to all identified Class members via first-class mail by June 2, 2016. *Id.,* ¶¶ 6,
8   7. The deadline appointed by the Court for filing objections to the Settlement was July 17, 2016. *Id.*, §
9   8.  To ensure that Class Members could make a fully-informed decision whether to participate in the
10  Settlement or object to it, with the Notice each Class Member received an individual statement of the
11  estimated dollar amount of his or her share of the Settlement and the factors that underlay the calculation
12  of the settlement share. Ex. A attached to Ex 1, pg. 7).

13          The Parties have now fully implemented the Court-approved Notice Plan. CPT Group received
14  the Court-approved text for the Notice from Class Counsel on May 17, 2016.  Cunningham Decl., ¶ 4.
15  On May 23, 2016, CPT Group received a data file from Ecolab defense counsel containing the name,
16  last known address, social security number, employment dates, and number of qualifying weeks worked
17  for each class member.  Cunningham Decl., ¶ 5.  On May 31, 2016, CPT Group ran a National Change
18  of Address search in an attempt to update the addresses on the class list and ensure it was as accurate as
19  possible.  Cunningham Decl., ¶ 6.  A search of this database provided updated addresses for any
20  individual who had moved in the previous four years and notified the U.S. Postal Service of their change
21  of address. *Id.*  CPT Group prepared a draft of the Notice for mailing to the Class Members.  The
22  mailing consisted of a 6-page Notice.  Cunningham Decl., ¶ 7, Ex. A.  The Notices were enclosed in
23  envelopes with the Class Member's name and known address visible through the envelope window.  On
24  June 2, 2016, the Notice Packets were mailed via U.S. first class mail to all Class Members.
25  Cunningham Decl., ¶ 8.

26          On July 1, 2016, CPT Group received from Counsel an Order to Correct Issues with Class Data
27  along with an additional data file.  The file contained the data information for three additional Class
28  Members and also a notification requesting a reduction in the estimated amounts for eight existing Class

21

1    Members due to their participation in the *Clark, et al. v. Ecolab*, Civil Action No. 07-8623.  Cunningham

2    Decl., ¶ 9.  On July 6, 2016, CPT Group mailed to the three additional Class Members and also a letter

3    to the eight existing Class Members notifying them of the amount of their reduction.  Cunningham Decl.,

4    ¶ 10. On August 9, 2016, CPT Croup received from counsel an Order to Correct Second Issue with Class

5    Data along with information for one additional class member.  Cunningham Decl., ¶ 11. As previously

6    stated, there are 217 participating Class Members representing a 100% participation rate and as of the

7    July 17, 2016 deadline for objections, not a single Class Member submitted any objection to the

8    Settlement. Cunningham Decl., ¶¶ 14, 16.

9    Accordingly, the Notice and Notice plan fulfilled all requirements of adequate notice and should

10   be duly approved. See *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); Fed. R.

11   Civ. P. 23(C)(2); Manual for Complex Litig. (4th), § 21.312.

12   **IX.    CONCLUSION**

13   For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of

14   the Class Action Settlement.

15   Respectfully submitted,

16   Dated: August 15, 2016          HATHAWAY, PERRETT, WEBSTER, POWERS,
17                                   CHRISMAN & GUTIERREZ, APC

18                           By _____
19                                   ALEJANDRO P. GUTIERREZ,
20                                   Attorneys for Plaintiffs and the Certified Class

21

22

23

24

25

26

27

28