1   Alejandro P. Gutierrez, SBN 107688
    **LAW OFFICES OF HATHAWAY, PERRETT, WEBSTER,**
2   **POWERS, CHRISMAN & GUTIERREZ, APC**
    200 Hathaway Building
3   5450 Telegraph Road
    Post Office Box 3577
4   Ventura, CA  93006-3577
    Telephone: (805) 644-7111
5   Facsimile:(805) 644-8296
    E-mail:  agutierrez@hathawaylawfirm.com
6

7   Daniel J. Palay, SBN 159348
    Michael A. Strauss, SBN 246718
8   Brian D. Hefelfinger, SBN 253054
    **STRAUSS & PALAY, APC**
9   121 N. Fir Street, Suite F
    Ventura, CA  93001
10  Telephone:(805) 641-6600
    Facsimile: (805) 641-6607
11  E-mail:  djp@palaylaw.com

12  Attorneys for Plaintiffs and the Certified Class

13              **UNITED STATES DISTRICT COURT**

14          **NORTHERN DISTRICT OF CALIFORNIA**

15
    MATHEW ROSS, an individual; for himself      ) CASE NO:  C 13-05097 PJH
16  and those similarly situated; ROBERT          )
    MAGEE, an individual, for himself and those   ) Action filed December 21, 2009
17  similarly situated and ROES 1 through 30,000; )
    and the Certified Class,                      ) **CLASS ACTION**
18                                                )
                                                  ) **DECLARATION OF ALEJANDRO**
19               Plaintiffs,                      ) **P. GUTIERREZ IN SUPPORT OF**
                                                  ) **PLAINTIFFS'** *UNOPPOSED*
20                                                ) **MOTION FOR FINAL APPROVAL**
                 vs.                              ) **OF CLASS ACTION SETTLEMENT**
21                                                )
                                                  ) **Hearing:**
22                                                ) **Date:**          **Aug. 31, 2016**
    ECOLAB, INC., a Delaware Corporation; and     ) **Time:**          9:00 a.m.
23  DOES 1 through 100, inclusive,                ) **Courtroom.:**    3, 3ʳᵈ Floor
                                                  )
24                                                )
                 Defendants.                      )
25                                                )
                                                  )
26  _____    )

27

28
                                              1

1

2

**DECLARATION OF ALEJANDRO P. GUTIERREZ**

I, Alejandro P. Gutierrez, declare as follows:

3   1.  I am an attorney at law qualified to practice before the state and federal courts in California.

4   I am approved Class Counsel and one of the attorneys of record for Plaintiffs and the Certified Class in

5   the above-entitled action.  Since the commencement of this litigation in 2009, I have been the attorney

6
    at my firm primarily responsible for the litigation of this matter.  I have personal knowledge of the facts

7
    stated in this declaration and if called as a witness would and could testify competently thereto.

8

9   2.  I make this declaration in support of Plaintiffs' Motion for Final Approval of Class Action

10  Settlement.  The factual representatives found in the contemporaneously filed Motion for Final Approval

11  of Class Action Settlement are, to the best of my knowledge, true and correct.

12  3.  On December 21, 2009, Plaintiff James Icard, on his own behalf, as well as on behalf of the

13  similarly-situated, filed a class action lawsuit against Defendant Ecolab, Inc. Icard is a former employee

14
    of Ecolab and he alleged that Ecolab failed to pay him all wages and penalties owed, including overtime

15
    and wages owed at the time his employment terminated, or to provide him with adequate paycheck

16
    stubs.

17

18  4.  Plaintiffs and the Certified Class have worked as RSMs for Ecolab, which describes itself as

19  "the global leader in water, hygiene, and energy technologies and services." The parties agree that the

20  RSMs travel to customer sites of Ecolab's customers including restaurants and other businesses in the

21  hospitality industry in order to provide service to their commercial dishwashers, which are leased from

22
    Ecolab. Specifically, the RSMs install, repair, and otherwise maintain the dishwashers, and also promote

23
    products such as detergents and sanitizers to the customers.  *See* Sept. 28, 2015 Order Re Motions for

24
    Summary Judgment and Motion for Decertification ("Order" - Docket No. 104, pp. 1:23- 2:3.) Plaintiffs

25  claim that they have been misclassified as "exempt," and thus have not received the overtime pay and

26  meal breaks to which they were entitled.

27

28

5.  The suit was originally filed in San Francisco Superior Court on December 21, 2009 by James Icard on behalf of himself and a putative class of Ecolab employees who alleged that Ecolab failed to pay all wages owed, including overtime and double-time and failed to provide adequate itemized wages statements, and failed to provide mandated meal breaks. Ecolab alleges that Icard and those similarly situated RSMs are/were exempt employees not entitled to overtime wages.

6.  Prior to the filing of this case, Ecolab had defended itself in a series of New York federal lawsuits brought on behalf of its RSMs throughout the country, including California. At that time, the RSM position was titled "Route Manager." After the resolution of those cases, Ecolab retitled the position "Route Sales Manager," likely in an attempt to claim an overtime exemption available to salespersons. Those New York cases resolved together at some point in 2009, and a handful of California RSMs entered into a release of their claims through that date. The release is not an issue here, because Mr. Icard's case only involved those RSMs who had not released their claims.

7.  In the instant case, on May 25, 2012, the San Francisco County Superior Court issued an Order Certifying the Class, which class consists of all employees of Ecolab who are/were Route Managers or Route Sales Managers, who have worked in California between December 21, 2005 and the present, who do/did not cross state lines in performance of their duties, and have not received full and correct pay for all hours worked and have not received accurate itemized wage statements required pursuant to Labor Code section 226, and who have not fully released all of the claims made in the lawsuit. Class Notice and opt-out forms were sent to the putative class members, whose contact information was provided by Ecolab.

8.  In May of 2012, Ecolab brought a Motion for Summary Judgment, or in the Alternative Adjudication of Issues and then withdrew the motion in August 2012. In January 2013, Ecolab again filed a Motion for Summary Judgment, or in the Alternative Adjudication of Causes of Action, arguing that Plaintiff's causes of action for wages owed, inaccurate wage statements and unfair business

3

1  practices had no merit because Route Sales Managers were subject to the "commissioned salesperson"

2  exemption, the "outside sales" exemption, and the "motor carrier" or "hazardous materials" (also known

3  as "haz-mat") exemption. Additionally, Ecolab argued that it had always provided meal periods.

4  9. In January 2013, Plaintiffs brought a motion for summary adjudication as to Ecolab's so-

5  called "haz-mat" exemption defense. The Superior Court continued the motions for summary

6  adjudication until such time as new class representatives were selected and approved to substitute for

7  representative James Icard. On August 28, 2013, the Superior Court granted Plaintiffs' motion for an

8  order substituting James Icard with current class representatives Matthew Ross and Robert Magee, as

9  Ecolab had raised a question about Mr. Icard's character and whether he could continue as a class

10  representative.

11  

12  10. On September 26, 2013, the Superior Court denied Ecolab's Motion for Summary

13  Judgment/Adjudication. The Court continued Plaintiffs' motion for summary adjudication to December

14  19, 2013 for further hearing, as the Court desired additional briefing on the motor carrier, or "haz-mat,"

15  exemption.

16  

17  11. On October 31, 2013, Ecolab removed this action to federal court. On the same date,

18  Plaintiffs filed a Notice of Pendency of Other Action or Proceeding, identifying the *Ladore v. Ecolab*

19  *Inc.* action as a related case. The *Ladore* case involved Ecolab employees in its Pest Elimination

20  division, alleging unpaid wages and unfair business practices, and seeking civil penalties under PAGA.

21  The *Ladore* case was related because Ecolab had also asserted therein the "haz-mat" exemption defense,

22  which the Central District of California rejected in a 13-page ruling dated January 23, 2013.

23  

24  12. On November 26, 2013, the Court issued a Related Case Order, listing three related cases:

25  C 10-00410 PJH, *Icard v. Ecolab, Inc.*; C 11-03258 PJH, *Icard v. Ecolab*; and C 13-05097 LB, *Icard v.*

26  *Ecolab Inc.*1, and did not list the *Ladore* action as a related case.

27  

28  

4

1
2
3
4
5
6
7
8
9

13. On December 2, 2013, Plaintiffs filed a Third Amended Complaint for wages owed, violations of Business & Professions Code § 17200, violation of Labor Code § 226, and violation of California Labor Code Private Attorney General's Act. The PAGA cause of action was added after correspondence was sent via certified mail to the California LWDA, as well as to Ecolab. On December 16, 2013, Ecolab filed a motion to dismiss the Third Amended Complaint on the basis that it had been filed without leave of court. The court granted the motion and instructed Plaintiffs to file a motion for leave to amend, which they did on February 6, 2014. The court granted Plaintiffs' motion and they re-filed their Third Amended Complaint on April 7, 2014.

10
11
12
13

14. In its Answer to Plaintiffs' TAC, Ecolab asserted twenty-seven affirmative defenses. On May 16, 2014, Plaintiffs filed a motion to strike many of Ecolab's affirmative defenses as insufficiently pled, which motion was granted in part by the district court on July 23, 2014. The court ordered Ecolab to file an amended Answer within 21 days of the order.

14
15
16
17
18
19

15. On February 25, 2015, Plaintiffs filed a motion for partial summary judgment as to Ecolab's affirmative defenses based on the outside salesperson exemption, the commissioned sales exemption and the motor carrier ("haz-mat") exemption. Defendant Ecolab simultaneously re-filed its prior motion for summary judgment asserting that Plaintiffs are exempt from overtime based on each of the three exemptions. At the same time, Ecolab also filed a motion to decertify the class.

20
21
22
23
24
25
26
27

16. On September 28, 2015, the court issued its Order Re Motions for Summary Judgment and Motion for Decertification. In a 27-page decision, the court granted Plaintiffs' motion for partial summary judgment as to the outside salesperson exemption and denied Ecolab's motion for summary judgment on the exemption. Similarly, the court granted Plaintiffs' motion for summary judgment as to the "commissioned salesperson" exemption and denied Ecolab's summary judgment motion on the same issue. *Id.* at 15:16 – 21. Finally, the court granted Plaintiffs' motion for partial summary judgment as to the motor carrier ("haz-mat") exemption and denied Ecolab's summary judgment motion on the issue.

28

5

*Id.* at 18:8–19:20. As a result of the court granting partial summary judgment in Plaintiffs' favor on all three asserted overtime exemptions, Ecolab's motion for summary judgment on the overtime claim as a whole was denied. *Id.* at 19:21 – 23.

17. As to Plaintiffs' meal break claim, the court granted Ecolab's motion for summary judgment as to the meal break claim from October 12, 2008 to the present. The court allowed Ecolab to file a supplemental brief, along with evidence, regarding the viability of Plaintiffs' meal break claim from 2005 to 2008 and deferred its ruling in that regard. *Id.* at 21:2 – 12. The court also denied Ecolab's motion for summary judgment as to Plaintiffs' remaining claims under Cal. Bus. & Prof. Code § 17200, Labor Code § 226, and PAGA. *Id.* at 21:13-22:4. The court further denied Ecolab's motion for class decertification. *Id.* at 27:12. Soon thereafter, Ecolab hired new counsel on the case, Littler Mendelson.

18. On October 9, 2015, Ecolab filed a supplemental brief related to the meal break claim and Plaintiffs filed their responsive brief on October 22, 2015.

19. On October 28, 2015, Ecolab filed a motion for certification of interlocutory appeal of the court's September 28, 2015 Order pursuant to 28 U.S.C. section 1292(b).

20. On November 3, 2015, the court issued its Order re Meal Break Claim denying Ecolab's motion for summary judgment as to the meal break claim from December 21, 2005 to October 11, 2008 and denied Ecolab's motion for decertification as to the meal break claim.

21. On November 11, 2015, Plaintiffs filed a responsive brief to Ecolab's section 1292(b) motion and on November 18, 2015, Ecolab filed its reply. On November 30, 2015, the parties filed a stipulation and proposed order to stay the proceedings to allow for a third mediation and on December 2, 2015, the court issued the Order staying the proceedings.

22. The litigation involved extensive discovery: Plaintiffs propounded eight sets of requests for production of documents, five sets of special interrogatories, four sets of form interrogatories, and eight sets of requests for admission, and reviewed Ecolab's responses to these discovery requests. Thirty-

6

eight depositions were taken, including those of seven Ecolab corporate witnesses and Ecolab's expert. Class Counsel examined Ecolab's corporate witnesses (one of them twice) in regard to the outside sales exemption and commissioned sales exemption, such as the duties and responsibilities of RSMs, the percentage of time spent by RSMs in their various duties, how sales commissions were earned, including commissions earned by RSMs on machine rental fees, the contents of commission statements, and the contents of all written lease agreements, among other things.

23. My staff and I went through over a million pages of documents produced by Ecolab, including Service Detail Reports, commission statements, earnings statements, check details, performance track reports, annual review forms, 360 opportunity reports,  coaching plans, ESM-time records, territory rankings reports, training modules, hand-outs and manuals, training transcript reports, compensation plans, personnel files, Ecolab ware washing lease program materials, product promotional material, various sample lease agreements, material safety data sheets, chemical labels and other relevant documents.  We spent dozens of hours reviewing, indexing, and analyzing this documentation in order to prepare Plaintiffs' certification and dispositive motions regarding the exemptions asserted by Ecolab.

24.  Further, we went through tens of thousands of Service Detail Reports for multiple class members, including those for the 12 individuals whose declarations Ecolab submitted with its motion for summary judgment. From those SDRs, we compiled "day in the life" spreadsheets of the tasks performed by the RSMs, the times spent at each customer location, and the average hours worked per day. We also reviewed and summarized over thirty deposition transcripts for evidence of the RSMs' actual day-to-day tasks. This work was crucial in proving that RSMs were working primarily rendering hands-on service, not selling products, and thus not subject to the outside salesperson exemption. These efforts were also instrumental to the mediations conducted in the case.

25. Due in part to the limitations of the hours-worked data contained in the SDR records, we determined that it was necessary to interview dozens of Class Members to gauge the accuracy of these records and, if they were not accurate, to better assess the number of overtime hours worked by Class Members. We thus conducted extensive interviews with close to 100 class members. For instance, my staff and I, as well as my co-counsel, interviewed Class Members regarding their duties at Ecolab, the amount of overtime hours they worked, the amount of weekend duty they had, the contents of their paystubs, the materials they carried on their Ecolab vehicles and the quantities of such materials, whether they kept log books, whether they had a commercial driver's license (none did), whether they were hired as "drivers" (none were), and whether they had "haz/mat" training (none did).

26. In addition, Class Counsel kept in constant contact with a number of those individuals throughout the course of this action.

27. A large number of Class Members in this action were particularly pro-active and interested in all aspects of the litigation and Class Counsel were constantly fielding inquiries from those individuals as to the status of the case. Class Counsel relied on their interviews with Class Members to provide key facts needed to support Plaintiffs' successful motion for class certification and successful summary judgment motions relating to the exemptions asserted by Ecolab. This was in addition to the painstaking research Class Counsel conducted related to the legislative history, both state and federal, of the truck driver/motor carrier exemption to overtime laws. Based on such research, Class Counsel prepared a comprehensive Power Point presentation of all applicable regulations, authorities and interpretive bulletins, to be used if necessary to demonstrate to the Court the purpose of the exemption and why it only applied to drivers.

28. Further, with all of this information gathered, Class Counsel were able to properly evaluate Ecolab's liability for unpaid overtime and PAGA penalties, for mediation (and, if necessary, trial) purposes.

29.  Using the information produced by Ecolab, it was possible to calculate Ecolab's maximum possible exposure at trial for unpaid overtime and interest thereon, penalties under Labor Code section 203, and civil penalties under the Private Attorneys General Act of 2004 ("PAGA"). Going into the mediation, by our calculation, which assumed 15 hours of overtime worked per week by each Class Member for the class period, we calculated Ecolab's potential exposure at trial to be on the order of:

- Overtime Wages: Est. $25 Million
- Interest on Overtime: Est. $13 Million
- Penalty under Labor Code section 203: Est. $1.5 Million
- Penalties under PAGA: Est. $7 Million
- Total: Est. $46.5 Million

30. Of these figures, the PAGA penalties were the most uncertain. There was a dispute between the parties as to whether Plaintiffs could pursue the "second-level" penalties available under PAGA. Even so, we acknowledge that PAGA penalties are at the discretion of the trial court and are by no means certain. The $7M figure for PAGA penalties reflects a target of probable "first-level" penalties at trial for violations of Labor Code sections 201, 202, 203, 204, 226, 510, 558, and 1194 and Wage Order 5-2001.

31. Of course, getting to the stage of proving damages first required us to strenuously litigate the exemptions, as outlined above. As previously discussed, dispositive motions were filed in both the state court and in this Court. Both courts found in favor of Plaintiffs.

32. After the granting of Plaintiffs' motion for summary adjudication on the Haz/Mat/Sales/Commission exemptions, we had to begin preparing for what was likely to be a highly complex, expert-driven damages-only trial. In preparation for the eventual trial of this case, Plaintiffs hired Dr. Richard Drogin to be our statistical sampling expert. We brought Dr. Drogin up to speed on the case and he reviewed thousands of pages of documents in preparation for his role as expert witness.

9

33. This matter was mediated on three (3) separate occasions. A first mediation occurred before Michael Loeb on February 10, 2014. A second mediation occurred before the same mediator on April 16, 2015. Both were unsuccessful. On February 12, 2016, the parties attended a mediation before Hunter Hughes. Prior to the mediation, the parties exchanged all necessary payroll and related information necessary to permit a full and complete analysis of the value of the potential recovery. The information included the dates of employment of each class member, the salary and commissions earned by each class member throughout the claims period, and the names and dates of all class members who at any time during the claims period took a personal leave of absence. Through discovery, the parties had gained even more knowledge of the claims and value thereof. In short, the parties began negotiations at the mediation with full knowledge of the strengths, weaknesses, and value of the claims and defenses asserted.

34. At the third and last mediation, the parties entered into a settlement, the terms of which were memorialized in a memorandum of understanding at the mediation. The proposed Settlement echoes the terms of that settlement. Under the Settlement, Ecolab has agreed to pay an all-in total of $35 million (plus employer-side taxes), the equivalent of 15 overtime hours per week to the class members for the claims period plus all legal interest on these amounts owed (after fees). With 213 class members, this represented a *per capita* recovery of $164,319.24 before deduction of fees, litigation expenses, administration costs and incentive awards. As of August 9, 2016, there were two hundred seventeen (217) participating class members due to the addition of four members. Cunningham Declaration, ¶ 16. This represents a 100% participation rate. *Id.* Based on estimated settlement calculations, the average payment per participating class member is estimated at $108,602.80 and the highest payment is estimated at $264,069.54. Cunningham Decl., ¶ 16. To my knowledge this is one of the highest (if not the highest) *per capita* wage/hour settlement recoveries ever achieved in California. Attached hereto as Exhibit 1 is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release that

10

1   was filed on April 1, 2016 as Docket No. 129 and as Exhibit 1 to Brian Hefelfinger's Declaration in

2   Support of the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Docket No. 130-

3   2.

4       35. The proposed Settlement is the product of literally weeks, months and years of preparation

5   and arm's-length negotiations between the parties. Plaintiffs conducted significant investigation of the

6   facts and law during the prosecution of this action, including (1) extensive review and analysis of critical

7   documents, (2) comprehensive depositions of key Ecolab personnel, (3) filing a certification motion

8   which the Defendant strenuously opposed and thereafter sought reconsideration and appeal to the Ninth

9
10  Circuit as well as two attempts at decertification (4) investigating, researching and filing a motions for

11  summary judgment, (5) researching and drafting comprehensive oppositions to Ecolab's motions for

12  summary judgment, (6) obtaining and reviewing detailed employment records and wage histories for all

13  class members, and (7) retention of Richard Drogin, Ph.D. for the purpose of conducting a

14
15  comprehensive analysis of the employment data obtained. Negotiations between counsel occurred over

16  the course of several years, and included three separate private mediation sessions.

17      36. Ecolab had a legitimate argument to defend itself from the claim for statutory penalties under

18  Labor Code section 203 (waiting-time penalties). Section 203 requires a willful failure to pay wages. A

19  defendant may avoid the penalty by showing a good faith dispute over whether wages were owed. 8 Cal.

20  Code Regs., § 13520. Ecolab could very well argue that there was a good faith dispute.

21      37. By far the strongest claim asserted on behalf of the Class is the overtime violation. If Ecolab

22  had been successful in its motion for summary judgment or an eventual appeal, however, Plaintiffs

23
24  would have lost everything, including this claim, since the other claims were derivative of the overtime

25  claim.

26      38. In determining a reasonable settlement range for this case, and as part of our duty to

27  realistically evaluate the claims of our class clients, we gave credence to some of the arguments raised

28                                                  11

1   by the Defendant – for settlement purposes only. Based on these assumptions and after the granting of

2   Plaintiffs' motion for summary adjudication of the Haz/Mat defense, we valued the case for settlement

3   purposes within a range of $20 million and $35 million. The settlement of $35 million is within this

4   range of "reasonableness." It roughly equates to 15.0 hours of overtime per employee per week, for each

5   and every week during the claims period. At trial the overtime figure could be higher or lower (or none

6   at all). This represents nearly all, if not all, of the potential overtime damages and interest that the class

7   may have recovered. In short, the settlement represents a very favorable result for the class members.

8

9       39. Although Plaintiffs believe they would have ultimately prevailed if this case were litigated

10  through trial, they nonetheless recognize the risks and delay of further litigation. Throughout this

11  litigation, Plaintiffs have argued that Ecolab should be held liable for unpaid overtime because the

12  haz/mat and sales exemptions do not apply. Ecolab, on the other hand, has steadfastly maintained that

13  Plaintiffs and the class were properly classified as exempt under the three exemptions. Ecolab has also

14  maintained that Plaintiffs and the class could never prove class-wide damages because of the varied

15  nature of the work performed by the Class Members. While this Court previously rejected Ecolab's

16  arguments and asserted exemptions, its decision would be subject to review on appeal absent a

17  settlement. Indeed, Ecolab's Motion for Certification of Interlocutory Appeal of the Court's order

18

19  granting summary judgment in favor of Plaintiffs was pending when the Parties entered the Class Action

20  Settlement.

21      40. The Parties disagreed about how to measure damages at trial. During the time the case was

22  being litigated in state court, Plaintiffs proposed a trial management plan that involved an aggregate

23

24  computation of class monetary relief. Ecolab vigorously opposed a statistical sampling method, arguing

25  it implicated due process concerns. Even though this Court granted summary judgment in Plaintiffs'

26  favor regarding the three exemptions asserted by Ecolab, had the case proceeded to trial the Parties

27  would have had to expend considerable time and expense preparing for trial. The Plaintiffs faced

28

12

1  numerous obstacles to recovery, including challenges to statistical sampling, challenges to their expert

2  witnesses and to damages calculations and pursuing their claims against skilled defense attorneys who

3  have significant trial experience in similar cases. If this case had proceeded to trial, the time and expense

4  associated with trial preparation would mount, as the parties would have to complete depositions of trial

5  witnesses, prepare and defend against motions *in limine* and *Daubert* motions, draft trial briefs, prepare

6  trial exhibits, appear for pre-trial conferences, and ultimately, try the case to a jury.

7
8  41. On April 1, 2016, Class Counsel filed the Parties' Joint Stipulation of Class Action

9  Settlement and Release (Docket No. 129), which set forth the terms of the Parties' Settlement and

10  included the proposed Notice of Proposed Class Action Settlement and Fairness Hearing (Ex A to

11  Settlement) and Notice Re Settlement of Class Action Pursuant to the Class Action Fairness Act, 28

12  U.S.C. Section 1715 (Ex C to Settlement).

13  42. On April 6, 2016, Plaintiffs filed their Motion for Preliminary Approval of Class Action

14  Settlement setting forth the facts of the case and terms of the Settlement and the Court heard such motion

15  on May 11, 2016.  On May 13, 2016, the Court issued its Order Granting Motion for Preliminary

16  Approval of Class Action Settlement.  Thereafter, on June 2, 2016, the Court-approved Claims

17  Administrator, CPT Group, mailed out the Notice of Proposed Class Action Settlement, which

18  incorporated the relevant dates and deadlines set forth in the Court's Order.

19
20  43. As of July 17, 2016, the deadline set by the Court for filing objections, there were zero

21  objections from Class Members. See Cunningham Declaration, ¶ 14.

22  44. CPT Group, the court-approved class administrator, duly sent out the approved Class Notice

23  on June 2, 2016. Afterwards I received several phone calls from settling class members, who were

24  overwhelmingly positive about the settlement reached in this matter, even ecstatic.  For instance, I

25  received one call from a class member thanking me for my work and asking "is this [the settlement] for

26  real?"  Another class member joyfully told me the settlement was a "sweet" result. Another thanked me

27

28  13

1    for my hard work for the class; another said he really appreciated "us guys" [Class Counsel] so much

2    and that the settlement was "just awesome." Another thanked me for the "terrific job you did for us."

3    45. Even though there is no governmental participant involved in the case, pursuant to 28

4    U.S.C.§ 1715 of the Class Action Fairness Act (CAFA), Ecolab provided notice of the Settlement to the

5    Office of the Attorney General for the United States and the Office of the Attorney General for the State

6    of California. Docket No. 130, Ex. 1, pg. 51. To date, no federal or state official has raised any such

7    concerns.

8

9    46. I am a shareholder of the law firm of Hathaway, Perrett, Webster, Powers, Chrisman &

10   Gutierrez, APC. I have extensive experience in civil litigation and an over 30-year history of aggressive,

11   successful prosecution of labor law cases. For instance, in a wage and hour class action, in binding

12   arbitration, I succeeded in procuring an award of $51.2 million for the class. This recovery represented

13   close to 100% of the compensatory damages suffered by class members, an exceptional and rare result.

14   In fact, my efforts resulted in the largest (at least prior to this case) per-person award in California

15   history. Further, I have successfully resolved several class actions before trial in favor of the class,

16

17   including *Avitia v. Big Lots Stores*, Los Angeles County Superior Court Case No. BC436317; *McNeal*

18   *v. Pacific Satellite*, Los Angeles County Superior Court Case No. BC382775; *Beltran v. Restaurant*

19   *Miramar*, Ventura Co. Superior Court Case No. 56-2009-00362572-CU-BC-VTA; *Dockstader v.*

20   *Employee Leasing, Inc.* Ventura Co. Superior Court Case No. 56-2010- 00371075-CU-OE-VTA; *Roe*

21   *v. Ecolab*, Ventura Co. Superior Court Case No. CIV 233936; *Dietz v. Ecolab,* Ventura Co. Superior

22   Court Case No. CIV 241827; *Ladore v. Ecolab*, USDC Case No. 11-9386; *Britto v. Zep*, Alameda

23   County Superior Court Case No. VG-10553718; *Aguilar v. Zep*, USDC Case No. 13-0563; and *Rizk v.*

24   *DirectSat*, Los Angeles County Superior Court Case No. BC363435, *Martino v. Ecolab*, USDC Case

25   No. 14-4358, and *Savannah v. Sodexo*, USDC Case No. 15-5845.

26

27

28

14

1

2

3

4

5

6

7

8

9

10

11

47. I have worked closely on this case for over six years, beginning in 2009. Since that time, I have participated in all phases of the litigation, including researching the claims, analyzing the law, briefing and arguing motions on the pleadings, organizing discovery, taking and defending multiple depositions, including deposing Ecolab's expert and Ecolab's person most qualified on the topic of Ecolab's so called "commission" payments made to class members, developing expert testimony, preparing the case for trial, briefing and arguing Plaintiffs' motion for summary judgment, briefing the opposition to Ecolab's appeal of the Court's order granting summary judgment in favor of Plaintiffs, participating in settlement discussions, including preparing the mediation brief for and participating in the last and successful mediation. The Settlement Agreement was the result of hard fought and lengthy negotiations between Plaintiffs and Ecolab.

12

13

14

15

16

17

48. I have a keen understanding of the factual and legal issues involved in this case, as well as the relative strengths and weaknesses of Plaintiffs' claims. After careful and extensive review and analysis of the legal and factual issues and the evidence gathered in this case, I believe that the Settlement is fair, adequate, and reasonable and in the best interests of the Class members. I respectfully ask that the Court approve the Settlement presented in the concurrently filed pleadings.

18

19

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct. Executed this 15th day of August, 2016, at Ventura, California.

20

21

22

Alejandro P. Gutierrez

23

24

25

26

27

28

15